1  COOLEY GODWARD KRONISH LLP
   JOHN C. DWYER (136533) (dwyerjc@cooley.com)
2  GRANT P. FONDO (181530) (gfondo@cooley.com)
   ANGELA L. DUNNING (212047) (adunning@cooley.com)
3  Five Palo Alto Square
   3000 El Camino Real
4  Palo Alto, CA 94306
   Telephone:    (650) 843-5000
5  Facsimile:    (650) 857-0663

6  Attorneys for Defendant
   BROCADE COMMUNICATIONS SYSTEMS, INC.
7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  HAI-NING HUANG, WAY-LING HWANG,          Case No. CV 07-5950
    FRANK PETRUNO and GORDON A.
13  MECCAY, on Behalf of Themselves and All  **BROCADE COMMUNICATIONS SYSTEMS,**
    Others Similarly Situated,               **INC.'S NOTICE AND MOTION TO DISMISS**
14                                           **COMPLAINT PURSUANT TO THE SECURITIES**
                   Plaintiffs,               **LITIGATION UNIFORM STANDARDS ACT, 15**
15                                           **U.S.C. §§ 77p, 78bb; MEMORANDUM OF**
          v.                                 **POINTS AND AUTHORITIES**
16
    GREGORY L. REYES, ANTONIO                Date:      January 9, 2008
17  CANOVA, NICHOLAS G. MOORE, DAVID         Time:      9:30 a.m.
    L. HOUSE, SETH D. NIEMAN,                Courtroom:  F
18  CHRISTOPHER B. PAISLEY, NEIL
    DEMPSEY, BROCADE                         Magistrate Judge James Larson
19  COMMUNICATIONS SYSTEMS, INC. and
    DOES 1 through 25,
20
                   Defendants.
21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA

NOTICE AND MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF RELEVANT FACTS .................................................................. 2

        A.      Background and Procedural History ............................................................ 2

        B.      Allegations in the Complaint ...................................................................... 3

III.    ARGUMENT ........................................................................................................... 4

        A.      The Purpose and Scope of SLUSA ............................................................ 4

        B.      The Complaint Falls Squarely Within SLUSA's Core Preemption
                Provision .................................................................................................... 5

        C.      SLUSA's "Delaware Carve-Out" Does Not Apply .................................... 6

                1.      The Delaware Carve-Out Does Not Apply to this Action Because It
                        Was Brought Outside of Brocade's State of Incorporation ...................... 7

                2.      Neither Prong of the Delaware Carve-Out Applies to Plaintiffs'
                        Action ................................................................................................ 9

                        a.      The First Prong of the Carve-Out Is Inapplicable ........................ 10

                        b.      The Second Prong of the Carve-Out Is Also Inapplicable ............ 10

                                (1)     The Carve-Out Applies Only in the Context of
                                        Mergers and Other "Extraordinary Corporate
                                        Transactions" ................................................................ 11

                                (2)     Recent District Court Decisions on this Issue Are
                                        Neither Binding Nor Persuasive ..................................... 13

                                (3)     The Carve-Out Cannot Apply to Plaintiffs' Claim
                                        Even Under the Broadest Possible Interpretation ............. 14

IV.     CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Alessi v. Beracha,*
    244 F. Supp. 2d 354 (D. Del. 2003) .................................................................. 11

*Behlen v. Merrill Lynch,*
    311 F.3d 1087 (11th Cir. 2002) ...................................................................... 5

*City of Ann Arbor Employees' Ret. Sys. v. Gecht,* No. C-06-7453, 2007 WL
    760568 (N.D. Cal. Mar. 9, 2007) ............................................................... 13, 14

*City of Edmonds v. Oxford House, Inc.,*
    514 U.S. 725 (1995) ....................................................................................... 14

*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,*
    447 U.S. 102 (1980) ......................................................................................... 8

*Drulias v. ADE Corp.,*
    No. Civ. A 06-11033 PBS, 2006 WL 1766502 (D. Mass. June 26, 2006) .............. 8

*DSU Med. Corp. v. JMS Co., Ltd.,*
    296 F. Supp. 2d 1140 (N.D. Cal. 2003) ............................................................ 14

*Falkowski v. Imation Corp.,*
    309 F.3d 1123 (9th Cir. 2002) ......................................................................... 6

*Feitelberg v. Merrill Lynch & Co., Inc.,*
    234 F. Supp. 2d 1043 (N.D. Cal. 2002), *aff'd*, 353 F.3d 765 (9th Cir. 2003) .............. 2

*Foxgord v. Hischemoeller,*
    820 F.2d 1030 (9th Cir. 1987) ......................................................................... 7

*G.F. Thomas Inv. L.P. v. Cleco Corp.,*
    317 F. Supp. 2d 673 (W.D. La. 2004) .............................................................. 10

*I.N.S. v. Cardoza-Fonseca,*
    480 U.S. 421 (1987) ......................................................................................... 8

*In re Metlife Demutualization Litig.,*
    No. CV 00-2258 (TCP) (AKT), 2006 WL 2349998,
    (E.D.N.Y. Aug. 7, 2006) ................................................................................. 11

*In re Seidel,*
    752 F.2d 1382 (9th Cir. 1985) ......................................................................... 9

*In re VeriSign Deriv. Litig.,*
    No. C 06-4165 PJH, 2007 WL 2705221 (N.D. Cal. Sept. 14, 2007) ...................... 6

*In re WorldCom, Inc. Sec. Litig.,* Nos. 02 Civ. 3288 (DLC), 02 Civ. 8981 (DLC),
    2003 WL 716243 (S.D.N.Y. Mar. 3, 2003) ...................................................... 8

*Indiana Elec. Workers Pension Trust Fund, IBEW v. Millard,*
    No. 07 Civ. 172 (JGK), 2007 WL 2141697 (S.D.N.Y. Jul. 25, 2007) ................ 13, 14

*Lazar v. Gregerson,*
    No. C 02-0652 SI, 2002 WL 535405 (N.D. Cal. April 8, 2002) ............................ 11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
    547 U.S. 71 (2006) .................................................................................. 4, 5, 9, 14

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

# TABLE OF AUTHORITIES
### (CONTINUED)

                                                                                                  PAGE

*North Dakota v. United States,*
    460 U.S. 300 (1983)............................................................................................ 7

*Pace v. Bidzos ("VeriSign"),*
    No. C 07-3742-PJH, 2007 WL 2908283 (N.D. Cal. Oct. 3, 2007) ............................ 9, 13, 14

*Ring v. AXA Fin., Inc.,*
    483 F.3d 95 (2d Cir. 2007)................................................................................. 5

*Sofonia v. Principal Life Ins. Co.,*
    378 F. Supp. 2d 1124 (S.D. Iowa 2005)............................................................... 10

*Suever v. Connell,*
    No. C 03-00156-RS, 2007 WL 3313954 (N.D. Cal. Nov. 6, 2007) ........................ 14

## STATUTES

15 U.S.C. § 77p ................................................................. 1, 3, 5, 6, 7, 8, 10, 11, 15

15 U.S.C. 78bb ................................................................. 1, 3, 5, 6, 7, 8, 10, 11, 15

15 U.S.C. § 78l .............................................................................................. 13

28 U.S.C. § 1446(d) ......................................................................................... 3

SLUSA, 112 Stat. 2337 (1998) ...................................................................... 2, 5, 8

Cal. Civ. Proc. Code § 430.90 .......................................................................... 15

## OTHER AUTHORITIES

144 Cong. Rec. E1390-02, 1998 WL 413738 (July 21, 1998) ................................ 12

S. Rep. 105-182, 1998 WL 226714 (1998) ...................................................... 9, 12

H.R. Conf. Rep. 105-803, 1998 WL 703964 (1998)............................................. 10

*Securities Litigation Uniform Standards Act of 1997: Hearing on S. 1260 Before
    the Subcomm. On Sec. of the S. Comm. on Banking, Housing, and Urban
    Affairs,* 105th Cong. (1997) ........................................................................... 13

*David M. Legine & Adam C. Pritchard, The Securities Litigation Uniform
    Standards Act of 1998: The Sun Sets on California's Blue Sky Laws,* 54 Bus.
    Law. 1 (1998) .............................................................................................. 12

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

1

### NOTICE AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3     **PLEASE TAKE NOTICE** that on January 9, 2008, at 9:30 a.m. or as soon thereafter as

4  this motion may be heard in Courtroom F of this Court by the Magistrate Judge James Larson,

5  defendant Brocade Communications Systems, Inc. ("Brocade") will and hereby does move,

6  pursuant to the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §§ 77p, 78bb

7  ("SLUSA"), to dismiss with prejudice all claims asserted in the Complaint for Breaches of

8  Fiduciary Duty ("Complaint") filed on or about October 23, 2007 in the Superior Court of the

9  State of California, County of Santa Clara ("Santa Clara Superior Court") and removed to this

10  Court by Brocade on November 26, 2007.

11     This motion is based on the accompanying Memorandum of Points and Authorities, on

12  the Request for Judicial Notice and Declaration of Angela L. Dunning filed concurrently

13  herewith, on all pleadings and papers on file in this action, and on such other and further matters

14  as may be presented in connection with the hearing on this motion.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley Godward
Kronish LLP
Attorneys At Law
New York

764026 v1/PA

NOTICE AND MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

1    <u>**STATEMENT OF ISSUES TO BE DECIDED (CIV. L.R. 7-4(a)(3))**</u>

2    **1.**    Whether SLUSA preempts and mandates dismissal of this action where the

3    Complaint alleges a single state law claim for breach of the fiduciary duty of disclosure based on

4    allegations that are essentially identical to those made in a pending federal securities class action;

5    namely, that Brocade's proxy statements and filings with the United States Securities and

6    Exchange Commission were materially false and misleading because they omitted material facts

7    regarding Brocade's historical stock options granting practices?

8    **2.**    Whether plaintiffs, who failed in their efforts to be appointed lead plaintiff in the

9    pending federal securities class action, should be permitted to avoid the preemptive reach of

10    SLUSA by invoking a narrow exception to the statute, known as the "Delaware carve-out,"

11    despite overwhelming legislative history that the exception was never intended to be used in

12    circumstances such as those presented in this action?

13    <u>**SUMMARY OF ARGUMENT**</u>

14    Brocade respectfully submits that plaintiffs' action should be dismissed as preempted

15    under SLUSA.  15 U.S.C. §§ 77p, 78bb.  Under the United States Supreme Court's decision in

16    *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006), plaintiffs' action

17    clearly falls within SLUSA's core preemption provision.  Moreover, the narrow exception to the

18    core provision, known as the "Delaware carve-out," is inapplicable here.  Accordingly, this action

19    may not "be maintained in any State or Federal court," and it is subject to automatic and

20    mandatory dismissal.  15 U.S.C. §§ 77p(b), 78bb(f)(1).

21

22

23

24

25

26

27

28

Cooley Godward
Kronish LLP
Attorneys At Law
New York

764026 v1/PA

Notice and Motion To Dismiss Under SLUSA
Case No. CV 07-5950

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This putative securities class action is the latest attempt by plaintiffs and their counsel to assert class claims arising out of Brocade's historical stock options granting practices. The core allegations asserted in this action are now very familiar to this Court: defendants "failed to disclose that Brocade was engaging in a pervasive [options backdating] scheme and set of fraudulent accounting practices that rendered its financial reporting wholly unreliable." (Compl. ¶ 78.) That is, plaintiffs claim that the defendants allegedly committed fraud with regard to Brocade's historical stock option practices. These are the same allegations being pursued in the consolidated federal class action currently pending in this Court as well as in pending federal and state derivative actions against Brocade. Unlike those actions, however, this action is preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

Congress enacted SLUSA to prevent class action plaintiffs from evading the requirements of the Private Securities Litigation Reform Act of 1995 (the "Reform Act") by disguising what are in essence securities fraud claims as state law causes of action. Accordingly, SLUSA preempts and requires dismissal of class actions based on state law—including fiduciary duty claims such as plaintiffs' here—that allege a material misrepresentation or omission in connection with the purchase or sale of covered securities. 15 U.S.C. §§ 77p(b), 78bb(f)(1). Under United States Supreme Court and Ninth Circuit precedent, there is no doubt that plaintiffs' action falls within SLUSA's core preemption provision. Nor may plaintiffs rely on a narrow exception—commonly referred to as the "Delaware carve-out"—to rescue this action from mandatory dismissal, as Congress never intended the carve-out to preserve an action such as this.

Indeed, it is difficult to conceive of a scenario that better illustrates Congress's wisdom in passing SLUSA. Plaintiff in this case filed a federal class action complaint years ago—now consolidated as part of the federal class action—based on the very same stock options practices plaintiffs purport to challenge herein. Frustrated by this Court's refusal to appoint him and another shareholder lead plaintiffs and their counsel, Stull, Stull & Brody, lead counsel, they decided instead to bring a new case alleging the same wrongdoing on behalf of the same class of

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA

1

NOTICE AND MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

1    shareholders, only this time in state court. In so doing, they hope to avoid the requirements of

2    the PSLRA as well as this Court's determination that the interests of the class would not be best-

3    served by having plaintiffs and their counsel represent it. SLUSA was meant to prevent

4    precisely this kind of gamesmanship. Further, plaintiffs' artful pleading does not change the

5    basic truth about their new claim: "if it looks like a securities fraud claim, sounds like a securities

6    fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you

7    dress it up." *Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F. Supp. 2d 1043, 1051 (N.D. Cal.

8    2002), *aff'd*, 353 F.3d 765 (9th Cir. 2003). Plaintiffs' action must be dismissed under SLUSA.

9    **II.    STATEMENT OF RELEVANT FACTS**

10           **A.    Background and Procedural History**

11           Brocade is a Delaware corporation headquartered in San Jose, California. (Compl. ¶ 6.)

12   In May 2005, the first of several federal securities class action lawsuits was filed in this Court,

13   now consolidated as *In re Brocade Securities Litigation*, Case No. 3:05-CV-02042-CRB. The

14   federal class action alleges violations of the Securities Exchange Act of 1934 ("Exchange Act")

15   arising out of Brocade's alleged "fraudulent accounting for and disclosure of backdated and/or

16   mispriced stock option grants." (Fed. Class Compl., attached as Exhibit 1 to the Declaration of

17   Angela L. Dunning ("Dunning Decl.") filed concurrently herewith, ¶ 3.)

18           One of the consolidated actions, *Huang v. Brocade Communications Systems, Inc. et al.*,

19   Case No. 3:05-CV-02316-CRB, was filed by Hai-Ning Huang, a plaintiff in this action.[1] In July

20   2005, Mr. Huang's counsel, Stull, Stull & Brody, unsuccessfully moved for an order appointing

21   Mr. Huang and Frank Petruno (also a plaintiff herein) as lead plaintiffs and appointing Stull,

22   Stull & Brody as lead counsel.[2] Huang and Petruno remain members of the federal class, which

23   the Court certified on October 12, 2007 as consisting of all purchasers of Brocade common stock

24   between May 18, 2000 and May 15, 2005, who were damaged by defendants' alleged conduct.

25           In addition to the federal class action, four derivative actions purportedly brought on

26   behalf of Brocade were filed in this Court beginning in June 2005, consolidated as *In re Brocade*

---

[1] The "First Huang Complaint" is attached as Exhibit 2 to the Dunning Decl.
[2] The "Huang Lead Plaintiff Motion" is attached as Exhibit 3 to the Dunning Decl.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                    2                    NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                                     CASE NO. CV 07-5950

1  *Communications Systems, Inc. Derivative Litigation*, Case No. 3:05-CV-02233-CRB, and three

2  similar derivative actions were filed in the Santa Clara Superior Court, consolidated as *In Re*

3  *Brocade Communications Systems, Inc. Derivative Litigation*, Case No. 1-05-CV-041683.  Both

4  of these pending actions allege that defendants breached their fiduciary duties by, among other

5  things, failing to disclose the truth about Brocade's historical options granting practices.[3]

6      This action is the latest to be filed against Brocade and certain of its officers and directors

7  arising out of Brocade's historical stock options granting practices.  On October 23, 2007,

8  plaintiffs and their counsel commenced this action by filing the Complaint in the Santa Clara

9  Superior Court.  On November 26, 2007, Brocade filed a timely Notice of Removal of the action

10  to this Court pursuant to SLUSA's removal provision.  15 U.S.C. §§ 77p(c), 78bb(f)(2).  On the

11  same day, Brocade also filed a Notice of Filing of Notice of Removal with the Santa Clara

12  Superior Court, thereby effecting the removal pursuant to 28 U.S.C. § 1446(d).  On December 3,

13  2007, Brocade filed an administrative motion with this Court seeking to relate this action to the

14  Federal Class Action.

15      **B.    Allegations in the Complaint**

16      Plaintiffs bring their single "Class Claim for Breach of the Duty of Disclosure" on behalf

17  of themselves and all holders of Brocade common stock between February 21, 2001 and May 16,

18  2005 (the "Class").  (Compl. ¶¶ 1, 22, 106-110.)[4]  The premise of the claim is that Brocade's

19  proxy statements for the years 1997 through 2005 "false[ly] represent[ed] that option grants were

20  made with strike prices no less than the fair market value on the date of the grant," when in fact

21  defendants were engaged in "a pervasive options backdating scheme . . . causing the options to

22  be issued during much of that time to carry a much lower price." (*Id.* ¶ 108.)  Plaintiffs further

23  allege that "five years of Brocade's Financial Statements [were] materially false and misleading"

24  (*id.* ¶ 77) as they "failed to disclose that Brocade was engaging in a pervasive scheme and [ ]

25  fraudulent accounting practices that rendered its financial reporting wholly unreliable." (*Id.* ¶

26  

27  [3] *See* Fed. Deriv. Compl. ¶ 62 and State Deriv. Compl. ¶¶ 1, 17, attached as Exhibits 4 and 5, respectively, to the Dunning Decl.

28  [4] This class period differs from that alleged in the First Huang Complaint by a single day.  *See* Huang Compl. ¶ 1 (alleging claims on behalf of purchasers of Brocade common stock between February 21, 2001 and May 15, 2005).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                                3                NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                                           CASE NO. CV 07-5950

1    78.)  As a result of this "backdating scheme," plaintiffs allege that Brocade's proxy statements

2    and Form 10-Ks and 10-Qs for the years 1997 through 2006 "materially overstated Brocade's net

3    income and retained earnings."  (*Id.* ¶ 109.)

4           The Complaint seeks compensatory damages and other relief purportedly to redress harm

5    suffered by the Class as a result of the alleged dilution of its voting power and proportionate

6    share of ownership in Brocade.  (*Id.* ¶ 110.)  This dilution, plaintiffs claim, was "due to the

7    dedication of over millions [sic] of Brocade shares as a result of the addition of stock pursuant to

8    Evergreen Provision and adoption of the 2004 Equity Incentive Plan."  (*Id.*)  However, the

9    Complaint does not allege:

10          (1)    the content of any allegedly false and misleading proxy statement;

11          (2)    what proposals, if any, were put to shareholders pursuant to each proxy statement;

             (3)    what the "Evergreen Provision" provides, what it is a "provision" of, and whether
12                  and when it was voted on or approved by shareholders;

13          (4)    what the "2004 Equity Incentive Plan" provides and whether and when it was
                   voted on or approved by shareholders;

14          (5)    how many shares, if any, were issued pursuant to the Evergreen Provision and/or
                   the 2004 Equity Incentive Plan and when such shares were issued;
15
            (6)    whether any of the shares issued pursuant to the Evergreen Provision or the 2004
16                 Equity Incentive Plan were issued for the purpose of making stock option grants
                   and whether any such grants actually were made;

17          (7)    whether any plaintiff reviewed or relied on any proxy statement in voting his or
                   shares; or
18
            (8)    whether each purported Class Members would have voted differently had he or
19                 she known about the alleged options backdating scheme at Brocade.

20   The complete absence of these facts from the Complaint is not surprising as Brocade never

21   solicited shareholder approval for a "2004 Equity Incentive Plan" or "Evergreen Provision,"

22   much less issued shares or granted stock options pursuant thereto.  (*See, e.g.,* Brocade's Form

23   DEF 14A, dated February 23, 2004, attached as Ex. 6 to the Dunning Decl.)

24   **III.   ARGUMENT**

25          **A.    The Purpose and Scope of SLUSA**

26          In 1995, Congress determined that frivolous and abusive securities class action lawsuits

27   were harming "the entire U.S. economy."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*

28   547 U.S. 71, 81 (2006) (citation omitted).  To deter such suits, Congress enacted the Reform Act,

1    which subjects federal securities class actions to heightened pleading standards and other

2    substantive requirements, including restrictions on recoverable damages and attorneys' fees and

3    the selection and compensation of lead plaintiffs. *Id.* at 82.    However, an unintended

4    consequence of the Reform Act was that, rather than complying with its requirements, plaintiffs

5    began circumventing Congress's intent by bringing their class claims in state courts. SLUSA §§

6    2(2), (3), 112 Stat. 2337 (1998).    "To stem this shift . . . and prevent certain State private

7    securities class action lawsuits alleging fraud from being used to frustrate the objectives of the

8    Reform Act, Congress enacted SLUSA." *Dabit*, 547 U.S. at 82 (internal citations omitted).

9          SLUSA's core provision is its preemption provision, which provides that no class action

10    covered by SLUSA "may be maintained in any State or Federal court by any private party." *Id.*

11    (quoting 15 U.S.C. §§ 77p(b), 78bb(f)(1)).    Accordingly, when a covered class action is filed in

12    state court, it is "removable to the Federal district court for the district in which the action is

13    pending" and subject to automatic and mandatory dismissal. *Id.* §§ 77p(c), 78bb(f)(2); *see also*

14    *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1092 (11th Cir. 2002) (SLUSA "preempts certain state

15    law claims, allows for removal of state actions to federal court and requires immediate dismissal

16    of 'covered lawsuits'"); *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 98 (2d Cir. 2007) (same).    By

17    barring plaintiffs from bringing what are in essence federal securities fraud claims in state courts,

18    SLUSA effectuates Congress's intent that there be "national standards for securities class action

19    lawsuits involving nationally traded securities." *Dabit*, 547 U.S. at 87 (quoting SLUSA §§ 2(5)).

20          **B.     The Complaint Falls Squarely Within SLUSA's Core Preemption Provision**

21          SLUSA's core preemption provision provides that:

22          No covered class action based upon the statutory or common law of any State . . .
           may be maintained in any State or Federal court by any private party alleging –

23          (A) a misrepresentation or omission of a material fact in connection with the

24          purchase or sale of a covered security; or

           (B) that the defendant used or employed any manipulative or deceptive device or

25          contrivance in connection with the purchase or sale of a covered security.

26    15 U.S.C. §§ 77p(b), 78bb(f)(1)).    Accordingly, SLUSA requires dismissal where: (1) the action

27    is a "covered class action"; (2) based on state law; (3) that alleges a misrepresentation or

28    omission of material fact or a manipulative or deceptive device or contrivance; (4) "in

Cooley Godward
Kronish LLP
Attorneys At Law
New York

764026 v1/PA                         5                  NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                                        CASE NO. CV 07-5950

1  connection with the purchase or sale" of (5) a "covered security."  15 U.S.C. §§ 77p(b),

2  78bb(f)(1). Each of these conditions is irrefutably satisfied here.

3      First, this action is a "covered class action" because plaintiffs seek to recover damages on

4  a representative basis and allege that common questions of law and fact predominate.  (Compl.

5  ¶¶ 1, 22-23, Prayer for Relief.)  15 U.S.C. §§ 77p(f)(2), 78bb(f)(5)(B).

6      Second, plaintiffs' sole claim for breach of the fiduciary duty of disclosure is based on

7  state law. *See In re VeriSign Deriv. Litig.*, No. C 06-4165 PJH, 2007 WL 2705221, at *38 (N.D.

8  Cal. Sept. 14, 2007) ("the law of the state of [ ] incorporation, applies to . . . claims for breach of

9  fiduciary duty").

10      Third, the Complaint alleges that Brocade made material misrepresentations and

11  omissions about its stock option grants.  (*See, e.g.* Compl. ¶ 78 (financial statements "failed to

12  disclose that [it] was engaging in a pervasive [backdating] scheme and [ ] fraudulent accounting

13  practices"); ¶ 108 (proxy statements "false[ly] represent[ed] that option grants were made with

14  strike prices no less than the fair market value on the date of the grant").)

15      Fourth, defendants' alleged misstatements and omissions were "in connection with the

16  purchase or sale" of covered securities. *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1128

17  (9th Cir. 2002) ("the granting of an option constitutes a 'purchase or sale'" under SLUSA).

18      And fifth, Brocade common stock is a "covered security" because it is traded on the

19  Nasdaq National Market under the ticker symbol "BRCD."  (Compl. ¶ 23a.)  15 U.S.C. §§

20  77p(f)(3), 78bb(f)(5)(E) (defining "covered security" as meeting the definition in 15 U.S.C. §

21  77r(b)(1)(A)).

22      Thus, each of the requirements for SLUSA preemption is met in this case.

23  **C.    SLUSA's "Delaware Carve-Out" Does Not Apply**

24      Because their claim fails squarely within SLUSA, plaintiffs will likely seek to avoid

25  SLUSA's automatic dismissal requirement by asserting the protection of a narrow exception,

26  commonly referred to as the "Delaware carve-out."  Such an effort should fail.

27      The Delaware carve-out provides that a claim otherwise falling under SLUSA's core

28  preemption provision may nevertheless be maintained in state court if the claim "is based upon

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                    6                    NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                                     CASE NO. CV 07-5950

1    the statutory or common law of the State in which the issuer is incorporated . . ." *and* falls within

2    one or both of the carve-out's two prongs.  Specifically, the carve-out provides as follows:

3          (3) Preservation of certain actions--

4                (A) Actions under State law of State of incorporation

5                * * *

6          A covered class action [that is based upon the statutory or common law of the
          State in which the issuer is incorporated] is excepted from SLUSA's core
          preemption provision] if it involves:

7

8          (I) the purchase or sale of securities by the issuer or an affiliate of an issuer
          exclusively from or to holders of equity securities of the issuer; or

9          (II) any recommendation, position, or other communication with respect to the
          sale of securities of an issuer that –

10                (aa) is made by or on behalf of the issuer . . . to holders of equity securities
                of the issuer; and

11

12                (bb) concerns decisions of such equity holders with respect to voting their
                securities, acting in response to a tender or exchange offer, or exercising
                dissenters' or appraisal rights.

13

14    15 U.S.C § 77p(d)(1); 78bb(f)(3)(A).  This action does not fall within the Delaware carve-out for

15    two independent reasons.  First, plaintiffs failed to bring this action in Delaware, Brocade's state

16    of incorporation.  Second, the Complaint does not meet the requirements of either of the carve-

17    out's two prongs.

18          **1.    The Delaware Carve-Out Does Not Apply to this Action Because It
                Was Brought Outside of Brocade's State of Incorporation**

19

20          As a threshold matter, the Delaware carve-out applies only to actions brought in the

21    issuer's state of incorporation.   In Brocade's case, that state is Delaware.   (Compl. ¶ 6.)

22    Accordingly, the carve-out cannot save plaintiffs' claim as they opted to file it in state court in

23    California.

24          In interpreting a federal statute, the task of the court is to ascertain the intent of Congress

25    and to give effect to that intent. *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1032 (9th Cir. 1987).

26    To determine congressional intent, the first step is to look to the plain language of the statute.

27    *North Dakota v. United States*, 460 U.S. 300, 312 (1983).  Here, the most logical reading of

28    SLUSA's plain language is that, to fall within the Delaware carve-out, an action must "be

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                    7          NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                            CASE NO. CV 07-5950

1    determined in the state of the issuer's incorporation." *Drulias v. ADE Corp.*, No. Civ. A 06-

2    11033 PBS, 2006 WL 1766502 (D. Mass. June 26, 2006); *see also In re WorldCom, Inc. Sec.*

3    *Litig.*, Nos. 02 Civ. 3288 (DLC), 02 Civ. 8981 (DLC), 2003 WL 716243, at *15 n.31 (S.D.N.Y.

4    Mar. 3, 2003) (noting in dicta that SLUSA "preserve[s] the right to bring a covered class action

5    based on state law claims in an issuer's state of incorporation"). This conclusion is compelled by

6    the fact that the Delaware carve-out explicitly preserves from preemption only those "Actions

7    under State law of [the issuer's] State of incorporation." 15 U.S.C § 77p(d)(1); 78bb(f)(3)(A).

8        Moreover, SLUSA expressly states that its purpose is to "to prevent certain State private

9    securities class action lawsuits alleging fraud from being used to frustrate the objectives of the

10    [Reform Act and] to enact national standards for securities class action lawsuits involving

11    nationally traded securities, *while preserving the appropriate enforcement powers of State*

12    *securities regulators . . .*" SLUSA § 2(5) (emphasis added). Accordingly, in including the carve-

13    out language for "Actions under State law of State of incorporation," Congress's intent was to

14    protect the prerogative of states to continue to interpret and enforce their own laws. It was not, as

15    plaintiffs may suggest, to preserve to plaintiffs the right to bring securities class actions in state

16    courts outside of the state whose laws are at issue, as that would defeat SLUSA's core mandate of

17    creating "Uniform Standards" for such actions. And under no circumstances did Congress

18    contemplate that plaintiffs should be permitted to bring *both* a federal securities class action *and* a

19    state securities class action challenging the identical conduct.

20        Finally, interpreting the carve-out in this manner is the only reading of the statute which

21    comports with Congress's "clearly expressed legislative intent[]." *Consumer Prod. Safety*

22    *Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *I.N.S. v. Cardoza-Fonseca*, 480 U.S.

23    421, 433 n.12 (1987). The Supreme Court has repeatedly instructed that, even when the language

24    of the statute appears plain, the court should review the legislative history in order to determine

25    whether there is a "clearly expressed legislative intention" contrary to the statutory language. *Id.*

26    "'Very strong' evidence or explicit language from legislative history [will] overcome the plain

27    meaning naturally to be drawn from the language of the statute." *In re Seidel*, 752 F.2d 1382,

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA

8

NOTICE AND MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

1385 (9th Cir. 1985). Here, the legislative history on the carve-out is unequivocal—an action must be filed in the state of incorporation in order to fall within the Delaware carve-out.

The official committee reports from both houses of Congress, cited and relied upon by the Supreme Court in *Dabit*, 547 U.S. at 87, n.11, 12, provide in no uncertain terms that the Delaware carve-out only applies to actions brought in the issuer's state of incorporation. The Senate Banking Committee Report states:

> **[T]he committee expressly does not intend for suits excepted under [the Delaware carve-out] to be brought in venues other than the issuer's state of incorporation.**

S. Rep. 105-182, 1998 WL 226714, at *6 (1998) (emphasis added). The House Commerce Committee Report is fully and explicitly in accord:

> [SLUSA] . . . preserves State jurisdiction over: (1) certain actions that are based upon state law of the State in which the issuer of the security in question is incorporated. . . . **It is the intention of the managers that the suits under this exception be limited to the state in which [the] issuer of the security is incorporated.**

H.R. Conf. Rep. 105-803, 1998 WL 703964, at *13-14, n.2 (1998) (emphasis added). These statements of congressional intent—the only portions of the legislative history that speak to the issue—could not be more clear. Accordingly, even if SLUSA's plain language did not restrict the carve-out's application to the state of incorporation—and Brocade respectfully submits that it does—the Court must nevertheless read such a restriction into the statute because that was Congress's clear and explicit intent.[5]

In sum, the Delaware carve-out does not permit plaintiffs to file a state securities class action lawsuit outside of the state whose laws govern the claim. This action must therefore be dismissed under SLUSA.

### 2.    Neither Prong of the Delaware Carve-Out Applies to Plaintiffs' Action

Because plaintiffs brought their action in California and are precluded from relying on the Delaware carve-out, the Court's analysis need delve no further. However, even if the Court were

---

[5] In her recent decision in *Pace v. Bidzos* ("*VeriSign*"), No. C 07-3742-PJH, 2007 WL 2908283, at *2 (N.D. Cal. Oct. 3, 2007), Judge Hamilton stated that she found "no support in the statute for defendants' claim that the Delaware carve-out applies only to cases brought in the state courts of the state of incorporation." However, that decision contains no discussion or analysis of SLUSA's language or legislative history, which Brocade respectfully submits compel the opposition conclusion.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                                    9                    NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                                                     CASE NO. CV 07-5950

1  to find that this fact does not preclude application of the carve-out, the Complaint still must be

2  dismissed as plaintiffs' claim also fails to fall within either of the carve-out's two prongs.

3          **a.**      **The First Prong of the Carve-Out Is Inapplicable**

4        Under the first prong, a claim that is otherwise preempted under SLUSA may nevertheless

5  be maintained in state court if it involves "the purchase or sale of securities by the issuer . . .

6  *exclusively* from or to holders of equity securities of the issuer." 15 U.S.C §§ 77p(d)(1)(B)(i),

7  78bb(f)(3)(A)(ii)(I). Where securities are not exclusively sold to or purchased from *existing*

8  shareholders, the first prong of the carve-out does not apply. *See G.F. Thomas Inv. L.P. v. Cleco*

9  *Corp.*, 317 F. Supp. 2d 673, 681-85 (W.D. La. 2004) (holding that the sale or purchase must be to

10  or from existing equity holders for purposes of the Carve-Out); *Sofonia v. Principal Life Ins. Co.*,

11  378 F. Supp. 2d 1124, 1133-34 (S.D. Iowa 2005) (carve-out inapplicable where shares were not

12  offered exclusively to existing shareholders).

13        Here, plaintiffs do not allege—nor can they—that Brocade granted stock options

14  exclusively to existing shareholders. To the contrary, plaintiffs allege that Brocade issued options

15  to "new hires" and part-time employees. (*See, e.g,* Compl. ¶ 50.) Accordingly, plaintiffs cannot

16  rely on the first prong of the carve-out to save their claim from SLUSA preemption. *See, e.g.,*

17  *VeriSign*, 2007 WL 2908283, at *2 (refusing in very similar circumstances to find the first prong

18  of the carve-out applicable to plaintiff's disclosure claim).

19          **b.**      **The Second Prong of the Carve-Out Is Also Inapplicable**

20        The second prong is equally inapposite to plaintiffs' claim. Under that prong, an

21  otherwise preempted claim may be maintained only if it involves a "recommendation, position or

22  other communication with respect to the sale of securities" by an issuer to its shareholders that

23  "concerns decisions of those equity holders with respect to voting their securities, acting in

24  response a tender or exchange offer, or exercising dissenters' or appraisal rights." 15 U.S.C. §§

25  77p(b), 78bb(f)(1). The Complaint alleges no facts to trigger this exception.

26  ///

27  ///

28  ///

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA      10      NOTICE AND MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

1
2

**(1)     The Carve-Out Applies Only in the Context of Mergers and Other "Extraordinary Corporate Transactions"**

3     As Congress intended, the second prong of the carve-out preserves only those claims

4  based on a recommendation or communication with respect to a merger, tender offer, or other

5  extraordinary transaction constituting a "sale" of the issuer's securities.  Congress did not intend

6  the carve-out to  apply to a case such as this, which purports to challenge a routine proxy

7  statement seeking shareholder approval of routine corporate activity.

8     The second prong only applies to lawsuits challenging the accuracy of communications

9  (1) by a company; (2) to its existing shareholders; (3) recommending that they vote their shares,

10  respond to a tender or exchange offer or exercise appraisal/dissenters' rights; (4) "with respect to"

11  a "sale" of the issuer's securities.  15 U.S.C. §§ 77p(b), 78bb(f)(1).  The obvious (and only)

12  circumstance in which each of these specific and targeted conditions is met is in the context of a

13  corporate "sale" transaction.  Indeed, it is only in the context of major, transformative corporate

14  transactions, such as mergers or sales, that shareholders receive communications from

15  corporations concerning the options set forth in the second prong of the carve-out: (1) voting in

16  response to a proxy proposed by the company; (2) responding to a tender or exchange offer; or (3)

17  rejecting the transaction and assert dissenter's rights.  *See, e.g., Lazar v. Gregerson*, No. C 02-

18  0652 SI, 2002 WL 535405, at *3 (N.D. Cal. April 8, 2002) (accepting misstatements in merger

19  material sent to shareholders as qualifying communication under carve-out); *Alessi v. Beracha*,

20  244 F. Supp. 2d 354, 359 (D. Del. 2003) (press release regarding buy out program was a

21  qualifying communication triggering a shareholder response to a tender or exchange offer); *In re*

22  *Metlife Demutualization Litig.*, No. CV 00-2258 (TCP) (AKT), 2006 WL 2349998 (E.D.N.Y.

23  Aug. 7, 2006) (holding that reorganization is a "change-in-control" situation that fits under the

24  carve-out).

25     Moreover, the legislative history clearly confirms Congress's intent that the second prong

26  except only those cases challenging communications by a company to its shareholders in the

27  mergers and acquisitions context.  For example, Representative Anna Eshoo, one of SLUSA's

28  primary sponsors, summarized the need for the carve-out as follows:

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                    11                    NOTICE AND MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

First, the so-called "Delaware Problem." **The SEC was concerned that language in our bill would pre-empt, not only cases traditionally filed in federal courts prior to 1995, but also could pre-empt state laws regarding informing stockholders of mergers or other sell orders. These corporate actions are traditionally monitored by state regulators, and in the case of Delaware there is a long standing common law tradition.** It was not our intention to undermine this state law, and working with the SEC, the American Bar Association and the Delaware Bar, I believe we have developed effective language to carve-out these cases from our bill.

144 Cong. Rec. E1390-02, 1998 WL 413738, at 3 (July 21, 1998) (Speech of Rep. Eshoo) (emphasis added). The official Senate Banking Committee report acknowledges the same limitation. S. Rep. 105-182, 1998 WL 226714, at *6 (1998) (the Delaware carve-out "provides for the preservation of certain law suits brought under state law affecting the conduct of corporate officers with respect to certain corporate transactions, including tender offers, exchange offers or the exercise of dissenter's or appraisal rights"); *see also* David M. Legine & Adam C. Pritchard, *The Securities Litigation Uniform Standards Act of 1998: The Sun Sets on California's Blue Sky Laws*, 54 Bus. Law. 1, 25 (1998) (discussing Congressional intent that the carve-out exempt only cases involving communications concerning change-in-control situations—mergers, tender offers, and freeze-outs—traditionally entrusted to Delaware courts).

United States Securities and Exchange Commission ("SEC") Chairman Arthur Levitt's testimony before Congress, referenced in Representative Eshoo's speech as prompting inclusion of the carve-out, is equally clear:

[SLUSA] could have the unintended effect of preempting certain claims arising from transactions in which both the state and federal governments have a strong interest. In particular, **[SLUSA] could preempt state class actions for damages based on material misstatements or omissions in proxy and tender offer materials in connection with an extraordinary corporate transaction.** Such preemption would eliminate important areas of state corporate law that have long coexisted with, indeed, predate by almost a century, the federal securities laws.

Under current law, **mergers or other extraordinary transactions** may give rise to claims under both state corporate law and federal securities law. Shareholders who bring class actions challenging such transactions often allege a breach of fiduciary duty by target-company management and directors under state corporate law. State corporate law imposes . . . a duty of disclosure when the directors are seeking shareholder approval of certain transactions.

. . . Many state courts, particularly those in Delaware, have developed expertise and a coherent body of case law which provides guidance to companies and lends predictability to corporate transactions. **In addition, the Delaware courts, in particular, are known for their ability to resolve such disputes expeditiously .**

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                    12          NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                                 CASE NO. CV 07-5950

1    **. . Delay in resolving a dispute over a merger or acquisition could jeopardize
2    completion of a multi-billion-dollar transaction. Broad preemption would
     diminish the value of this body of precedent and these specialized courts as a
3    means of resolving corporate disputes.**

4    *Securities Litigation Uniform Standards Act of 1997: Hearing on S. 1260 Before the Subcomm.*

5    *On Sec. of the S. Comm. on Banking, Housing, and Urban Affairs*, 105th Cong. 22-23 (1997)

6    (testimony of SEC Chairman Arthur Levitt and SEC Comm'r Isaac C. Hunt, Jr.).[6]  Accordingly,

7    the legislative history is explicit that an "extraordinary corporate transaction" such as a merger or

8    tender offer must be present in order to trigger the second prong of the carve-out.

9          By contrast, the corporate event at issue here is a corporation's routine request that its

10   shareholders approve the issuance of shares for purposes of making stock option grants.  This is a

11   common and typically insignificant event in the life of a corporation.  Further, the issuance of

12   options pursuant to a stock option plan in no way implicates any state's enforcement powers or

13   "long standing common law tradition" because the adoption of a stock option plan and issuance

14   of stock options are governed by *federal law*, not the laws of Delaware or any other state.  *See,*

15   *e.g.*, 15 U.S.C. § 78l (requiring issuers to register stock option plans).  Accordingly, the second

16   prong of the carve-out does not and cannot apply to plaintiffs' claim.

17                    **(2)    Recent District Court Decisions on this Issue Are
                              Neither Binding Nor Persuasive.**
18

19         Plaintiffs will no doubt point to three recent district court decisions in which the court

20   found the second prong of the carve-out to apply in cases involving alleged options backdating.

21   *VeriSign*, 2007 WL 2908283, at *2; *City of Ann Arbor Employees' Ret. Sys. v. Gecht*, No. C-06-

22   7453, 2007 WL 760568, at *4-5 (N.D. Cal. Mar. 9, 2007) (same); *Indiana Elec. Workers Pension*

23   *Trust Fund, IBEW v. Millard*, No. 07 Civ. 172 (JGK), 2007 WL 2141697, at *1 (S.D.N.Y. Jul. 25,

24   2007).  Each of those decisions held that the second prong of the carve-out was triggered where

25   the issuer's "proxy statement sought shareholder approval of an increase in the shares authorized

26   for stock option grants and thus concern[ed] decisions of such equity holders with respect to

27   voting their securities."  *Millard*, 2007 WL 2141697, at *4; *see also VeriSign*, 2007 WL 2908283,

28   ───────────────────
     [6] A copy of the complete text of the SEC's testimony is attached to the Dunning Decl as Exhibit 7.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                    13            NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                              CASE NO. CV 07-5950

1    at *2; *Gecht*, 2007 WL 760568, at *3. Brocade respectfully submits that these decisions were

2    wrongly decided.

3    Most fundamentally, these cases either ignore or improperly dismiss the language of

4    SLUSA and its legislative history indicating that the carve-out is meant to be a narrow exception

5    to a very broad preemption statute. *See Dabit*, 547 U.S. at 86 (SLUSA's preemption provision is

6    entitled to a broad construction as a "narrow reading would undercut the effectiveness of the 1995

7    Reform Act and thus run contrary to SLUSA's stated purpose"); *City of Edmonds v. Oxford*

8    *House, Inc.*, 514 U.S. 725, 731-32 (1995) (exceptions to a statute entitled to a broad construction

9    must be "read narrowly in order to preserve the primary operation" of the statute). In so doing,

10   these cases undermine Congress's clearly expressed intent in passing SLUSA. They also violate

11   well-settled rules of statutory construction designed to ensure that Congress's intent is effected.

12   In any event, the decisions are not binding on this Court. *See, e.g., Suever v. Connell*, No. C 03-

13   00156-RS, 2007 WL 3313954 (N.D. Cal. Nov. 6, 2007) ("a sister federal decision . . . is not

14   binding"); *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1151 (N.D. Cal. 2003)

15   (same).

16                        **(3)    The Carve-Out Cannot Apply to Plaintiffs' Claim Even**
                                  **Under the Broadest Possible Interpretation**
17

18   Finally, even if the Court were to conclude that a routine proxy statement discussing the

19   issuance of shares for stock option grants triggers the second prong of the Delaware carve-out,

20   plaintiffs' claim still must be dismissed under SLUSA because the Complaint does not plead the

21   existence of such a proxy statement. In each of the three cases discussed above, the court held

22   that the second prong of the carve-out was triggered by allegations that the issuer sought and

23   obtained shareholder approval of an increase in the shares authorized for stock option grants.

24   *Millard*, 2007 WL 2141697, at *4; *VeriSign*, 2007 WL 2908283, at *2; *Gecht*, 2007 WL 760568,

25   at *3. Here, by contrast, the Complaint nowhere alleges: (1) that Brocade solicited shareholder

26   votes with respect to the issuance of shares for stock option grants; (2) that any plaintiff voted

27   with respect thereto; or (3) that shareholders approved any issuance of shares. Indeed, the

28   Complaint does not allege that shareholders were asked to vote, or actually did vote, on anything.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                                14                    NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                                                 CASE NO. CV 07-5950

As such, plaintiffs have not pled that Brocade's proxy statements constituted communications with respect to the sale of Brocade securities *concerning shareholder decisions to vote their shares*. 15 U.S.C. §§ 77p(b), 78bb(f)(1).[7] Accordingly, the allegations in the Complaint do not permit plaintiffs to circumvent SLUSA by relying on the second prong of the carve-out.

## IV.    CONCLUSION

For all of the foregoing reasons, Brocade respectfully submits that plaintiffs' action is preempted under SLUSA and that it must be dismissed with prejudice.[8]

Dated: December 3, 2007             COOLEY GODWARD KRONISH LLP


                                    /s/  Grant P. Fondo
                                    Grant P. Fondo

                                    Attorneys for Defendant
                                    BROCADE COMMUNICATIONS SYSTEMS, INC.

---

[7] To the contrary, all that the Complaint alleges is that Brocade issued shares pursuant to a "2004 Equity Incentive Plan" and "Evergreen Provision," which are not alleged to have been voted upon because they never actually existed.
[8] Brocade respectfully submits that SLUSA bars plaintiffs from bringing their claim in any court. However, in the event that the Court remands this action or otherwise fails to dismiss with prejudice, Brocade reserves its right to move to dismiss, answer or otherwise attack the adequacy of the Complaint in state court. *See* Cal. Civ. Proc. Code § 430.90.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

764026 v1/PA                    15                    NOTICE AND MOTION TO DISMISS UNDER SLUSA
                                                      CASE NO. CV 07-5950