# EXHIBIT 5

| | | | | |
|---|---|---|---|---|
| | 8/21/2000 | 10,000 | $212.23 | $2,122,300.00 |
| | 8/22/2000 | 40,000 | $213.53 | $8,541,200.00 |
| | 8/23/2000 | 15,000 | $214.00 | $3,210,000.00 |
| | 8/24/2000 | 50,000 | $220.12 | $11,006,000.00 |
| | 8/24/2000 | 10,000 | $223.50 | $2,235,000.00 |
| | 8/30/2000 | 60,000 | $218.16 | $13,089,600.00 |
| | 8/31/2000 | 20,000 | $227.41 | $4,548,200.00 |
| | 9/1/2000 | 10,000 | $229.00 | $2,290,000.00 |
| | 9/14/2000 | 15,000 | $219.50 | $3,292,500.00 |
| | 9/20/2000 | 15,000 | $220.38 | $3,305,700.00 |
| | 9/20/2000 | 15,000 | $223.38 | $3,350,700.00 |
| | 9/20/2000 | 15,000 | $230.19 | $3,452,850.00 |
| | 12/1/2000 | 40,000 | $86.78 | $3,471,200.00 |
| | 12/4/2000 | 80,000 | $85.19 | $6,815,200.00 |
| | 12/5/2000 | 80,000 | $85.96 | $6,876,800.00 |
| | 12/5/2000 | 100,000 | $92.25 | $9,225,000.00 |
| | 12/8/2000 | 100,000 | $108.79 | $10,879,000.00 |
| | 1/4/2001 | 25,000 | $89.38 | $2,234,500.00 |
| | 1/5/2001 | 75,000 | $79.65 | $5,973,750.00 |
| | 5/17/2001 | 25,000 | $47.49 | $1,187,250.00 |
| | 5/18/2001 | 25,000 | $46.56 | $1,164,000.00 |
| | 5/21/2001 | 220,000 | $49.96 | $10,991,200.00 |
| | 5/21/2001 | 18,000 | $49.96 | $899,280.00 |
| | 5/21/2001 | 12,000 | $49.96 | $599,520.00 |
| | 12/5/2001 | 50,000 | $36.08 | $1,804,000.00 |
| | 12/7/2001 | 50,000 | $38.15 | $1,907,500.00 |
| | 12/11/2001 | 50,000 | $39.00 | $1,950,000.00 |
| | | 2,018,320 | | $271,440,260.00 |
| | | | | |
| BYRD | 9/22/1999 | 1,855 | $225.13 | $417,616.15 |
| | 9/22/1999 | 6,395 | $226.33 | $1,447,380.35 |
| | 9/22/1999 | 6,395 | $226.33 | $1,447,380.35 |
| | 9/22/1999 | 6,395 | $226.33 | $1,447,380.35 |
| | 9/22/1999 | 6,395 | $226.33 | $1,447,380.35 |
| | 9/23/1999 | 1,855 | $225.13 | $417,616.15 |
| | 9/23/1999 | 1,855 | $225.13 | $417,616.15 |
| | 9/23/1999 | 1,855 | $225.13 | $417,616.15 |
| | 12/23/1999 | 33,500 | $157.19 | $5,265,865.00 |
| | 12/23/1999 | 3,500 | $157.19 | $550,165.00 |
| | 12/23/1999 | 3,500 | $157.19 | $550,165.00 |
| | 12/23/1999 | 3,500 | $157.19 | $550,165.00 |
| | 4/6/2000 | 37,500 | $141.20 | $5,295,000.00 |
| | 4/7/2000 | 65,000 | $145.68 | $9,469,200.00 |
| | 6/16/2000 | 60,000 | $141.76 | $8,505,600.00 |
| | 7/3/2000 | 6,500 | $180.50 | $1,173,250.00 |
| | 7/5/2000 | 10,000 | $180.31 | $1,803,100.00 |
| | 7/6/2000 | 5,000 | $173.16 | $865,800.00 |
| | 7/6/2000 | 4,000 | $173.44 | $693,760.00 |
| | 7/6/2000 | 5,500 | $174.06 | $957,330.00 |
| | 8/24/2000 | 27,000 | $218.49 | $5,899,230.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 9/5/2000 | 28,000 | $229.18 | $6,417,040.00 |
| | 10/3/2000 | 17,000 | $224.86 | $3,822,620.00 |
| | 10/4/2000 | 10,000 | $220.19 | $2,201,900.00 |
| | 12/11/2001 | 300,000 | $38.58 | $11,574,000.00 |
| | 7/5/2002 | 880 | $16.70 | $14,696.00 |
| | | 653,380 | | $73,068,872.00 |
| | | | | |
| CANOVA | 6/2/2003 | 4,903 | $6.43 | $31,526.29 |
| | | 4,903 | | $31,526.29 |
| | | | | |
| DEMPSEY | 12/1/1999 | 6,846 | $141.68 | $969,954.29 |
| | 12/3/1999 | 2,500 | $141.63 | $354,075.00 |
| | 1/5/2000 | 5,000 | $150.38 | $751,900.00 |
| | 1/5/2000 | 5,000 | $155.00 | $775,000.00 |
| | 1/5/2000 | 5,000 | $158.88 | $794,400.00 |
| | 1/5/2000 | 5,000 | $168.25 | $841,250.00 |
| | 3/23/2000 | 2,500 | $174.44 | $436,100.00 |
| | 3/24/2000 | 5,000 | $175.00 | $875,000.00 |
| | 3/30/2000 | 2,500 | $174.38 | $435,950.00 |
| | 3/31/2000 | 5,000 | $175.53 | $877,650.00 |
| | 5/24/2000 | 39,000 | $97.14 | $3,788,460.00 |
| | 8/22/2000 | 4,000 | $215.00 | $860,000.00 |
| | 8/23/2000 | 4,000 | $215.25 | $861,000.00 |
| | 12/11/2000 | 10,000 | $114.10 | $1,141,000.00 |
| | 1/4/2001 | 8,000 | $90.28 | $722,240.00 |
| | 12/12/2001 | 9,648 | $39.26 | $378,780.48 |
| | 12/12/2001 | 5,656 | $39.26 | $222,054.56 |
| | 9/23/2002 | 4,875 | $10.12 | $49,335.00 |
| | 9/24/2002 | 7,299 | $9.83 | $71,749.17 |
| | | 136,824 | | $15,205,898.50 |
| | | | | |
| DERANLEAU | 3/23/2006 | 1,000 | $6.39 | $6,390.00 |
| | 3/23/2006 | 1,784 | $6.40 | $11,417.60 |
| | | 2,784 | | $17,807.60 |
| | | | | |
| KLAYKO | 10/8/2004 | 8,000 | $6.18 | $49,440.00 |
| | 2/23/2006 | 300,000 | $5.03 | $1,509,000.00 |
| | 2/23/2006 | 100,000 | $5.03 | $503,000.00 |
| | | 408,000 | | $2,061,440.00 |
| | | | | |
| LESLIE | 8/23/1999 | 12,186 | $161.25 | $1,964,992.50 |
| | 2/23/2000 | 17,500 | $267.22 | $4,676,350.00 |
| | 2/24/2000 | 9,164 | $268.23 | $2,458,059.72 |
| | 2/24/2000 | 23,336 | $269.09 | $6,279,484.24 |
| | 8/25/2000 | 14,268 | $216.42 | $3,087,880.56 |
| | 8/25/2000 | 2,666 | $216.42 | $576,975.72 |
| | 12/12/2000 | 28,000 | $114.20 | $3,197,600.00 |
| | 12/12/2000 | 6,000 | $114.20 | $685,200.00 |
| | 12/3/2001 | 144,168 | $31.02 | $4,472,091.36 |
| | 12/3/2001 | 35,324 | $31.02 | $1,095,750.48 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 4/4/2002 | 120,000 | $27.07 | $3,248,400.00 |
| | 4/4/2002 | 20,000 | $27.07 | $541,400.00 |
| | | 432,612 | | $32,284,184.58 |
| | | | | |
| MALAVALLI | 8/23/1999 | 68,950 | $164.22 | $11,322,969.00 |
| | 9/22/1999 | 4,650 | $226.33 | $1,052,434.50 |
| | 9/23/1999 | 7,350 | $222.13 | $1,632,655.50 |
| | 9/27/1999 | 6,000 | $210.27 | $1,261,620.00 |
| | 9/28/1999 | 6,000 | $213.15 | $1,278,900.00 |
| | 9/30/1999 | 6,000 | $211.71 | $1,270,260.00 |
| | 12/8/1999 | 20,000 | $143.69 | $2,873,800.00 |
| | 12/16/1999 | 20,000 | $130.31 | $2,606,200.00 |
| | 12/21/1999 | 20,000 | $147.19 | $2,943,800.00 |
| | 1/6/2000 | 10,000 | $159.00 | $1,590,000.00 |
| | 1/7/2000 | 10,000 | $152.02 | $1,520,200.00 |
| | 2/22/2000 | 10,000 | $266.06 | $2,660,600.00 |
| | 2/22/2000 | 15,000 | $266.96 | $4,004,400.00 |
| | 2/23/2000 | 8,000 | $267.90 | $2,143,200.00 |
| | 2/24/2000 | 25,000 | $268.37 | $6,709,250.00 |
| | 2/25/2000 | 25,000 | $269.16 | $6,729,000.00 |
| | 2/25/2000 | 17,000 | $274.00 | $4,658,000.00 |
| | 3/9/2000 | 50,000 | $325.33 | $16,266,500.00 |
| | 5/25/2000 | 30,000 | $105.90 | $3,177,000.00 |
| | 5/25/2000 | 15,000 | $110.40 | $1,656,000.00 |
| | 5/30/2000 | 15,000 | $110.03 | $1,650,450.00 |
| | 5/31/2000 | 40,000 | $115.69 | $4,627,600.00 |
| | 6/1/2000 | 22,500 | $120.47 | $2,710,575.00 |
| | 6/2/2000 | 7,500 | $126.50 | $948,750.00 |
| | 6/2/2000 | 40,000 | $132.84 | $5,313,600.00 |
| | 6/7/2000 | 20,000 | $147.94 | $2,958,800.00 |
| | 6/19/2000 | 25,000 | $145.00 | $3,625,000.00 |
| | 6/19/2000 | 25,000 | $148.31 | $3,707,750.00 |
| | 7/7/2000 | 10,000 | $178.00 | $1,780,000.00 |
| | 9/1/2000 | 20,000 | $230.00 | $4,600,000.00 |
| | 9/5/2000 | 6,700 | $230.00 | $1,541,000.00 |
| | 9/14/2000 | 20,000 | $218.07 | $4,361,400.00 |
| | 9/20/2000 | 13,300 | $230.09 | $3,060,197.00 |
| | 9/21/2000 | 20,000 | $234.17 | $4,683,400.00 |
| | 9/22/2000 | 25,000 | $244.66 | $6,116,500.00 |
| | 9/28/2000 | 10,000 | $243.13 | $2,431,300.00 |
| | | 693,950 | | $131,473,111.00 |
| | | | | |
| NEIMAN | 9/22/1999 | 10,100 | $223.07 | $2,253,007.00 |
| | 9/22/1999 | 23,325 | $226.33 | $5,279,147.25 |
| | 9/23/1999 | 6,775 | $225.13 | $1,525,255.75 |
| | 9/23/1999 | 3,900 | $226.33 | $882,687.00 |
| | 9/24/1999 | 16,100 | $216.45 | $3,484,845.00 |
| | 10/6/1999 | 728 | $209.19 | $152,290.32 |
| | 12/3/1999 | 15,296 | $142.00 | $2,172,032.00 |
| | 12/3/1999 | 412 | $142.00 | $58,504.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 12/3/1999 | 20,000 | $142.14 | $2,842,800.00 |
| | 12/6/1999 | 13,000 | $142.50 | $1,852,500.00 |
| | 12/6/1999 | 10,000 | $143.38 | $1,433,800.00 |
| | 12/7/1999 | 40,000 | $138.47 | $5,538,800.00 |
| | 12/8/1999 | 7,000 | $142.50 | $997,500.00 |
| | 12/8/1999 | 12,500 | $145.20 | $1,815,000.00 |
| | 12/10/1999 | 2,500 | $142.00 | $355,000.00 |
| | 12/17/1999 | 17,500 | $142.15 | $2,487,625.00 |
| | 12/20/1999 | 18,800 | $142.19 | $2,673,172.00 |
| | 12/21/1999 | 7,500 | $144.93 | $1,086,975.00 |
| | 12/22/1999 | 50,000 | $152.77 | $7,638,500.00 |
| | 12/27/1999 | 6,000 | $157.50 | $945,000.00 |
| | 12/28/1999 | 50,000 | $155.28 | $7,764,000.00 |
| | 12/29/1999 | 50,000 | $162.59 | $8,129,500.00 |
| | 1/3/2000 | 50,000 | $169.85 | $8,492,500.00 |
| | 2/22/2000 | 50,000 | $265.94 | $13,297,000.00 |
| | 2/23/2000 | 50,000 | $268.32 | $13,416,000.00 |
| | 2/28/2000 | 31,150 | $283.18 | $8,821,057.00 |
| | 3/1/2000 | 90,842 | $295.79 | $26,870,155.18 |
| | 3/2/2000 | 3,000 | $315.00 | $945,000.00 |
| | 3/3/2000 | 97,000 | $315.45 | $30,598,650.00 |
| | 3/6/2000 | 80,000 | $322.66 | $25,812,800.00 |
| | 3/7/2000 | 20,000 | $336.47 | $6,729,400.00 |
| | 3/7/2000 | 20,000 | $338.00 | $6,760,000.00 |
| | 3/7/2000 | 20,000 | $340.33 | $6,806,600.00 |
| | 3/10/2000 | 10,000 | $340.00 | $3,400,000.00 |
| | 3/10/2000 | 10,000 | $345.00 | $3,450,000.00 |
| | 3/20/2000 | 21,000 | $167.52 | $3,517,920.00 |
| | 3/22/2000 | 19,000 | $168.27 | $3,197,130.00 |
| | 6/20/2000 | 13,508 | $159.19 | $2,150,338.52 |
| | 6/20/2000 | 13,509 | $160.19 | $2,164,006.71 |
| | 8/21/2000 | 96,500 | $211.10 | $20,371,150.00 |
| | 8/22/2000 | 3,500 | $211.00 | $738,500.00 |
| | 12/1/2000 | 20,000 | $83.69 | $1,673,800.00 |
| | | 1,100,445 | | $250,579,947.73 |
| REYES | 9/22/1999 | 9,300 | $226.33 | $2,104,869.00 |
| | 9/23/1999 | 14,700 | $225.13 | $3,309,411.00 |
| | 9/27/1999 | 15,000 | $210.27 | $3,154,050.00 |
| | 9/28/1999 | 16,000 | $213.15 | $3,410,400.00 |
| | 9/28/1999 | 23,500 | $216.32 | $5,083,520.00 |
| | 9/30/1999 | 16,500 | $211.71 | $3,493,215.00 |
| | 10/1/1999 | 13,200 | $208.02 | $2,745,864.00 |
| | 10/4/1999 | 20,000 | $206.31 | $4,126,200.00 |
| | 10/5/1999 | 10,000 | $207.53 | $2,075,300.00 |
| | 10/6/1999 | 16,800 | $209.85 | $3,525,480.00 |
| | 12/15/1999 | 50,000 | $123.56 | $6,178,000.00 |
| | 12/15/1999 | 25,000 | $124.44 | $3,111,000.00 |
| | 12/16/1999 | 60,500 | $128.88 | $7,797,240.00 |
| | 12/17/1999 | 50,000 | $139.11 | $6,955,500.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | |
|---|---|---|---|
| 12/17/1999 | 11,500 | $141.00 | $1,621,500.00 |
| 12/20/1999 | 15,000 | $145.00 | $2,175,000.00 |
| 12/21/1999 | 100,000 | $151.80 | $15,180,000.00 |
| 2/22/2000 | 17,500 | $267.00 | $4,672,500.00 |
| 2/23/2000 | 12,500 | $267.90 | $3,348,750.00 |
| 2/24/2000 | 30,000 | $268.37 | $8,051,100.00 |
| 2/25/2000 | 40,000 | $269.16 | $10,766,400.00 |
| 2/25/2000 | 50,000 | $270.83 | $13,541,500.00 |
| 2/25/2000 | 25,000 | $274.00 | $6,850,000.00 |
| 2/28/2000 | 25,000 | $275.30 | $6,882,500.00 |
| 2/28/2000 | 100,000 | $283.71 | $28,371,000.00 |
| 3/7/2000 | 96,000 | $337.54 | $32,403,840.00 |
| 3/8/2000 | 5,000 | $332.44 | $1,662,200.00 |
| 3/9/2000 | 49,000 | $325.33 | $15,941,170.00 |
| 3/10/2000 | 5,500 | $342.91 | $1,886,005.00 |
| 3/13/2000 | 10,000 | $335.95 | $3,359,500.00 |
| 3/14/2000 | 6,000 | $338.59 | $2,031,540.00 |
| 3/17/2000 | 57,000 | $153.07 | $8,724,990.00 |
| 5/19/2000 | 100,000 | $100.02 | $10,002,000.00 |
| 5/23/2000 | 100,000 | $110.54 | $11,054,000.00 |
| 5/31/2000 | 25,000 | $120.20 | $3,005,000.00 |
| 6/2/2000 | 25,000 | $133.18 | $3,329,500.00 |
| 6/2/2000 | 75,000 | $133.30 | $9,997,500.00 |
| 6/8/2000 | 25,000 | $151.79 | $3,794,750.00 |
| 6/9/2000 | 5,000 | $155.00 | $775,000.00 |
| 6/14/2000 | 50,000 | $142.19 | $7,109,500.00 |
| 6/15/2000 | 100,000 | $140.24 | $14,024,000.00 |
| 6/16/2000 | 50,000 | $143.25 | $7,162,500.00 |
| 6/26/2000 | 22,145 | $157.19 | $3,480,972.55 |
| 8/21/2000 | 32,500 | $212.50 | $6,906,250.00 |
| 8/22/2000 | 67,500 | $212.01 | $14,310,675.00 |
| 8/22/2000 | 50,000 | $213.61 | $10,680,500.00 |
| 8/23/2000 | 50,000 | $214.54 | $10,727,000.00 |
| 8/24/2000 | 40,000 | $219.53 | $8,781,200.00 |
| 8/24/2000 | 10,000 | $223.50 | $2,235,000.00 |
| 8/30/2000 | 5,942 | $219.63 | $1,305,041.46 |
| 9/18/2000 | 127,000 | $214.26 | $27,211,020.00 |
| 9/18/2000 | 973 | $214.26 | $208,474.98 |
| 12/5/2000 | 150,000 | $87.97 | $13,195,500.00 |
| 12/5/2000 | 100,000 | $94.63 | $9,463,000.00 |
| 12/6/2000 | 50,000 | $97.44 | $4,872,000.00 |
| 12/7/2000 | 100,000 | $98.41 | $9,841,000.00 |
| 12/8/2000 | 420 | $106.62 | $44,780.40 |
| 12/8/2000 | 72,886 | $106.62 | $7,771,105.32 |
| 12/11/2000 | 39,000 | $113.51 | $4,426,890.00 |
| 12/27/2000 | 100,000 | $88.09 | $8,809,000.00 |
| 12/28/2000 | 100,000 | $93.35 | $9,335,000.00 |
| 12/28/2000 | 20,944 | $96.42 | $2,019,420.48 |
| 12/29/2000 | 35,000 | $97.88 | $3,425,800.00 |
| 5/17/2001 | 250,000 | $46.47 | $11,617,500.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 5/17/2001 | 50,000 | $47.00 | $2,350,000.00 |
| | 6/7/2001 | 300,000 | $46.35 | $13,905,000.00 |
| | 12/4/2001 | 250,000 | $33.10 | $8,275,000.00 |
| | 12/5/2001 | 250,000 | $36.18 | $9,045,000.00 |
| | 12/10/2001 | 500,000 | $37.52 | $18,760,000.00 |
| | 12/11/2001 | 630,000 | $39.10 | $24,633,000.00 |
| | 1/4/2002 | 85,600 | $37.44 | $3,204,864.00 |
| | 1/4/2002 | 85,600 | $37.99 | $3,251,944.00 |
| | 3/31/2004 | 100,000 | $6.64 | $664,000.00 |
| | 2/22/2005 | 449 | $6.30 | $2,828.70 |
| | 2/22/2005 | 124,985 | $6.32 | $789,905.20 |
| | 2/22/2005 | 173,495 | $6.33 | $1,098,223.35 |
| | 2/22/2005 | 221,710 | $6.34 | $1,405,641.40 |
| | 2/22/2005 | 183,152 | $6.35 | $1,163,015.20 |
| | 2/22/2005 | 69,875 | $6.36 | $444,405.00 |
| | 2/22/2005 | 31,239 | $6.37 | $198,992.43 |
| | 2/22/2005 | 136,712 | $6.38 | $872,222.56 |
| | 2/22/2005 | 109,300 | $6.39 | $698,427.00 |
| | 2/22/2005 | 13,900 | $6.40 | $88,960.00 |
| | 2/22/2005 | 4,000 | $6.41 | $25,640.00 |
| | 2/22/2005 | 40,700 | $6.42 | $261,294.00 |
| | 2/22/2005 | 1,500 | $6.43 | $9,645.00 |
| | 2/22/2005 | 15,000 | $6.45 | $96,750.00 |
| | 2/22/2005 | 3,900 | $6.46 | $25,194.00 |
| | 2/22/2005 | 833 | $6.47 | $5,389.51 |
| | 2/22/2005 | 5,000 | $6.49 | $32,450.00 |
| | 2/22/2005 | 48,600 | $6.50 | $315,900.00 |
| | 2/22/2005 | 31,150 | $6.51 | $202,786.50 |
| | 2/22/2005 | 1,500 | $6.52 | $9,780.00 |
| | 2/23/2005 | 809 | $6.07 | $4,910.63 |
| | 2/23/2005 | 365,221 | $6.08 | $2,220,543.68 |
| | 2/23/2005 | 179,331 | $6.10 | $1,093,919.10 |
| | 2/23/2005 | 134,970 | $6.11 | $824,666.70 |
| | 2/23/2005 | 82,800 | $6.12 | $506,736.00 |
| | 2/23/2005 | 7,369 | $6.13 | $45,171.97 |
| | 2/23/2005 | 5,893 | $6.15 | $36,241.95 |
| | 2/23/2005 | 14,700 | $6.16 | $90,552.00 |
| | 2/23/2005 | 12,600 | $6.17 | $77,742.00 |
| | 2/23/2005 | 31,907 | $6.18 | $197,185.26 |
| | 2/23/2005 | 20,000 | $6.19 | $123,800.00 |
| | 2/23/2005 | 25,600 | $6.20 | $158,720.00 |
| | 2/23/2005 | 39,800 | $6.21 | $247,158.00 |
| | 2/23/2005 | 55,000 | $6.22 | $342,100.00 |
| | 2/23/2005 | 14,000 | $6.23 | $87,220.00 |
| | 2/23/2005 | 9,893 | $6.24 | $61,732.32 |
| | 2/23/2005 | 5,600 | $6.25 | $35,000.00 |
| | 2/23/2005 | 16,100 | $6.29 | $101,269.00 |
| | 2/23/2005 | 54,700 | $6.30 | $344,610.00 |
| | 2/23/2005 | 18,700 | $6.31 | $117,997.00 |
| | 2/23/2005 | 42,000 | $6.32 | $265,440.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | | 2/23/2005 | 5,000 | $6.33 | $31,650.00 |
| | | 2/23/2005 | 10,315 | $6.34 | $65,397.10 |
| | | 2/23/2005 | 900 | $6.35 | $5,715.00 |
| | | 2/23/2005 | 11,434 | $6.37 | $72,834.58 |
| | | 2/23/2005 | 6,358 | $6.38 | $40,564.04 |
| | | 2/24/2005 | 900,000 | $6.10 | $5,490,000.00 |
| | | 2/24/2005 | 12,466 | $6.10 | $76,042.60 |
| | | 2/24/2005 | 373,747 | $6.11 | $2,283,594.17 |
| | | 2/24/2005 | 464,788 | $6.12 | $2,844,502.56 |
| | | 2/24/2005 | 175,777 | $6.13 | $1,077,513.01 |
| | | 2/24/2005 | 67,445 | $6.14 | $414,112.30 |
| | | 2/24/2005 | 127,698 | $6.15 | $785,342.70 |
| | | 2/24/2005 | 165,453 | $6.16 | $1,019,190.48 |
| | | 2/24/2005 | 62,000 | $6.17 | $382,540.00 |
| | | 2/24/2005 | 138,479 | $6.18 | $855,800.22 |
| | | 2/24/2005 | 50,400 | $6.19 | $311,976.00 |
| | | | 10,152,263 | | $580,036,172.41 |
| | | | | | |
| RINKLE | | 8/23/1999 | 24,000 | $164.22 | $3,941,280.00 |
| | | 9/23/1999 | 4,000 | $225.13 | $900,520.00 |
| | | 9/27/1999 | 4,000 | $210.27 | $841,080.00 |
| | | 9/28/1999 | 2,500 | $213.15 | $532,875.00 |
| | | 9/30/1999 | 1,500 | $211.71 | $317,565.00 |
| | | 12/27/1999 | 10,650 | $158.00 | $1,682,700.00 |
| | | 12/28/1999 | 24,000 | $158.00 | $3,792,000.00 |
| | | 3/1/2000 | 12,500 | $299.75 | $3,746,875.00 |
| | | 3/2/2000 | 12,500 | $303.05 | $3,788,125.00 |
| | | 3/6/2000 | 2,000 | $325.00 | $650,000.00 |
| | | 3/7/2000 | 8,000 | $340.33 | $2,722,640.00 |
| | | 3/23/2000 | 20,000 | $174.20 | $3,484,000.00 |
| | | 6/16/2000 | 50,000 | $142.00 | $7,100,000.00 |
| | | 6/19/2000 | 30,000 | $150.17 | $4,505,100.00 |
| | | 7/6/2000 | 3,250 | $173.05 | $562,412.50 |
| | | 7/6/2000 | 3,250 | $173.05 | $562,412.50 |
| | | 7/6/2000 | 3,500 | $173.05 | $605,675.00 |
| | | 7/7/2000 | 1,725 | $178.00 | $307,050.00 |
| | | 7/7/2000 | 1,625 | $178.00 | $289,250.00 |
| | | 7/7/2000 | 1,625 | $178.00 | $289,250.00 |
| | | 7/7/2000 | 1,725 | $180.00 | $310,500.00 |
| | | 7/7/2000 | 1,625 | $180.00 | $292,500.00 |
| | | 7/7/2000 | 1,625 | $180.00 | $292,500.00 |
| | | 9/22/2000 | 20,000 | $245.94 | $4,918,800.00 |
| | | 9/25/2000 | 16,300 | $257.47 | $4,196,761.00 |
| | | 9/25/2000 | 5,000 | $258.50 | $1,292,500.00 |
| | | 9/25/2000 | 5,000 | $258.50 | $1,292,500.00 |
| | | 9/26/2000 | 6,000 | $240.06 | $1,440,360.00 |
| | | 9/26/2000 | 6,000 | $240.06 | $1,440,360.00 |
| | | 9/26/2000 | 700 | $240.06 | $168,042.00 |
| | | 9/27/2000 | 600 | $240.40 | $144,240.00 |
| | | 9/27/2000 | 600 | $240.40 | $144,240.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 9/5/2000 | 28,000 | $229.18 | $6,417,040.00 |
| | 10/3/2000 | 17,000 | $224.86 | $3,822,620.00 |
| | 10/4/2000 | 10,000 | $220.19 | $2,201,900.00 |
| | 12/11/2001 | 300,000 | $38.58 | $11,574,000.00 |
| | 7/5/2002 | 880 | $16.70 | $14,696.00 |
| | | 653,380 | | $73,068,872.00 |
| | | | | |
| CANOVA | 6/2/2003 | 4,903 | $6.43 | $31,526.29 |
| | | 4,903 | | $31,526.29 |
| | | | | |
| DEMPSEY | 12/1/1999 | 6,846 | $141.68 | $969,954.29 |
| | 12/3/1999 | 2,500 | $141.63 | $354,075.00 |
| | 1/5/2000 | 5,000 | $150.38 | $751,900.00 |
| | 1/5/2000 | 5,000 | $155.00 | $775,000.00 |
| | 1/5/2000 | 5,000 | $158.88 | $794,400.00 |
| | 1/5/2000 | 5,000 | $168.25 | $841,250.00 |
| | 3/23/2000 | 2,500 | $174.44 | $436,100.00 |
| | 3/24/2000 | 5,000 | $175.00 | $875,000.00 |
| | 3/30/2000 | 2,500 | $174.38 | $435,950.00 |
| | 3/31/2000 | 5,000 | $175.53 | $877,650.00 |
| | 5/24/2000 | 39,000 | $97.14 | $3,788,460.00 |
| | 8/22/2000 | 4,000 | $215.00 | $860,000.00 |
| | 8/23/2000 | 4,000 | $215.25 | $861,000.00 |
| | 12/11/2000 | 10,000 | $114.10 | $1,141,000.00 |
| | 1/4/2001 | 8,000 | $90.28 | $722,240.00 |
| | 12/12/2001 | 9,648 | $39.26 | $378,780.48 |
| | 12/12/2001 | 5,656 | $39.26 | $222,054.56 |
| | 9/23/2002 | 4,875 | $10.12 | $49,335.00 |
| | 9/24/2002 | 7,299 | $9.83 | $71,749.17 |
| | | 136,824 | | $15,205,898.50 |
| | | | | |
| DERANLEAU | 3/23/2006 | 1,000 | $6.39 | $6,390.00 |
| | 3/23/2006 | 1,784 | $6.40 | $11,417.60 |
| | | 2,784 | | $17,807.60 |
| | | | | |
| KLAYKO | 10/8/2004 | 8,000 | $6.18 | $49,440.00 |
| | 2/23/2006 | 300,000 | $5.03 | $1,509,000.00 |
| | 2/23/2006 | 100,000 | $5.03 | $503,000.00 |
| | | 408,000 | | $2,061,440.00 |
| | | | | |
| LESLIE | 8/23/1999 | 12,186 | $161.25 | $1,964,992.50 |
| | 2/23/2000 | 17,500 | $267.22 | $4,676,350.00 |
| | 2/24/2000 | 9,164 | $268.23 | $2,458,059.72 |
| | 2/24/2000 | 23,336 | $269.09 | $6,279,484.24 |
| | 8/25/2000 | 14,268 | $216.42 | $3,087,880.56 |
| | 8/25/2000 | 2,666 | $216.42 | $576,975.72 |
| | 12/12/2000 | 28,000 | $114.20 | $3,197,600.00 |
| | 12/12/2000 | 6,000 | $114.20 | $685,200.00 |
| | 12/3/2001 | 144,168 | $31.02 | $4,472,091.36 |
| | 12/3/2001 | 35,324 | $31.02 | $1,095,750.48 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 4/4/2002 | 120,000 | $27.07 | $3,248,400.00 |
| | 4/4/2002 | 20,000 | $27.07 | $541,400.00 |
| | | 432,612 | | $32,284,184.58 |
| | | | | |
| MALAVALLI | 8/23/1999 | 68,950 | $164.22 | $11,322,969.00 |
| | 9/22/1999 | 4,650 | $226.33 | $1,052,434.50 |
| | 9/23/1999 | 7,350 | $222.13 | $1,632,655.50 |
| | 9/27/1999 | 6,000 | $210.27 | $1,261,620.00 |
| | 9/28/1999 | 6,000 | $213.15 | $1,278,900.00 |
| | 9/30/1999 | 6,000 | $211.71 | $1,270,260.00 |
| | 12/8/1999 | 20,000 | $143.69 | $2,873,800.00 |
| | 12/16/1999 | 20,000 | $130.31 | $2,606,200.00 |
| | 12/21/1999 | 20,000 | $147.19 | $2,943,800.00 |
| | 1/6/2000 | 10,000 | $159.00 | $1,590,000.00 |
| | 1/7/2000 | 10,000 | $152.02 | $1,520,200.00 |
| | 2/22/2000 | 10,000 | $266.06 | $2,660,600.00 |
| | 2/22/2000 | 15,000 | $266.96 | $4,004,400.00 |
| | 2/23/2000 | 8,000 | $267.90 | $2,143,200.00 |
| | 2/24/2000 | 25,000 | $268.37 | $6,709,250.00 |
| | 2/25/2000 | 25,000 | $269.16 | $6,729,000.00 |
| | 2/25/2000 | 17,000 | $274.00 | $4,658,000.00 |
| | 3/9/2000 | 50,000 | $325.33 | $16,266,500.00 |
| | 5/25/2000 | 30,000 | $105.90 | $3,177,000.00 |
| | 5/25/2000 | 15,000 | $110.40 | $1,656,000.00 |
| | 5/30/2000 | 15,000 | $110.03 | $1,650,450.00 |
| | 5/31/2000 | 40,000 | $115.69 | $4,627,600.00 |
| | 6/1/2000 | 22,500 | $120.47 | $2,710,575.00 |
| | 6/2/2000 | 7,500 | $126.50 | $948,750.00 |
| | 6/2/2000 | 40,000 | $132.84 | $5,313,600.00 |
| | 6/7/2000 | 20,000 | $147.94 | $2,958,800.00 |
| | 6/19/2000 | 25,000 | $145.00 | $3,625,000.00 |
| | 6/19/2000 | 25,000 | $148.31 | $3,707,750.00 |
| | 7/7/2000 | 10,000 | $178.00 | $1,780,000.00 |
| | 9/1/2000 | 20,000 | $230.00 | $4,600,000.00 |
| | 9/5/2000 | 6,700 | $230.00 | $1,541,000.00 |
| | 9/14/2000 | 20,000 | $218.07 | $4,361,400.00 |
| | 9/20/2000 | 13,300 | $230.09 | $3,060,197.00 |
| | 9/21/2000 | 20,000 | $234.17 | $4,683,400.00 |
| | 9/22/2000 | 25,000 | $244.66 | $6,116,500.00 |
| | 9/28/2000 | 10,000 | $243.13 | $2,431,300.00 |
| | | 693,950 | | $131,473,111.00 |
| | | | | |
| NEIMAN | 9/22/1999 | 10,100 | $223.07 | $2,253,007.00 |
| | 9/22/1999 | 23,325 | $226.33 | $5,279,147.25 |
| | 9/23/1999 | 6,775 | $225.13 | $1,525,255.75 |
| | 9/23/1999 | 3,900 | $226.33 | $882,687.00 |
| | 9/24/1999 | 16,100 | $216.45 | $3,484,845.00 |
| | 10/6/1999 | 728 | $209.19 | $152,290.32 |
| | 12/3/1999 | 15,296 | $142.00 | $2,172,032.00 |
| | 12/3/1999 | 412 | $142.00 | $58,504.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | | 12/3/1999 | 20,000 | $142.14 | $2,842,800.00 |
| | | 12/6/1999 | 13,000 | $142.50 | $1,852,500.00 |
| | | 12/6/1999 | 10,000 | $143.38 | $1,433,800.00 |
| | | 12/7/1999 | 40,000 | $138.47 | $5,538,800.00 |
| | | 12/8/1999 | 7,000 | $142.50 | $997,500.00 |
| | | 12/8/1999 | 12,500 | $145.20 | $1,815,000.00 |
| | | 12/10/1999 | 2,500 | $142.00 | $355,000.00 |
| | | 12/17/1999 | 17,500 | $142.15 | $2,487,625.00 |
| | | 12/20/1999 | 18,800 | $142.19 | $2,673,172.00 |
| | | 12/21/1999 | 7,500 | $144.93 | $1,086,975.00 |
| | | 12/22/1999 | 50,000 | $152.77 | $7,638,500.00 |
| | | 12/27/1999 | 6,000 | $157.50 | $945,000.00 |
| | | 12/28/1999 | 50,000 | $155.28 | $7,764,000.00 |
| | | 12/29/1999 | 50,000 | $162.59 | $8,129,500.00 |
| | | 1/3/2000 | 50,000 | $169.85 | $8,492,500.00 |
| | | 2/22/2000 | 50,000 | $265.94 | $13,297,000.00 |
| | | 2/23/2000 | 50,000 | $268.32 | $13,416,000.00 |
| | | 2/28/2000 | 31,150 | $283.18 | $8,821,057.00 |
| | | 3/1/2000 | 90,842 | $295.79 | $26,870,155.18 |
| | | 3/2/2000 | 3,000 | $315.00 | $945,000.00 |
| | | 3/3/2000 | 97,000 | $315.45 | $30,598,650.00 |
| | | 3/6/2000 | 80,000 | $322.66 | $25,812,800.00 |
| | | 3/7/2000 | 20,000 | $336.47 | $6,729,400.00 |
| | | 3/7/2000 | 20,000 | $338.00 | $6,760,000.00 |
| | | 3/7/2000 | 20,000 | $340.33 | $6,806,600.00 |
| | | 3/10/2000 | 10,000 | $340.00 | $3,400,000.00 |
| | | 3/10/2000 | 10,000 | $345.00 | $3,450,000.00 |
| | | 3/20/2000 | 21,000 | $167.52 | $3,517,920.00 |
| | | 3/22/2000 | 19,000 | $168.27 | $3,197,130.00 |
| | | 6/20/2000 | 13,508 | $159.19 | $2,150,338.52 |
| | | 6/20/2000 | 13,509 | $160.19 | $2,164,006.71 |
| | | 8/21/2000 | 96,500 | $211.10 | $20,371,150.00 |
| | | 8/22/2000 | 3,500 | $211.00 | $738,500.00 |
| | | 12/1/2000 | 20,000 | $83.69 | $1,673,800.00 |
| | | | 1,100,445 | | $250,579,947.73 |
| | | | | | |
| | REYES | 9/22/1999 | 9,300 | $226.33 | $2,104,869.00 |
| | | 9/23/1999 | 14,700 | $225.13 | $3,309,411.00 |
| | | 9/27/1999 | 15,000 | $210.27 | $3,154,050.00 |
| | | 9/28/1999 | 16,000 | $213.15 | $3,410,400.00 |
| | | 9/28/1999 | 23,500 | $216.32 | $5,083,520.00 |
| | | 9/30/1999 | 16,500 | $211.71 | $3,493,215.00 |
| | | 10/1/1999 | 13,200 | $208.02 | $2,745,864.00 |
| | | 10/4/1999 | 20,000 | $206.31 | $4,126,200.00 |
| | | 10/5/1999 | 10,000 | $207.53 | $2,075,300.00 |
| | | 10/6/1999 | 16,800 | $209.85 | $3,525,480.00 |
| | | 12/15/1999 | 50,000 | $123.56 | $6,178,000.00 |
| | | 12/15/1999 | 25,000 | $124.44 | $3,111,000.00 |
| | | 12/16/1999 | 60,500 | $128.88 | $7,797,240.00 |
| | | 12/17/1999 | 50,000 | $139.11 | $6,955,500.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | |
|---|---|---|---|
| 12/17/1999 | 11,500 | $141.00 | $1,621,500.00 |
| 12/20/1999 | 15,000 | $145.00 | $2,175,000.00 |
| 12/21/1999 | 100,000 | $151.80 | $15,180,000.00 |
| 2/22/2000 | 17,500 | $267.00 | $4,672,500.00 |
| 2/23/2000 | 12,500 | $267.90 | $3,348,750.00 |
| 2/24/2000 | 30,000 | $268.37 | $8,051,100.00 |
| 2/25/2000 | 40,000 | $269.16 | $10,766,400.00 |
| 2/25/2000 | 50,000 | $270.83 | $13,541,500.00 |
| 2/25/2000 | 25,000 | $274.00 | $6,850,000.00 |
| 2/28/2000 | 25,000 | $275.30 | $6,882,500.00 |
| 2/28/2000 | 100,000 | $283.71 | $28,371,000.00 |
| 3/7/2000 | 96,000 | $337.54 | $32,403,840.00 |
| 3/8/2000 | 5,000 | $332.44 | $1,662,200.00 |
| 3/9/2000 | 49,000 | $325.33 | $15,941,170.00 |
| 3/10/2000 | 5,500 | $342.91 | $1,886,005.00 |
| 3/13/2000 | 10,000 | $335.95 | $3,359,500.00 |
| 3/14/2000 | 6,000 | $338.59 | $2,031,540.00 |
| 3/17/2000 | 57,000 | $153.07 | $8,724,990.00 |
| 5/19/2000 | 100,000 | $100.02 | $10,002,000.00 |
| 5/23/2000 | 100,000 | $110.54 | $11,054,000.00 |
| 5/31/2000 | 25,000 | $120.20 | $3,005,000.00 |
| 6/2/2000 | 25,000 | $133.18 | $3,329,500.00 |
| 6/2/2000 | 75,000 | $133.30 | $9,997,500.00 |
| 6/8/2000 | 25,000 | $151.79 | $3,794,750.00 |
| 6/9/2000 | 5,000 | $155.00 | $775,000.00 |
| 6/14/2000 | 50,000 | $142.19 | $7,109,500.00 |
| 6/15/2000 | 100,000 | $140.24 | $14,024,000.00 |
| 6/16/2000 | 50,000 | $143.25 | $7,162,500.00 |
| 6/26/2000 | 22,145 | $157.19 | $3,480,972.55 |
| 8/21/2000 | 32,500 | $212.50 | $6,906,250.00 |
| 8/22/2000 | 67,500 | $212.01 | $14,310,675.00 |
| 8/22/2000 | 50,000 | $213.61 | $10,680,500.00 |
| 8/23/2000 | 50,000 | $214.54 | $10,727,000.00 |
| 8/24/2000 | 40,000 | $219.53 | $8,781,200.00 |
| 8/24/2000 | 10,000 | $223.50 | $2,235,000.00 |
| 8/30/2000 | 5,942 | $219.63 | $1,305,041.46 |
| 9/18/2000 | 127,000 | $214.26 | $27,211,020.00 |
| 9/18/2000 | 973 | $214.26 | $208,474.98 |
| 12/5/2000 | 150,000 | $87.97 | $13,195,500.00 |
| 12/5/2000 | 100,000 | $94.63 | $9,463,000.00 |
| 12/6/2000 | 50,000 | $97.44 | $4,872,000.00 |
| 12/7/2000 | 100,000 | $98.41 | $9,841,000.00 |
| 12/8/2000 | 420 | $106.62 | $44,780.40 |
| 12/8/2000 | 72,886 | $106.62 | $7,771,105.32 |
| 12/11/2000 | 39,000 | $113.51 | $4,426,890.00 |
| 12/27/2000 | 100,000 | $88.09 | $8,809,000.00 |
| 12/28/2000 | 100,000 | $93.35 | $9,335,000.00 |
| 12/28/2000 | 20,944 | $96.42 | $2,019,420.48 |
| 12/29/2000 | 35,000 | $97.88 | $3,425,800.00 |
| 5/17/2001 | 250,000 | $46.47 | $11,617,500.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | |
|---|---|---|---|
| 5/17/2001 | 50,000 | $47.00 | $2,350,000.00 |
| 6/7/2001 | 300,000 | $46.35 | $13,905,000.00 |
| 12/4/2001 | 250,000 | $33.10 | $8,275,000.00 |
| 12/5/2001 | 250,000 | $36.18 | $9,045,000.00 |
| 12/10/2001 | 500,000 | $37.52 | $18,760,000.00 |
| 12/11/2001 | 630,000 | $39.10 | $24,633,000.00 |
| 1/4/2002 | 85,600 | $37.44 | $3,204,864.00 |
| 1/4/2002 | 85,600 | $37.99 | $3,251,944.00 |
| 3/31/2004 | 100,000 | $6.64 | $664,000.00 |
| 2/22/2005 | 449 | $6.30 | $2,828.70 |
| 2/22/2005 | 124,985 | $6.32 | $789,905.20 |
| 2/22/2005 | 173,495 | $6.33 | $1,098,223.35 |
| 2/22/2005 | 221,710 | $6.34 | $1,405,641.40 |
| 2/22/2005 | 183,152 | $6.35 | $1,163,015.20 |
| 2/22/2005 | 69,875 | $6.36 | $444,405.00 |
| 2/22/2005 | 31,239 | $6.37 | $198,992.43 |
| 2/22/2005 | 136,712 | $6.38 | $872,222.56 |
| 2/22/2005 | 109,300 | $6.39 | $698,427.00 |
| 2/22/2005 | 13,900 | $6.40 | $88,960.00 |
| 2/22/2005 | 4,000 | $6.41 | $25,640.00 |
| 2/22/2005 | 40,700 | $6.42 | $261,294.00 |
| 2/22/2005 | 1,500 | $6.43 | $9,645.00 |
| 2/22/2005 | 15,000 | $6.45 | $96,750.00 |
| 2/22/2005 | 3,900 | $6.46 | $25,194.00 |
| 2/22/2005 | 833 | $6.47 | $5,389.51 |
| 2/22/2005 | 5,000 | $6.49 | $32,450.00 |
| 2/22/2005 | 48,600 | $6.50 | $315,900.00 |
| 2/22/2005 | 31,150 | $6.51 | $202,786.50 |
| 2/22/2005 | 1,500 | $6.52 | $9,780.00 |
| 2/23/2005 | 809 | $6.07 | $4,910.63 |
| 2/23/2005 | 365,221 | $6.08 | $2,220,543.68 |
| 2/23/2005 | 179,331 | $6.10 | $1,093,919.10 |
| 2/23/2005 | 134,970 | $6.11 | $824,666.70 |
| 2/23/2005 | 82,800 | $6.12 | $506,736.00 |
| 2/23/2005 | 7,369 | $6.13 | $45,171.97 |
| 2/23/2005 | 5,893 | $6.15 | $36,241.95 |
| 2/23/2005 | 14,700 | $6.16 | $90,552.00 |
| 2/23/2005 | 12,600 | $6.17 | $77,742.00 |
| 2/23/2005 | 31,907 | $6.18 | $197,185.26 |
| 2/23/2005 | 20,000 | $6.19 | $123,800.00 |
| 2/23/2005 | 25,600 | $6.20 | $158,720.00 |
| 2/23/2005 | 39,800 | $6.21 | $247,158.00 |
| 2/23/2005 | 55,000 | $6.22 | $342,100.00 |
| 2/23/2005 | 14,000 | $6.23 | $87,220.00 |
| 2/23/2005 | 9,893 | $6.24 | $61,732.32 |
| 2/23/2005 | 5,600 | $6.25 | $35,000.00 |
| 2/23/2005 | 16,100 | $6.29 | $101,269.00 |
| 2/23/2005 | 54,700 | $6.30 | $344,610.00 |
| 2/23/2005 | 18,700 | $6.31 | $117,997.00 |
| 2/23/2005 | 42,000 | $6.32 | $265,440.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | | Date | Shares | Price | Amount |
|---|---|---|---|---|---|
| 1 | | 2/23/2005 | 5,000 | $6.33 | $31,650.00 |
| | | 2/23/2005 | 10,315 | $6.34 | $65,397.10 |
| 2 | | 2/23/2005 | 900 | $6.35 | $5,715.00 |
| | | 2/23/2005 | 11,434 | $6.37 | $72,834.58 |
| 3 | | 2/23/2005 | 6,358 | $6.38 | $40,564.04 |
| 4 | | 2/24/2005 | 900,000 | $6.10 | $5,490,000.00 |
| | | 2/24/2005 | 12,466 | $6.10 | $76,042.60 |
| 5 | | 2/24/2005 | 373,747 | $6.11 | $2,283,594.17 |
| | | 2/24/2005 | 464,788 | $6.12 | $2,844,502.56 |
| 6 | | 2/24/2005 | 175,777 | $6.13 | $1,077,513.01 |
| | | 2/24/2005 | 67,445 | $6.14 | $414,112.30 |
| 7 | | 2/24/2005 | 127,698 | $6.15 | $785,342.70 |
| | | 2/24/2005 | 165,453 | $6.16 | $1,019,190.48 |
| 8 | | 2/24/2005 | 62,000 | $6.17 | $382,540.00 |
| | | 2/24/2005 | 138,479 | $6.18 | $855,800.22 |
| 9 | | 2/24/2005 | 50,400 | $6.19 | $311,976.00 |
| 10 | | | 10,152,263 | | $580,036,172.41 |
| 11 | RINKLE | 8/23/1999 | 24,000 | $164.22 | $3,941,280.00 |
| | | 9/23/1999 | 4,000 | $225.13 | $900,520.00 |
| 12 | | 9/27/1999 | 4,000 | $210.27 | $841,080.00 |
| | | 9/28/1999 | 2,500 | $213.15 | $532,875.00 |
| 13 | | 9/30/1999 | 1,500 | $211.71 | $317,565.00 |
| 14 | | 12/27/1999 | 10,650 | $158.00 | $1,682,700.00 |
| | | 12/28/1999 | 24,000 | $158.00 | $3,792,000.00 |
| 15 | | 3/1/2000 | 12,500 | $299.75 | $3,746,875.00 |
| | | 3/2/2000 | 12,500 | $303.05 | $3,788,125.00 |
| 16 | | 3/6/2000 | 2,000 | $325.00 | $650,000.00 |
| | | 3/7/2000 | 8,000 | $340.33 | $2,722,640.00 |
| 17 | | 3/23/2000 | 20,000 | $174.20 | $3,484,000.00 |
| 18 | | 6/16/2000 | 50,000 | $142.00 | $7,100,000.00 |
| | | 6/19/2000 | 30,000 | $150.17 | $4,505,100.00 |
| 19 | | 7/6/2000 | 3,250 | $173.05 | $562,412.50 |
| | | 7/6/2000 | 3,250 | $173.05 | $562,412.50 |
| 20 | | 7/6/2000 | 3,500 | $173.05 | $605,675.00 |
| | | 7/7/2000 | 1,725 | $178.00 | $307,050.00 |
| 21 | | 7/7/2000 | 1,625 | $178.00 | $289,250.00 |
| | | 7/7/2000 | 1,625 | $178.00 | $289,250.00 |
| 22 | | 7/7/2000 | 1,725 | $180.00 | $310,500.00 |
| | | 7/7/2000 | 1,625 | $180.00 | $292,500.00 |
| 23 | | 7/7/2000 | 1,625 | $180.00 | $292,500.00 |
| 24 | | 9/22/2000 | 20,000 | $245.94 | $4,918,800.00 |
| | | 9/25/2000 | 16,300 | $257.47 | $4,196,761.00 |
| 25 | | 9/25/2000 | 5,000 | $258.50 | $1,292,500.00 |
| | | 9/25/2000 | 5,000 | $258.50 | $1,292,500.00 |
| 26 | | 9/26/2000 | 6,000 | $240.06 | $1,440,360.00 |
| | | 9/26/2000 | 6,000 | $240.06 | $1,440,360.00 |
| 27 | | 9/26/2000 | 700 | $240.06 | $168,042.00 |
| | | 9/27/2000 | 600 | $240.40 | $144,240.00 |
| 28 | | 9/27/2000 | 600 | $240.40 | $144,240.00 |

| | | | | |
|---|---|---|---|---|
| | 9/27/2000 | 600 | $240.40 | $144,240.00 |
| | 9/27/2000 | 4,200 | $240.40 | $1,009,680.00 |
| | 12/11/2000 | 58,000 | $115.02 | $6,671,160.00 |
| | 1/4/2001 | 10,000 | $91.00 | $910,000.00 |
| | 1/5/2001 | 23,200 | $79.65 | $1,847,880.00 |
| | 1/5/2001 | 23,200 | $79.65 | $1,847,880.00 |
| | 1/5/2001 | 23,200 | $79.65 | $1,847,880.00 |
| | 1/5/2001 | 9,800 | $79.65 | $780,570.00 |
| | 1/5/2001 | 4,600 | $79.65 | $366,390.00 |
| | 5/23/2001 | 10,000 | $50.00 | $500,000.00 |
| | 5/24/2001 | 10,000 | $49.50 | $495,000.00 |
| | | 462,600 | | $72,974,793.00 |
| | | | | |
| SMITH, CHARLES | 8/23/1999 | 10,000 | $164.22 | $1,642,200.00 |
| | 8/25/1999 | 7,100 | $181.35 | $1,287,585.00 |
| | 8/25/1999 | 900 | $181.35 | $163,215.00 |
| | 8/30/1999 | 100 | $180.00 | $18,000.00 |
| | 8/31/1999 | 800 | $185.00 | $148,000.00 |
| | 9/22/1999 | 1,550 | $226.33 | $350,811.50 |
| | 9/23/1999 | 450 | $225.13 | $101,308.50 |
| | 10/6/1999 | 7,000 | $225.94 | $1,581,580.00 |
| | 10/7/1999 | 1,000 | $225.81 | $225,810.00 |
| | 12/21/1999 | 10,000 | $149.75 | $1,497,500.00 |
| | 12/21/1999 | 10,000 | $155.00 | $1,550,000.00 |
| | 1/3/2000 | 5,000 | $177.76 | $888,800.00 |
| | 3/1/2000 | 5,000 | $299.00 | $1,495,000.00 |
| | 3/10/2000 | 10,000 | $349.75 | $3,497,500.00 |
| | 3/20/2000 | 15,000 | $171.44 | $2,571,600.00 |
| | 3/22/2000 | 25,000 | $170.13 | $4,253,250.00 |
| | 3/30/2000 | 12,500 | $174.50 | $2,181,250.00 |
| | 3/31/2000 | 7,500 | $174.50 | $1,308,750.00 |
| | 3/31/2000 | 20,000 | $174.88 | $3,497,600.00 |
| | 6/2/2000 | 20,000 | $126.50 | $2,530,000.00 |
| | 6/2/2000 | 10,000 | $130.94 | $1,309,400.00 |
| | 6/6/2000 | 10,000 | $140.25 | $1,402,500.00 |
| | 6/8/2000 | 10,000 | $155.44 | $1,554,400.00 |
| | 6/19/2000 | 5,000 | $155.00 | $775,000.00 |
| | 6/20/2000 | 5,000 | $160.00 | $800,000.00 |
| | 6/21/2000 | 5,000 | $165.00 | $825,000.00 |
| | 6/28/2000 | 10,000 | $169.00 | $1,690,000.00 |
| | 8/22/2000 | 10,000 | $212.00 | $2,120,000.00 |
| | 8/22/2000 | 10,000 | $215.00 | $2,150,000.00 |
| | 8/24/2000 | 10,000 | $220.10 | $2,201,000.00 |
| | 8/31/2000 | 10,000 | $225.00 | $2,250,000.00 |
| | 9/1/2000 | 5,000 | $230.00 | $1,150,000.00 |
| | 9/5/2000 | 2,500 | $230.00 | $575,000.00 |
| | 9/20/2000 | 10,000 | $229.25 | $2,292,500.00 |
| | 9/20/2000 | 2,500 | $230.09 | $575,225.00 |
| | 9/22/2000 | 10,000 | $250.04 | $2,500,400.00 |
| | 1/4/2001 | 10,000 | $90.50 | $905,000.00 |

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

| | 1/5/2001 | 40,000 | $79.65 | $3,186,000.00 |
|---|---|---|---|---|
| | | 343,900 | | $59,051,185.00 |
| | | | | |
| TARRANT | 8/23/1999 | 10,000 | $164.22 | $1,642,200.00 |
| | 8/25/1999 | 4,500 | $181.35 | $816,075.00 |
| | 8/26/1999 | 5,500 | $179.38 | $986,590.00 |
| | 12/7/1999 | 20,000 | $140.06 | $2,801,200.00 |
| | 2/24/2000 | 20,000 | $265.19 | $5,303,800.00 |
| | 2/24/2000 | 15,000 | $265.94 | $3,989,100.00 |
| | 2/24/2000 | 5,000 | $268.37 | $1,341,850.00 |
| | 2/25/2000 | 10,000 | $269.16 | $2,691,600.00 |
| | 5/24/2000 | 40,000 | $92.08 | $3,683,200.00 |
| | 5/24/2000 | 40,000 | $100.01 | $4,000,400.00 |
| | 6/19/2000 | 40,000 | $142.18 | $5,687,200.00 |
| | 8/21/2000 | 25,000 | $210.80 | $5,270,000.00 |
| | 8/31/2000 | 25,000 | $225.00 | $5,625,000.00 |
| | 9/26/2000 | 5,000 | $237.69 | $1,188,450.00 |
| | | 265,000 | | $45,026,665.00 |
| | | | | |
| TOTAL | | 16,674,981 | | $1,533,251,863.11 |

207.    Brocade fared much worse than the Insider Selling Defendants.  The Company will need to expend significant sums of money including the following:

(i)    costs incurred to carry out internal investigations, including legal fees paid to outside counsel, accounting firms and consultants;

(ii)    costs incurred from responding to subpoenas and requests for information from government agencies including the SEC;

(iii)    costs incurred from potential fines in connection with governmental investigations;

(iv)    costs incurred from increased D&O Insurance premiums as a result of the illegally manipulated stock option grants;

(v)    enormous tax liabilities from improper deductions taken on backdated option grants;

(vi)    costs incurred from directing manpower to restate Brocade's prior financial results to correct for the improperly dated stock option grants.

(vii)    costs incurred from directing manpower to correct Brocade's defective internal controls; and

- 99 -

1         (viii)    costs incurred from canceling improperly backdated options in exchange for a

2    cash payment.

3    **PLAINTIFFS' DERIVATIVE ALLEGATIONS**

4        208.    Plaintiffs bring this action derivatively in the right and for the benefit of Brocade to

5    redress injuries suffered, and to be suffered, by Brocade as a direct result of the breaches of fiduciary

6    duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, breach

7    of fiduciary duties for insider selling and misappropriation of information, accounting, constructive

8    trust, restitution, violation of California Corporations Code §§25402 and 25403 professional

9    negligence and accounting malpractice aiding and abetting breaches of a fiduciary duty, as well as

10    the aiding and abetting thereof, by the Individual Defendants. Brocade is named as a nominal

11    defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this

12    Court that it would not otherwise have.

13        209.    Plaintiffs will adequately and fairly represent the interests of Brocade in enforcing

14    and prosecuting its rights.

15        210.    Plaintiffs are and were owners of the stock of Brocade during times relevant to the

16    Individual Defendants' wrongful course of conduct alleged herein, and remain shareholders of the

17    Company.

18    **DEMAND FUTILITY ALLEGATIONS AGAINST THE BOARD AT THE TIME OF<br>FILING PLAINTIFFS' ORIGINAL COMPLAINTS**

19

20        211.    The Board of Brocade at the time of filing plaintiffs' original complaints consisted of

21    the following nine individuals: defendants House, Klayko, Moore, Neiman, Paisley, Dempsey,

22    Krause, Vaswani and Walker. Plaintiffs did not make any demand on that Board of Brocade to

23    institute this action because such a demand would have been futile, wasteful and useless act.

24        212.    The Board is ultimately responsible for approving the compensation awarded to

25    Brocade's executive officers. This compensation includes the stock options that were secretly

26    backdated by Reyes, Jensen and Canova. Therefore, the entire Board is liable for failing to fulfill its

27    fiduciary duties to Brocade in acquiescing to Reyes, Jensen and Canova's improper scheme and by

28    implicitly approving the option grants as dated. The Board should have properly informed itself of

1   the circumstances surrounding the options granted to Brocade's executives before approving them.

2   Indeed, these options were routinely approved by the Board when they were dated at the Company's

3   lowest closing price for the respective month in which the options were granted, establishing that

4   these decisions were not informed. Accordingly, there is reason to doubt that defendants House,

5   Klayko, Moore, Neiman, Paisley, Dempsey, Krause, Vaswani and Walker are disinterested because

6   they face a sufficient likelihood of liability for their breaches of fiduciary duty to Brocade. The

7   Board's decision to approve the options was also not the product of valid business judgment. Thus,

8   demand was futile as to defendants House, Klayko, Moore, Neiman, Paisley, Dempsey, Krause,

9   Vaswani and Walker.

10      213.   The Compensation Committee of the Board is specifically responsible under its

11  charter for granting stock options or other equity awards to Brocade executives. This responsibility,

12  although held by the Board, is delegated to the Compensation Committee. Yet, the Compensation

13  Committee impermissibly delegated their responsibility to Reyes, Jensen and Canova in total

14  contravention of their committee charter. The Charter for the Compensation Committee states, in

15  pertinent part, as follows:

16      *Purpose*

17          The purpose of the Compensation Committee of the Board of Directors (the
        "Board") of Brocade Communications Systems, Inc. (the "Company") shall be to
18      discharge the Board's responsibilities relating to compensation of the Company's
        executive officers. *The Compensation Committee has overall responsibility for (i)*
19      *overseeing the Company's compensation and benefits policies generally; (ii)*
        *overseeing, evaluating and approving executive officer compensation plans,*
20      *policies and programs;* and (iii) preparing the report on executive compensation that
        is required by Securities and Exchange Commission rules to be included in the
21      Company's annual proxy statement.

22      *Reporting to the Board*

23          The Compensation Committee shall make regular reports to the Board. These
        reports shall include a review of any recommendations or issues that arise with
24      respect to Company compensation and benefits policies, executive compensation and
        any other matters that the Compensation Committee deems appropriate or is
25      requested to be included by the Board.

26  Since at least 1999, the Compensation Committee was comprised of defendants Dempsey, Krause,

27  House and Vaswani. Defendant Dempsey, was a member of the Compensation Committee for over

28  seven years. Defendants Krause, House and Vaswani were members of the Compensation

1  Committee for over three years.   These defendants were responsible as members of the

2  Compensation Committee to review and grant stock options granted to Brocade executives during

3  their respective tenures on the committee.  Clearly these defendants did not fulfill this duty because

4  they did not act to inform themselves of the circumstances surrounding these option grants, thereby

5  causing or allowing the Company's executives to obtain unreasonable and unreported compensation

6  via the backdating of stock option grants.  In fact, defendants Krause, House, Dempsey and Vaswani

7  completely abdicated their duties to Reyes.  Between FY:00 and FY:04, the Compensation

8  Committee held only nine meetings and did not even meet in FY:00.  Accordingly, there is a

9  reasonable doubt that defendants Dempsey, Krause, House and Vaswani are disinterested because

10  they face a sufficient likelihood of liability for their breaches of fiduciary duty to Brocade.  The

11  Compensation Committee's decision to approve the options was also not the product of valid

12  business judgment.  Thus, demand was futile as to defendants Dempsey, Krause, House and

13  Vaswani.

14      214.    The Audit Committee of the Board is responsible by its charter for reviewing the

15  Company's financial and accounting reporting compliance relating to its employee benefit plans.

16  Since at least 1999, the Audit Committee was comprised of defendants Paisley, Moore, Krause and

17  Dempsey. These defendants were responsible as members of the Audit Committee for insuring that

18  Brocade's internal controls were adequate and that the Company's quarterly and annual financial

19  statements were accurate.  Brocade's internal controls, however, were deficient as evidenced by the

20  ability of Reyes, Jensen and Canova to perpetrate the improper backdating of stock option grants for

21  almost seven years.  As a result of the improper option backdating, the Company's financials were

22  rendered inaccurate because those financial did not account for the true amount of compensation

23  being granted to Brocade's executives and employees.  Accordingly, there is a reasonable doubt that

24  defendants Paisley, Moore, Krause and Dempsey are disinterested because they face a sufficient

25  likelihood of liability for their breaches of fiduciary duty to Brocade.  Thus, demand is futile as to

26  defendants Paisley, Moore, Krause and Dempsey.

27      215.    Each of the Director Defendants of Brocade authorized and/or permitted the false

28  statements disseminated directly to the public or made directly to securities analysts and which were

1  made available and distributed to shareholders, authorized and/or permitted the issuance of various

2  of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged

3  herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by

4  them.

5       216.   As a result of their access to and review of internal corporate documents;

6  conversations and connections with other corporate officers, employees and directors; and

7  attendance at management and Board meetings, each of the defendants knew the adverse, non-public

8  information regarding the improper accounting and its detrimental impact on the Company's reported

9  earnings.  While in possession of this material adverse, non-public, information regarding the

10  Company, the following current members of the Brocade Board participated in the illegal insider

11  selling:

12       (i)   Klayko sold 408,000 shares of Brocade stock for proceeds of $2,061,440

13  while in possession of material non-public information; and

14       (ii)   Dempsey sold 136,824 shares of Brocade stock for proceeds of $15,205,898

15  while in possession of material non-public information.

16  Because these defendants received a personal financial benefit from the challenged insider trading

17  transactions, these defendants are interested.  Also, these defendants face a sufficiently substantial

18  threat of liability for their illegal insider selling.  Since these directors have breached their fiduciary

19  duties and are interested, any demand upon them is futile.

20       217.   The principal professional occupation of defendant Klayko was his employment with

21  Brocade, pursuant to which he received and continues to receive substantial monetary compensations

22  and other benefits.  Specifically, defendant Klayko was paid the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Stock Options | All Other Compensation |
|-----------|-------------|--------|-------|---------------|------------------------|
| Klayko | 2005 | $481,364 | $341,951 | 1,600,000 | $3,587 |
| | 2004 | $283,333 | $195,230 | 575,000 | $4,664 |
| | 2003 | $175,000 | $42,464 | 713,781 | $3,324 |

26  Accordingly, defendant Klayko lacked independence from defendants Dempsey, Krause, and

27  Vaswani, defendants who were not disinterested and/or independent and who exerted influence over

28  defendant Klayko's compensation.  The Compensation Committee has the authority to review and

1   approve Klayko's base salary, bonus and equity compensation. This lack of independence rendered

2   defendant Klayko incapable of impartially considering a demand to commence and vigorously

3   prosecute this action.

4       218.   Defendant Moore, by his specialized financial expertise, was in a unique position to

5   understand the business of Brocade, as well as its finances, markets and present and future business

6   prospects.   Specifically, defendant Moore was Global Chairman, CEO - U.S. of the

7   PricewaterhouseCoopers LLP ("PwC") accounting firm from July 1998 until June 2001. Prior to

8   that, he was Chairman and CEO of the Coopers & Lybrand LLP accounting firm from October 1994

9   until June 1998. Further, Moore has a B.S. in Accounting. This defendant, because of his unique

10  qualifications, had a heightened duty to insure the accuracy and fairness of Brocade's financials.

11  Nonetheless, there is a sufficient likelihood of liability that defendant Moore breached his duties by

12  causing or allowing the improper financials described herein. As a result, any demand upon him

13  would have been futile.

14      219.   Defendant Paisley, by his specialized financial expertise, was in a unique position to

15  understand the business of Brocade, as well as its finances, markets and present and future business

16  prospects. Specifically, defendant Paisley has been the Dean's Executive Professor of Accounting

17  and Finance in the Leavy School of Business at Santa Clara University since January 2001. From

18  September 1985 until May 2000, Paisley was the Senior Vice President of Finance and Chief

19  Financial Officer of 3Com Corporation. Paisley has a B.A. in Economics and an M.B.A. This

20  defendant, because of his unique qualifications, had a heightened duty to insure the accuracy and

21  fairness of Brocade's financials.  Nonetheless, there is a sufficient likelihood of liability that

22  defendant Paisley breached his duties by causing or allowing the improper financials described

23  herein. As a result, any demand upon him would have been futile.

24      220.   The entire Brocade Board participated in the wrongs complained of herein. Brocade's

25  directors are not disinterested or independent due to the following: defendants House, Klayko,

26  Moore, Neiman, Paisley, Dempsey, Krause, Vaswani and Walker served on the Brocade Board

27  during the period in which Company executives were improperly backdating their stock option

28  grants. Pursuant to their specific duties as Board members, each was charged with the management

1    of the Company and to conduct its business affairs.  Each of the above referenced defendants

2    breached the fiduciary duties that they owed to Brocade and its shareholders in that they failed to

3    prevent and correct the improper stock option backdating practices.  Thus, the Brocade Board cannot

4    exercise independent objective judgment in deciding whether to bring this action or whether to

5    vigorously prosecute this action because its members are interested personally in the outcome as it is

6    their actions that have subjected Brocade to damages in the form of costs that the Company must

7    expend to restate its past financials and to investigate defendants' improprieties.

8        221.    The Individual Defendants, because of their inter-related business, professional and

9    personal relationships, have developed debilitating conflicts of interest that prevent the Board

10   members of the Company from taking the necessary and proper action on behalf of the Company as

11   requested herein.  In addition to the conflicts that exist as a result of their participation in the option

12   backdating, improper accounting and insider selling, as detailed herein supra, the majority of the

13   Board, including the defendants listed below, are subject to the following prejudicial entanglements:

14            (i)    *Moore and O'Brien Are Long-Time Business Associates*:

15            Defendant O'Brien was a Global Managing Partner of PwC.  Defendant
         Moore was Global Chairman, CEO-US of PwC from July 1998 to June 2001.
16       Because of their long-standing and entangling business and professional
         relationships, defendant Moore will not take the action requested by plaintiff herein
17       against defendant O'Brien or the remainder of the Individual Defendants.

18            (ii)    *Klayko and Walker Are Long-Time Business Associates*:

19            Defendant Klayko held various positions at Hewlett-Packard Company prior
         to 1995.  Defendant Walker held various positions at Hewlett-Packard Company for
20       24 years until he resigned in 1999.  Because of their long-standing and entangling
         business and professional relationships, neither defendant Klayko nor defendant
21       Walker will take the action requested by plaintiff herein against one another or the
         remainder of the Individual Defendants.

22
             (iii)    *Paisley and Krause Are Long-Term Business Associates*:
23
             Defendant Paisley was the Senior Vice President of Finance and CFO of
24       3Com Corp. from 1985 to 2000.  Defendant Krause served as President and CEO of
         3Com Corp. from 1981 to 1990, and as its Chairman from 1987 to 1993.  Because of
25       their long-standing and entangling business and professional relationships, neither
         defendant Paisley nor defendant Krause will take the action requested by plaintiff
26       herein against one another or the remainder of the Individual Defendants.

27

28

222.   In order to bring this suit, all of the directors of Brocade would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

223.   The acts complained of constitute violations of the fiduciary duties owed by Brocade's officers and directors and these acts are incapable of ratification.

224.   Brocade has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Brocade any part of the damages Brocade suffered and will suffer thereby.

225.   If Brocade's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Brocade. However, the directors' and officers' liability insurance policies covering the defendants in this case likely contain provisions that eliminate coverage for any action brought directly by Brocade against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Brocade, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause Brocade to sue them, since they will face a large uninsured liability.

226.   Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiffs, the current Board has failed and refused to seek to recover for Brocade for any of the wrongdoing alleged by plaintiffs herein.

227.   A true and correct copy of the original Complaint was delivered to Brocade prior to its being filed with this Court.

## DEMAND FUTILITY ALLEGATIONS AGAINST
## BROCADE'S CURRENT BOARD

228.    The Brocade's current Board consists of the following eight individuals: defendants Dempsey, House, Jones, Klayko, Krause, Rose, Vaswani and Walker.  Plaintiffs did not make any demand on the Board to institute this action because such a demand would have been a futile, wasteful and useless act.

229.    As detailed herein, the Board is ultimately responsible for approving the compensation awarded to Brocade's executive officers.  This compensation largely includes the stock options that were illicitly backdated by Reyes, Jensen and Canova.  Six members of this Board were involved in the egregious wrongdoing and remain liable for breaching their fiduciary duties in connection with Brocade's wrongful compensation practices.  Specifically, defendants Dempsey, House, Klayko, Krause, Vaswani and Walker face sufficiently substantial liability for failing to fulfill their fiduciary duties to Brocade in acquiescing to Reyes, Jensen and Canova's improper scheme and thereby causing and/or allowing the approval of the challenged option grants as dated.  Therefore, these defendants failed to exercise proper due care in carrying out their duties and responsibilities as officers and directors of Brocade by consciously permitting the backdating scheme to remain in place, or, at a minimum, by being recklessly ignorant in failing to inform themselves of the illegal circumstances surrounding the options granted to Brocade's directors, executives  and other employees before approving them.  As a result of the misfeasance and complete abdication of duties by these defendants, improper options were routinely granted by Reyes and peremptorily approved by the Board when they were dated at the Company's lowest closing price for the respective month in which the options were granted, establishing that these defendants maintained woefully inadequate internal controls and procedures.  Moreover, these defendants allowed the backdating scheme to continue unabated for almost seven years, an unreasonable period of time, which revealed additional materially deficient internal controls in connection with the Company's financial reporting and accounting processes.  Accordingly, reasonable doubt exists that defendants Dempsey, House, Klayko, Krause, Vaswani and Walker are able to evaluate demand in a sufficiently disinterested and independent manner.  Furthermore, the

1  acts complained of herein resulted in Brocade's material non-compliance with applicable legal,

2  financial and ethical regulations which has caused the Company to sustain substantial harm. In this

3  regard, the decision made by these defendants to invariably approve the options was not the product

4  of valid business judgment. For all the foregoing reasons, demand was futile as to defendants

5  Dempsey, House, Klayko, Krause, Vaswani and Walker.

6      230.   All eight members of the current Board participated in approving the Proposed

7  Settlement which purports to globally extinguish all derivative claims in all actions related to the

8  improprieties that have been complained of extensively herein. Specifically, defendants Dempsey,

9  House, Klayko, Krause, Vaswani and Walker will each benefit from the Proposed Settlement by

10 being forever released from liability for their breaches of fiduciary duties as described herein.

11 Settlement of the Federal Derivative Action is patently unfair to the Company and its shareholders

12 because Brocade has and will continue to suffer harm from defendants' actions. Under the terms of

13 the Proposed Settlement, the Company will implement some corporate therapeutics but no money

14 will return to the Company despite the tremendous amount of monetary losses alleged in the Federal

15 Derivative Action, which are similar to those alleged here. This result is plainly contradictory to

16 Brocade's best interests because, among other things, the Company has suffered from an untold loss

17 of hundreds of millions, if not billions, of dollars as a result of the egregious actions taken by the

18 Individual Defendants. In stark contrast, defendants Dempsey, House, Klayko, Krause, Vaswani and

19 Walker will obtain a release of all claims related to their wrongdoings. As a result, these defendants

20 will be allowed to walk away unscathed from the tumult and havoc created by their own wrongful

21 conduct whereas Brocade and its shareholders cannot escape from the effects which still linger to

22 this day. This demonstration of unjust enrichment or unfair exchange taken in spite of the

23 Company's immeasurable losses could not have been the decision of a board of directors exercising

24 valid business judgment. Motivated by their desire to entrench themselves on the Board, the entire

25 Board has foregone adherence to their duty to act in furtherance of the Company's best interests. By

26 displacing Brocade's significant interest in a fair recovery with their unique, personal and economic

27 interests, the entire Board has also breached their fiduciary duties. Accordingly, reasonable doubt

28 exists as to the ability of the entire Board to evaluate demand in a sufficiently disinterested and

1  independent manner. For all the foregoing reasons, demand was futile as to defendants Dempsey,

2  House, Jones, Klayko, Krause, Rose, Vaswani and Walker.

3       231.  The Compensation Committee of the Board is specifically responsible under its

4  charter for granting stock options or other equity awards to Brocade executives. This responsibility,

5  although held by the Board, is delegated to the Compensation Committee. Yet, the Compensation

6  Committee impermissibly delegated their responsibility to Reyes, Jensen and Canova in total

7  contravention of their committee charter. The Charter for the Compensation Committee states, in

8  pertinent part, as follows:

9       *Purpose*

10          The purpose of the Compensation Committee of the Board of Directors (the
     "Board") of Brocade Communications Systems, Inc. (the "Company") shall be to

11     discharge the Board's responsibilities relating to compensation of the Company's
     executive officers. *The Compensation Committee has overall responsibility for (i)*

12     *overseeing the Company's compensation and benefits policies generally; (ii)*
     *overseeing, evaluating and approving executive officer compensation plans,*

13     *policies and programs;* and (iii) preparing the report on executive compensation that
     is required by Securities and Exchange Commission rules to be included in the

14     Company's annual proxy statement.

15     *Reporting to the Board*

16          The Compensation Committee shall make regular reports to the Board. These
     reports shall include a review of any recommendations or issues that arise with

17     respect to Company compensation and benefits policies, executive compensation and
     any other matters that the Compensation Committee deems appropriate or is

18     requested to be included by the Board.

19  Since at least 1999, the Compensation Committee was comprised of defendants Dempsey, Krause,

20  House and Vaswani. Defendant Dempsey, was a member of the Compensation Committee for over

21  seven years.  Defendants Krause, House and Vaswani were members of the Compensation

22  Committee for over three years.  These defendants were responsible as members of the

23  Compensation Committee to review and grant stock options granted to Brocade executives during

24  their respective tenures on the committee. Clearly these defendants did not fulfill this duty because

25  they did not act to inform themselves of the illegal circumstances surrounding these option grants,

26  thereby causing or allowing the Company's executives to obtain unreasonable and unreported

27  compensation via the backdating of stock option grants. Accordingly, there is a reasonable doubt

28  that defendants Dempsey, Krause, House and Vaswani are disinterested because they face a

1   sufficient likelihood of liability for their breaches of fiduciary duty to Brocade. The Compensation

2   Committee's decision to approve the options was also not the product of valid business judgment.

3   Thus, demand was futile as to defendants Dempsey, Krause, House and Vaswani.

4       232.   The Audit Committee of the Board is responsible by its charter for reviewing the

5   Company's financial and accounting reporting compliance relating to its employee benefit plans.

6   From at least 1999 through all times relevant, the Audit Committee was comprised of defendants

7   Krause and Dempsey. These defendants were responsible as members of the Audit Committee for

8   ensuring that Brocade's internal controls in connection with financial reporting and accounting were

9   adequate and that the Company's quarterly and annual financial statements were not presented in a

10  manner that was materially false or misleading. Brocade's system of internal controls, however,

11  were deficient as evidenced by the ability of Reyes, Jensen and Canova to perpetrate the improper

12  backdating of stock option grants for almost seven years. As a result of the improper option

13  backdating, the Company's financials were rendered inaccurate because those financials did not

14  account for the true amount of compensation being granted to Brocade's executives and employees.

15  Accordingly, there is a reasonable doubt that defendants Krause and Dempsey are disinterested

16  because they face a sufficient likelihood of liability for their breaches of fiduciary duty to Brocade.

17  Thus, demand was futile as to defendants Krause and Dempsey.

18      233.   As a result of their access to and review of internal corporate documents;

19  conversations and connections with other corporate officers, employees and directors; and

20  attendance at management and Board meetings, each of the defendants knew the adverse, non-public

21  information regarding the improper accounting and its detrimental impact on the Company's reported

22  earnings. While in possession of this material adverse, non-public, information regarding the

23  Company, the following current members of the Brocade Board participated in the illegal insider

24  selling:

25          (i)   Klayko sold 400,000 shares of Brocade stock for proceeds of $2,010,560

26  while in possession of material non-public information; and

27          (ii)   Dempsey sold 136,824 shares of Brocade stock for proceeds of

28  $15,208,385.49 while in possession of material non-public information.

- 110 -

1  Because these defendants received a personal financial benefit from the challenged insider trading

2  transactions, these defendants are interested. Also, these defendants face a sufficiently substantial

3  threat of liability for their illegal insider selling. Since these directors have breached their fiduciary

4  duties and are interested, any demand upon defendants Dempsey and Klayko was futile.

5       234.    The principal professional occupation of defendant Klayko was his employment with

6  Brocade, pursuant to which he received and continues to receive substantial monetary compensations

7  and other benefits. Specifically, defendant Klayko was paid the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Stock Options | All Other Compensation |
|---|---|---|---|---|---|
| Klayko | 2005 | $481,364 | $341,951 | 1,600,000 | $3,587 |
| | 2004 | $283,333 | $195,230 | 575,000 | $4,664 |
| | 2003 | $175,000 | $42,464 | 713,781 | $3,324 |

11  Accordingly, defendant Klayko lacked independence from defendants Dempsey, Krause, and

12  Vaswani, defendants who were not disinterested and/or independent and who exerted influence over

13  defendant Klayko's compensation. The Compensation Committee has the authority to review and

14  approve Klayko's base salary, bonus and equity compensation. This lack of independence rendered

15  defendant Klayko incapable of impartially considering a demand to commence and vigorously

16  prosecute this action.

17      235.    In order to bring this suit, all of the directors of Brocade would be forced to sue

18  themselves and persons with whom they have extensive business and personal entanglements, which

19  they will not do, thereby excusing demand.

20      Namely, the Individual Defendants, because of their inter-related business, professional and

21  personal relationships, have developed debilitating conflicts of interest that prevent the Board

22  members of the Company from taking the necessary and proper action on behalf of the Company as

23  requested herein. In addition to the conflicts that exist as a result of their participation in the option

24  backdating, improper accounting and insider selling, as detailed herein supra, the majority of the

25  Board, including the defendants listed below, are subject to the following prejudicial entanglements:

26      (i)    *Krause and Dempsey Are Long-Time Business Associates*:

27      Defendant Dempsey is currently General Partner of Bay Partners, an early stage
    venture capital firm operating in Silicon Valley. Bay Partners was formerly invested

28      in Brocade and also Exodus Communications, Inc. Defendant Krause was Chairman

and Chief Executive Officer of Exodus Communications, Inc. from September 2001 to February 2002 as he guided them through Chapter 11 bankruptcy to a sale of assets. Because of their long-standing and entangling business and professional relationships, defendant Dempsey would not take the action requested by plaintiffs herein against defendant Krause or the remainder of the Individual Defendants.

(ii)    *Klayko and Walker Are Long-Time Business Associates:*

Defendant Klayko held various positions at Hewlett-Packard Company prior to 1995. Defendant Walker held various positions at Hewlett-Packard Company for 24 years until he resigned in 1999. Because of their long-standing and entangling business and professional relationships, neither defendant Klayko nor defendant Walker would take the action requested by plaintiffs herein against one another or the remainder of the Individual Defendants.

236.    Each of the Director Defendants of Brocade authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

237.    The entire Brocade Board participated in the wrongs complained of herein. Brocade's directors are not disinterested or independent due to the following: defendants Dempsey, House, Klayko, Krause, Vaswani and Walker served on the Brocade Board during the period in which Company executives were improperly backdating their stock option grants. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above referenced defendants breached the fiduciary duties that they owed to Brocade and its shareholders in that they failed to prevent and correct the improper stock option backdating practices. Thus, the Brocade Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected Brocade to damages in the form of costs that the Company must expend to restate its past financials and to investigate defendants' improprieties.

238.    The acts complained of constitute violations of the fiduciary duties owed by Brocade's officers and directors and these acts are incapable of ratification.

239.   Brocade has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Brocade any part of the damages Brocade suffered and will suffer thereby.

240.   If Brocade's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Brocade. However, the directors' and officers' liability insurance policies covering the defendants in this case likely contain provisions that eliminate coverage for any action brought directly by Brocade against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Brocade, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors' and officers' liability insurance at all then the current directors will not cause Brocade to sue them, since they will face a large uninsured liability.

241.   Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiffs, the current Board has failed and refused to seek to recover for Brocade for any of the wrongdoing alleged by plaintiffs herein.

### FIRST CAUSE OF ACTION

#### Against All Defendants for Unjust Enrichment

242.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

243.   By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of Brocade.  These wrongful acts included the approval of improperly backdated stock options by the Director Defendants as well as the receipt of underserved compensation in connection with those options by the Officer Defendants.

- 113 -

244.    Plaintiffs, as shareholders and representatives of Brocade, seek restitution from these defendants, and each of them, and seek an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## SECOND CAUSE OF ACTION

**Against All Defendants for Breach of Fiduciary Duty for Approving Improperly Dated Stock Option Grants to Brocade's Employees and Executive Officers**

245.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

246.    The Individual Defendants owed and owe Brocade fiduciary obligations.  By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Brocade the highest obligation of good faith, fair dealing, loyalty and due care.

247.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

248.    Each of the Individual Defendants had actual or constructive knowledge that they had approved the improper backdating of stock option grants and the corresponding issuance of inaccurate financial results that did not properly account for the stock option grants and failed to correct or prevent these improprieties.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

249.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Brocade has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

250.    Plaintiffs on behalf of Brocade have no adequate remedy at law.

## THIRD CAUSE OF ACTION

**Against Defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker for Breach of Fiduciary Duty for Approving the Proposed Settlement**

251.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

252. Defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker owed and owe Brocade fiduciary obligations. By reason of their fiduciary relationships, these defendants owed and owe Brocade the highest obligation of good faith, fair dealing, loyalty and due care.

253. Defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker, and each of them, violated and breached their fiduciary duties of care, loyalty and good faith by approving the Proposed Settlement.

254. Each of defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker approved the Proposed Settlement on behalf of the Company. As detailed in great particularity herein, the Individual Defendants and KPMG were each involved in the egregious wrongdoing which caused Brocade substantial harm. Under the terms of the Proposed Settlement, however, the Company will implement some corporate governance changes but will recover nothing for the substantial monetary losses alleged in the Federal Derivative Action, which are similar to those alleged here.

255. As a direct and proximate result of Defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker's failure to perform their fiduciary obligations, if the Proposed Settlement is approved, Brocade will never recover for its losses which KPMG and the Individual Defendants, including defendants Dempsey, House, Klayko, Krause and Vaswani, caused the Company. As a result of the misconduct alleged herein, Defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker are liable to the Company.

256. Plaintiffs on behalf of Brocade have no adequate remedy at law.

### FOURTH CAUSE OF ACTION

**Against the Insider Selling Defendants for Violation of
California Corporations Code §25402**

257. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

258. At the time that the Insider Selling Defendants sold their Brocade common stock as set forth herein, by reason of their high executive and/or directorship positions with Brocade, the Insider Selling Defendants had access to highly material information regarding the Company,

1    including the information set forth herein regarding the true adverse facts concerning defendants'

2    backdating practices. Further, the Insider Selling Defendants cashed in their illegally backdated

3    stock options and sold them for over $1.5 billion in proceeds.

4         259.    At the time of such sales, that information was not generally available to the public or

5    the securities markets. Had such information been generally available, it would have significantly

6    reduced the market price of Brocade shares at that time.

7         260.    The Insider Selling Defendants, and each of them, had actual knowledge of material,

8    adverse, non-public information and thus sold their Brocade common stock in California in violation

9    of California Corporations Code §25402.

10        261.    Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants,

11   and each of them, are liable to Brocade for damages in an amount up to three times the difference

12   between the price at which Brocade common stock was sold by the defendants, and each of them,

13   and the market value which that Brocade common stock would have had at the time of the sale if the

14   information known to the defendants, and each of them, had been publicly disseminated prior to that

15   time and a reasonable time had elapsed for the market to absorb the information.

16                              **FIFTH CAUSE OF ACTION**

17                    **Against the Director Defendants for Violation of**
                          **California Corporations Code §25403**
18

19        262.    Plaintiffs incorporate by reference and reallege each and every allegation set forth

20   above, as though fully set forth herein.

21        263.    The Director Defendants, through their positions, possessed control and influence

22   over the Insider Selling Defendants' sale of Brocade common stock in violation of the California

23   Corporations Code. The Director Defendants are statutorily liable to the same extent as the Insider

24   Selling Defendants under California Corporations Code §25403.

25        264.    The Director Defendants were aware of the Insider Selling Defendants' knowledge of

26   the material adverse non-public information and the Director Defendants were aware of the Insider

27   Selling Defendants' intent to sell Brocade common stock while in possession material adverse non-

28   public information.

265.    The Director Defendants are culpable for the Insider Selling Defendants' underlying violations of California Corporations Code §25402 because of their knowledge and ability to control and influence the Insider Selling Defendants and because their involvement in preparing and/or approving financials that improperly accounted for the Company's compensation expenses related to grants of stock options to Brocade officers, directors and employees.

266.    Under California Corporations Code §25403, the Director Defendants, and each of them, are liable to Brocade for damages in an amount up to three times the difference between the price at which Brocade common stock was sold by the Insider Selling Defendants, and each of them, and the market value which that Brocade common stock would have had at the time of the sale if the information known to the Individual Defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## SIXTH CAUSE OF ACTION

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

267.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

268.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Brocade common stock on the basis of such information.

269.    The information described above was proprietary non-public information concerning the Company's illegal granting of backdated stock options. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Brocade common stock.

270.    The Insider Selling Defendants' sales of Brocade common stock while in possession and control of this material adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

271.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

**SEVENTH CAUSE OF ACTION**

**Against All Defendants for Abuse of Control**

272.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

273.   The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Brocade, for which they are legally responsible.

274.   As a direct and proximate result of the Individual Defendants' abuse of control, Brocade has sustained significant damages.

275.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

276.   Plaintiffs on behalf of Brocade have no adequate remedy at law.

**EIGHTH CAUSE OF ACTION**

**Against All Defendants for Gross Mismanagement**

277.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

278.   By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Brocade in a manner consistent with the operations of a publicly held corporation.

279.   As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Brocade has sustained significant damages.

280.   As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

281.   Plaintiffs on behalf of Brocade have no adequate remedy at law.

**NINTH CAUSE OF ACTION**

**Against All Defendants for Waste of Corporate Assets**

282.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

283.    As a result of the improprieties alleged herein, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused Brocade to waste valuable corporate assets and incur costs to conduct investigations, hire outside counsel, accounting firms and consultants, and to direct manpower to the task of restating Brocade's past financials to correct for the improperly backdated stock option grants.

284.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

285.    Plaintiffs on behalf of Brocade have no adequate remedy at law.

## TENTH CAUSE OF ACTION

### Against the Defendants for an Accounting

286.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

287.    At all relevant times, the defendants, as directors and/or officers of Brocade, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

288.    In breach of their fiduciary duties owed to Brocade and its shareholders, the defendants caused Brocade, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Brocade. By this wrongdoing, the defendants breached their fiduciary duties owed to Brocade and its shareholders.

289.    The defendants possess complete and unfettered control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the defendants.

290.    As a result of defendants' misconduct, Brocade has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

291.    Plaintiffs demand an accounting be made of all stock options grants made to defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the defendants,

- 119 -

1   as well as the disposition of any proceeds received by the defendants via sale or other exercise of

2   backdated stock option grants received by the defendants.

3        292.    Since the use of the Company's proprietary information for their own gain constitutes

4   a breach of the defendants' fiduciary duties, the Company is entitled to the imposition of a

5   constructive trust on any profits they obtained thereby.

6                        **ELEVENTH CAUSE OF ACTION**

7                    **Against the Officer Defendants for Rescission**

8        293.    Plaintiffs incorporate by reference and reallege each and every allegation contained

9   above as though fully set forth herein.

10       294.    As a result of the acts alleged herein, the stock option contracts between the Officer

11  Defendants and Brocade entered into since at least 1999 were obtained through defendants' breaches

12  of fiduciary duties, unjust enrichment, gross mismanagement and abuse of control.  Further, the

13  backdated stock options were illegal grants and thus invalid because defendants authorized these

14  options in breach of the terms of the publicly filed contracts regarding the Officer Defendants' and

15  Director Defendants' employment agreements and the Company's stock option plans, which were

16  also approved by Brocade shareholders and filed with the SEC.

17       295.    All contracts which provide for stock option grants between the Officer Defendants

18  and Brocade and were entered into during times relevant hereto should, therefore, be rescinded, with

19  all sums paid under such contracts returned to the Company, and all such executory contracts

20  cancelled and declared void.

21                        **TWELFTH CAUSE OF ACTION**

22                   **Against All Defendants for Constructive Trust**

23       296.    Plaintiffs incorporate by reference and reallege each and every allegation contained

24  above as though fully set forth herein

25       297.    As a result of the acts alleged herein, defendants authorized the grant of backdated or

26  otherwise manipulated equity based compensation to themselves and other Brocade insiders.  In

27  effect, these backdated options and other manipulated equity or incentive based compensation

28

1  constitutes illegal compensation in violation of Brocade's stock option plans, employment contracts

2  and other compensation polices.

3       298.    The Company has a right for the return of this compensation because it was illegally

4  authorized by the defendants and paid out of the Company's assets.

5       299.    Defendants and other Brocade insiders profited from the illegally backdated options

6  by wrongful acts.

7       300.    Accordingly, plaintiff seeks a declaratory judgment that the illicit stock options, and

8  all proceeds derived from exercise thereof, including the $1.5 billion gained as a result of insider

9  selling, and any assets or other property acquired in connection therewith, are and have been held in

10  constructive trust for the Company's benefit from the true grant date of the manipulated stock

11  options and other equity or incentive based compensation.

12                          **THIRTEENTH CAUSE OF ACTION**

13                  **Professional Negligence and Accounting Malpractice**
                              **Against Defendant KPMG**
14

15       301.    Plaintiff incorporates by reference and realleges each and every allegation contained

16  above as though fully set forth herein.

17       302.    KPMG issued "clean" or unqualified opinions on Brocade's financial statements

18  issued between 2002 and the present, stating that those financial statements were presented in

19  accordance with GAAP based on KPMG's audits which were performed in accordance with GAAS.

20  GAAS, as approved and adopted by the AICPA, governs the conduct of audit engagements. In fact,

21  the audit reports were false and misleading due to, among other things, KPMG's failure to conduct

22  the audits in accordance with GAAS, and the fact that Brocade's financial statements issued between

23  2002 and 2004 were not prepared in conformity with GAAP. KPMG's reports were therefore in

24  violation of GAAS, GAAP and SEC rules.

25       303.    The objective of audits of financial statements by the independent auditor is the

26  expression of an opinion on the fairness with which they present, in all material respects, financial

27  position, results of operations and cash flows in conformity with GAAP. The auditor's report is the

28  medium through which he expresses his opinion or, if circumstances require, disclaims an opinion.

1   In either case, he states his audit has been in accordance with GAAS. These standards require him to

2   state whether, in his opinion, the financial statements are presented in accordance with GAAP and to

3   identify those circumstances in which such principles have not been consistently observed in the

4   preparation of the financial statements of the current period in relation to those of the preceding

5   period. AU §110.01.

6          304.    GAAS as approved and adopted by the membership of the AICPA, are comprised of

7   10 general standards. These standards to a great extent are interrelated and interdependent. The

8   independent auditor is responsible for compliance with GAAS in an audit engagement. The 10

9   general standards are as follows:

10                          **General Standards**

11                  (a)     The audit is to be performed by a person or persons having adequate technical

12   training and proficiency as an auditor.

13                  (b)     In all matters relating to the assignment, independence in mental attitude is to

14   be maintained by the auditor or auditors.

15                  (c)     Due professional care is to be exercised in the performance of the audit and

16   the preparation of the report.

17                          **Standards of Fieldwork**

18                  (d)     The work is to be adequately planned and assistants, if any, are to be properly

19   supervised.

20                  (e)     A sufficient understanding of the internal control structure is to be obtained to

21   plan the audit and to determine the nature, timing and extent of tests to be performed.

22                  (f)     Sufficient competent evidential matter is to be obtained through inspection,

23   observation, inquiries, and confirmations to afford a reasonable basis for an opinion regarding the

24   financial statements under audit.

25                          **Standards of Reporting**

26                  (g)     The report shall state whether the financial statements are presented in

27   accordance with GAAP.

28

1       (h)    The report shall identify those circumstances in which such principles have

2  not been consistently observed in the current period in relation to the preceding period.

3       (i)    Informative disclosures in the financial statements are to be regarded as

4  reasonably adequate unless otherwise stated in the report.

5       (j)    The report shall either contain an expression of opinion regarding the financial

6  statements, taken as a whole, or an assertion to the effect that an opinion cannot be expressed. When

7  an overall opinion cannot be expressed, the reasons therefore should be stated. In all cases where an

8  auditor's name is associated with financial statements, the report should contain a clear-cut indication

9  of the character of the auditor's work, if any, and the degree of responsibility the auditor is taking.

10     305.    KPMG's audits of Brocade's financial statements issued between 2002 and 2004

11  violated each of the general standards.

12     306.    KPMG is one of the largest international firms of certified public accountants.

13  KPMG was the auditor of Brocade's financial statements between 2002 and the present. In addition,

14  they were paid to review the quarterly financial statements of Brocade throughout this period.

15  KPMG audited Brocade's financial statements issued between 2002 and the present, and issued their

16  audit opinions stating that those financial statements were fairly presented in accordance with

17  GAAP, and that they had audited those financial statements in accordance with GAAS. Both of

18  those statements were false. KPMG either knew or should have been aware of facts that undeniably

19  precluded them from making those statements at the time they were made. Brocade's financial

20  statements and KPMG's opinions on them were then used by Brocade with KPMG's consent to

21  publicly disseminate Brocade's financial results in the filing of their annual Forms 10-K with the

22  SEC.

23     307.    KPMG was negligent in failing to comply with GAAS as Brocade's independent

24  accountant. Brocade issued unqualified opinions stating that the financial statements of Brocade

25  were fairly presented in accordance with GAAP, when they were aware of or should have been

26  aware of facts and circumstances that undermined such unqualified opinions and rendered them false

27  and misleading.

28

308.    In the course of performing their audit services, KPMG reasonably could have obtained evidential matter revealing the adverse facts detailed above about Brocade's undisclosed compensation, but improperly failed to require them to adjust their financial statements or make disclosure of such facts. As a result of their investigations and audit work, KPMG reasonably should have known that the reports and financial statements described herein were materially misleading or negligently disregarded facts that showed that all such statements were materially misleading.

309.    Because: (a) KPMG spoke regularly with Brocade Board and Audit Committee members who were knowledgeable about the undisclosed option practices; and (b) KPMG attended certain of Board and Audit Committee meetings where legal compliance was discussed, KPMG knew or negligently disregarded facts that indicated that they should have: (i) qualified their opinions on Brocade's financial statements issued between 2002 and 2004; or (ii) required the Company to adjust its financial statements; or (iii) refused to give opinions in light of the materially adverse effects of the undisclosed facts about Brocade's financial condition, including the material overstatement of earnings based on the fact that Brocade's compensation expenses were being materially understated.   The failure to make such qualification, correction, modification or withdrawal was a violation of GAAS, including the Fourth Standard of Reporting.

310.    KPMG failed to require Brocade to disclose material adverse facts and allowed the Company to make material misrepresentations to their shareholders and to the investing public.

311.    KPMG violated GAAS General Standard No. 3, which requires that due professional care must be exercised by the auditor in performance of the examination and the preparation of the audit report.

312.    KPMG violated GAAS Standard of Field Work No. 2, which requires the auditor to make a proper study of existing internal controls, to determine whether reliance thereon was justified, and if such controls are not reliable, to expand the nature and scope of the auditing procedures to be applied.  KPMG reasonably should have known that Brocade's internal controls were insufficient yet still failed to expand their auditing procedures.

313.    KPMG violated GAAS Standard of Field Work No. 3, which requires sufficient competent evidential matter be obtained through inspection, observation, inquiries and confirmations

to afford a reasonable basis for an opinion to be issued on the subject financial statements. As described above, KPMG failed to obtain sufficient competent evidential matter as to Brocade's accounting and disclosure practices related to the timing and granting of stock option grants.

314.    KPMG violated GAAS Standard of Reporting No. 1, which requires the audit report to state whether the financial statements are presented in accordance with GAAP. KPMG's opinions falsely represented that Brocade's financial statements complied with GAAP, when KPMG knew or negligently disregarded that they did not for the reasons herein alleged.

315.    KPMG violated GAAS Standard of Reporting No. 4, which requires, when an opinion on the financial statements as a whole cannot be expressed, that the reasons be stated. KPMG should have either stated that no opinion could be issued by them on Brocade's financial statements or issued an adverse opinion stating that the financial statements were not fairly presented.

316.    KPMG violated Standard of Field Work No. 1 and the standards set forth in AU §§310, 320 and 327 by, among other things, failing to adequately plan their audit and properly supervise the work of their assistants so as to establish and carry out procedures reasonably designed to search for and detect the existence of errors and irregularities that would have a material effect upon the financial statements.

317.    KPMG violated SAS No. 16 in that they failed to perform their examination with an attitude of professional skepticism and, in connection with the audits of Brocade's financials, ignored numerous "red flags" that would reasonably have led to the discovery of the Individual Defendants' backdating practices and the resulting gross understatement of compensation expenses and overstatement of Brocade's earnings.

318.    KPMG violated AU §316.20, which requires that additional procedures should be performed when evaluation at the financial-statement level indicates significant risk.

319.    As a result of the foregoing, KPMG's certification of Brocade's financial statements issued between 2002 and the present falsely represented that the statements were audited pursuant to GAAS and that Brocade's financial statements were presented in conformity with GAAP. KPMG knew that such certification was false and misleading because, as detailed herein: (a) KPMG knew

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

1  or were negligent in not knowing that the Company's financial statements violated GAAP; and (b)

2  KPMG knew they had not complied with GAAS.

3      320.    As a result of the services rendered to Brocade, KPMG's personnel were present at

4  their corporate headquarters and major operating offices and examined or participated in reviews,

5  investigations and audit procedures regarding the financial condition, business operations and

6  financial, accounting and management-control systems of Brocade. In the course of performing such

7  services, KPMG had virtually unlimited access to substantial evidential matter revealing the adverse

8  facts about the Company's compliance with educational finance reporting requirements and laws and

9  the finances of Brocade, but improperly failed to require adjustment for or disclosure of such facts.

10     321.    KPMG: (a) knew or were negligent in not knowing of the material, adverse, non-

11 public information about the financial statements of Brocade, which was not disclosed; and (b)

12 participated in drafting, reviewing and/or approving the misleading statements, releases, reports and

13 other public representations of and about Brocade pleaded herein, involving the SEC reports on

14 Form 10-K.

15     322.    In performing auditing and accounting services on behalf of Brocade and engaging in

16 the wrongful acts alleged herein, KPMG knew or should have known that their clients would, and

17 did, transmit false and misleading financial information to the investing public. However, KPMG

18 failed to discharge their duties in adherence to GAAP and GAAS to detect errors and irregularities.

19     323.    In performing the auditing and accounting services to Brocade in the manner alleged

20 herein, KPMG owed a duty to Brocade and their shareholders to use such skill, care and diligence as

21 other members of its profession commonly exercised. KPMG, however, breached such duty by

22 committing the wrongful acts and conduct alleged herein.

23     324.    Brocade relied to their detriment on KPMG and was damaged thereby.

24     325.    As a direct, foreseeable and proximate result of KPMG's breach of duties owed to

25 Brocade, it was damaged.

26

27

28

## FOURTEENTH CAUSE OF ACTION

### Against KPMG for Breach of Contract

326.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

327.   At times relevant hereto, KPMG and Brocade were parties to written contracts pursuant to which KPMG agreed to provide audit services to Brocade in accordance with GAAS.

328.   KPMG breached its contracts with Brocade by, among other things, failing to render services in accordance with GAAS and preparing and/or approving financial statements that were not prepared in accordance with GAAP.

329.   As a direct and proximate result of KPMG's breaches of contract, Brocade has sustained damages, as alleged herein.

## FIFTEENTH CAUSE OF ACTION

### Aiding and Abetting Breaches of Fiduciary Duty Against Defendant KPMG

330.   Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

331.   Defendant KPMG aided and abetted the Individual Defendants in breaching their fiduciary obligations owed to Brocade resulting in the wrongdoing and damages to the Company. KPMG knew or should have known that Brocade's financial statements for the period between 2002 and the present contained were materially false and misleading.  KPMG also knew, or should have known, that the false and misleading information would be used, in whole or in part, by Brocade to prepare their publicly reported financial results and financial statements.  Nevertheless, KPMG actively prepared the false and misleading information and thereby aided and abetted defendants' breaches of fiduciary duty and their abuse of control, gross mismanagement and violation of their duty of candor to Brocade shareholders, complained of herein.

332.   As a direct, foreseeable and proximate result of KPMG's aiding and abetting of defendants' breaches of fiduciary duty, Brocade has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment as follows:

1    A.    Against all of the Individual Defendants and in favor of the Company for the amount

2 of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary

3 duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

4    B.    Directing Brocade to take all necessary actions to reform and improve their corporate

5 governance and internal procedures to comply with applicable laws and to protect Brocade and its

6 shareholders from a repeat of the damaging events described herein, including, but not limited to,

7 putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or

8 Articles of Incorporation and taking such other action as may be necessary to place before

9 shareholders for a vote the following Corporate Governance Policies:

10    1.    a proposal to strengthen the Board's supervision of operations and develop and

11 implement procedures for greater shareholder input into the policies and guidelines of the Board;

12    2.    a proposal to ensure that all stock options granted to executive and non-

13 executive employees are properly awarded, valued and administered;

14    3.    control and limit insider stock selling;

15    4.    a provision to permit the shareholders of Brocade to nominate at least three

16 candidates for election to the Board; and

17    5.    appropriately test and then strengthen the internal audit and control functions.

18    C.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and state

19 statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust

20 on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to

21 assure that plaintiffs on behalf of Brocade have an effective remedy;

22    D.    Directing an accounting of all undisclosed backdated stock options granted, directing

23 that all the unexercised options granted to defendants since 1999 be cancelled, ordering the financial

24 gains obtained via the exercise of such stock options returned to the Company, and ordering to have

25 Brocade revise the Company's financial statements to reflect the truth concerning these option

26 grants;

27

28

E.      Imposition of a constructive trust on any profits the Insider Selling Defendants obtained by the sale of any Brocade shares while in possession and control of this material adverse, non-public information;

F.      Imposition of a constructive trust on all proceeds derived from the exercise of illicit backdated stock options and any property acquired in connection therewith;

G.      Determining and awarding Brocade treble damages pursuant to California Corporations Code §25502.5(a) for the Insider Selling Defendants' violations of California Corporations Code §25402;

H.      Determining and awarding Brocade treble damages against the Director Defendants pursuant to California Corporations Code §25403 for the Insider Selling Defendants' violations of California Corporations Code §25402;

I.      Awarding to Brocade restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants through the improper backdating of stock option grants;

J.      Awarding to Brocade restitution from defendant KPMG and ordering disgorgement of all profits, benefits and other compensation obtained by KPMG for their failure to properly audit the Company's financial statements in accordance with professional standards;

K.      Awarding to plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

L.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury.

DATED: November 13, 2006          ROBBINS UMEDA & FINK, LLP
                                  BRIAN J. ROBBINS
                                  MARC M. UMEDA
                                  SHARLA N. HILBURN


                                  _____
                                        MARC M. UMEDA

                                  610 West Ash Street, Suite 1800

- 129 -

CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

BY FAX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

JOHNSON LAW FIRM APC
FRANK J. JOHNSON
BRETT M. WEAVER
402 West Broadway, 27th Floor
San Diego, CA 92101
Telephone: 619/230-0063
Facsimile: 619/230-1839

Co-Lead Counsel for Plaintiffs

G:\Cases\Brocade\Complaints\Amended Consol. Cpt with Backdating\Amen Consol. Der Cpt FINAL.doc

- 130 -

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 610 West Ash Street, Suite 1800, San Diego, California 92101.

2.    That on November 13, 2006, declarant served by depositing a true and correct copy thereof of

> CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSESTS, UNJUST ENRICHMENT, ACCOUNTING, RECISSION, CONSTRUCTIVE TRUST, VIOLATIONS OF CALIFORNIA CORPORATIONS CODE §§25402 AND 25403, PROFESSIONAL NEGLIGENCE AND ACCOUNTING MALPRACTICE, BREACH OF CONTRACT, AND AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY

in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this November 13, 2006, at San Diego, California.

_____
KATHERINE B. SCHEELE

BY FAX

*In re Brocade Communications Systems, Inc. Derivative Litig.*, No. 1:05CV041683
(consolidated with No. 1:05CV041800, No. 1:05CV041950)

## COUNSEL FOR PLAINTIFFS

Brian J. Robbins
Marc M. Umeda
ROBBINS UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

Douglas J. Campion
LAW OFFICES OF DOUGLAS J.
CAMPION
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone: 619/299-2091
Facsimile: 619/543-9307

Frank J. Johnson
Brett M. Weaver
JOHNSON LAW FIRM APC
655 W. Broadway, Suite 1400
San Diego, CA 92101
Telephone: 619/230-0063
Facsimile: 619/233-5535

## COUNSEL FOR DEFENDANTS

Steven Guggenheim
David McCarthy
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
Telephone: 650/493-9300
Facsimile: 650/493-6811

Counsel for Michael Klayko, David L. House,
Neal Dempsey, Paul Bonderson, Robert R.
Walker, L. William Krause, Nicholas G. Moore,
Seth D. Neiman, Christopher Paisley, William K.
O'Brien, Sanjay Vaswani, Larry W. Sonsini,
Mark Leslie and Brocade Communications
Systems, Inc.

Norman J. Blears
Alexander M. R. Lyon
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025
Telephone: 650/ 324-7000
Facsimile: 650/324-0638

Counsel for Antonio Canova

Richard Marmaro
Jack DiCanio
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213/687-5000
Facsimile: 213/687-5600

Counsel for Gregory Reyes

John Potter
QUINN EMANUEL URQUHART OLIVER
 & HEDGES LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: 415/875-6600
Facsimile: 415/875-6700


Patrick C. Doolittle
QUINN EMANUEL URQUHART OLIVER
 & HEDGES LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone: 650-801-5000
Facsimile: 650-801-5100

Counsel for Michael Byrd