# EXHIBIT 7

SUMMARY OF TESTIMONY
OF
UNITED STATES SECURITIES AND EXCHANGE COMMISSION

The Subcommittee has requested the Commission's views concerning S. 1260, the  Securities Litigation Uniform Standards Act of 1997,  which would adopt a uniform federal standard for the prosecution of certain securities fraud class actions by limiting or eliminating parallel state causes of action.   Although the bill could be seen as an effort to extend national standards to fraud involving nationally traded securities, it also appears to reflect concern about an increase in securities fraud class actions in state courts following the passage of the Private Securities Litigation Reform Act of 1995.

The issue of a uniform federal standard for securities litigation is a delicate one.  The federal securities laws presuppose an active, vital system of state securities regulation and state court enforcement.  The Commission believes that there are important types of antifraud claims that should continue to be governed by state law.  The Commission is pleased to note that S. 1260 would preserve such important state court actions as those involving  individual claims against brokers, claims involving localized fraud, claims involving fraud in penny stocks and  micro cap securities, and actions by state regulators.

The Commission is concerned, however, that the bill would deprive investors of important protections, such as aiding-and-abetting liability and longer statutes of limitations, that are only available under state law.  Preemption of state claims involving liability for reckless conduct may also be inappropriate while the status of such claims under federal law is still being considered by the courts.  The bill could also have the

======END OF PAGE 1======

unintended effect of preempting traditional state corporate governance
claims, such as class actions involving proxy and tender offer materials,
that need to be decided quickly so that mergers can go forward.

   The bill would not solve several problems of the Litigation Reform Act
that have led to calls for preemption.  The bill would not prevent
plaintiffs  lawyers from avoiding the stay of discovery in federal cases,
because it would still allow them to bring parallel suits on behalf of an
individual in state court, where the discovery stay does not apply.  If
enacted, the bill could also discourage institutional investors from
seeking to be named as lead plaintiffs in securities fraud class actions
because it would prevent them from bringing related state claims unless
they opted out of the plaintiff class.

   As Congress considers solutions to the problems of securities fraud
litigation, the Commission believes that great care should be taken to
safeguard the benefits of our dual system of federal and state law, which
has served investors well for over 60 years.

======END OF PAGE 2======

TESTIMONY OF

U.S. SECURITIES AND EXCHANGE COMMISSION

CONCERNING S. 1260,

THE "SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1997"

BEFORE THE

SUBCOMMITTEE ON SECURITIES

COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS

UNITED STATES SENATE

October 29, 1997


Chairman Gramm, Senator Dodd, and other Members of the Subcommittee:

We appreciate the opportunity to testify on behalf of the Securities and Exchange Commission ( Commission ) concerning S. 1260, the Securities Litigation Uniform Standards Act of 1997. We commend the Subcommittee for its continuing efforts to focus on the question of whether frivolous securities litigation threatens to inhibit capital formation and harm investors. The issue is one of importance. It is also one that we must approach with a surgeon's skill to assure that any proposed solutions, whether legislative, judicial, or regulatory, do not foreclose investors with legitimate grievances from obtaining prompt and full redress.

INTRODUCTION

The Subcommittee has requested the Commission's views concerning S. 1260.

The bill would adopt a uniform standard for the prosecution of certain

securities fraud class actions by limiting or eliminating certain causes of

======END OF PAGE 3======

action for fraud under state law.  S. 1260 appears to reflect concerns that

frivolous class action securities litigation has migrated to state courts

and that such state court litigation may undermine the reforms adopted by

Congress in the Private Securities Litigation Reform Act of 1995 ( Reform

Act  or  Act ).  S. 1260 addresses these concerns by preempting class

actions that are based on the statutory or common law of any state and that

allege an untrue statement or omission of material fact, or other

fraudulent conduct, in connection with the purchase or sale of specified

securities trading over national exchanges.

   The issue of a uniform standard for national securities litigation is

a delicate one.  The federal securities laws presuppose an active, vital

system of state securities regulation and state court enforcement.  In

addition, state law has traditionally governed issues of corporate

governance.  This dual system of regulation has worked to the benefit of

investors.

   More than twenty years before Congress passed the first federal

securities laws, state legislatures passed laws to protect their citizen

investors.  In 1911, Kansas passed the first law regulating securities

transactions.  A number of states followed suit and today every state has

enacted a securities act.<(1)>  These state statutes have been coined

 blue sky  laws because of concerns by the Kansas legislature that eastern

industrialists were seeking to peddle a multitude  of investments to unwary

investors, including interests in the blue sky.<(2)>  When the first

<1> Thomas Lee Hazen, THE LAW OF SECURITIES REGULATION 367 (2d
ed. 1990).

<2> Id. at 368.

======END OF PAGE 4======

federal securities laws were passed in the 1930s, federal law was thought

to be a supplement to, rather than a substitute for, the blue sky laws.  In

fact, the Securities Act of 1933 ( Securities Act ) and the Securities

Exchange Act of 1934 ( Exchange Act ) each contain a savings clause

preserving the rights and remedies existing at law or in equity.<(3)>

These provisions preserve state blue sky law and corporate law.  In

addition, the Supreme Court has repeatedly reaffirmed state supremacy in

matters involving internal corporate affairs.<(4)>

    State and federal securities laws have coexisted for over 60 years.

Recently, however, Congress has begun to reexamine the federal-state

partnership in this area.  Last year, for example, Congress enacted the

National Securities Markets Improvement Act of 1996 ( Improvement

Act ),<(5)> which, among other things, divides the responsibility for

securities registration, and investment adviser registration and oversight,

between the Commission and the states.  In doing so, Congress sought to

promote efficiency and capital formation in the financial markets.  The

responsibility for policing fraud, however, stands on somewhat different

footing.  The Commission has always relied, and continues to rely, on

private actions in both federal and state courts to support the agency s

efforts to combat fraud.  Private actions are an especially important

supplement to the Commission's enforcement program today because of  the

phenomenal growth of the securities industry during a time when the

    <(3)> Securities Act □ 16, 15 U.S.C. 77p; Exchange Act □ 28, 15 U.S.C. 78bb.

    <(4)> See, e.g., CTS Corp. v. Dynamics Corp., 481 U.S. 69 (1987).

    <(5)> Pub. L. No. 104-290, 110 Stat. 3416 (1996).

======END OF PAGE 5======

Commission's staff and budget levels have remained relatively constant. The importance of private actions has been reinforced by the recently reported rise in fraud similar to that witnessed during the bull market of the 1980s.

Although the Commission staunchly defends the right of defrauded investors to seek meaningful relief, we are sensitive to the burdens imposed on corporations by abusive litigation, which increases the cost of capital formation. As an agency whose primary mission is investor protection, we respect the concerns raised by both sides of this debate.

*****

I.  THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995

S. 1260 is best interpreted in light of Congress most recent litigation reform effort, the 1995 Reform Act.<(6)> The Reform Act primarily affected federal class actions which, while often providing the only practical method available to compensate defrauded small investors, are commonly thought to be the type of securities suits most prone to abuse. Class actions often involve expensive and time-consuming discovery, de facto control by plaintiffs lawyers, and the potential for substantial damage awards. In passing the Act, Congress attempted to curb the

potential abuses of class actions by adopting the following principal

provisions applicable to federal securities litigation:

> (i) a  safe harbor  for forward-looking statements;

> (ii) a stay of discovery while a motion to dismiss is being decided;

> (iii) heightened pleading standards requiring specific recital of

> facts giving rise to a  strong inference  of fraud;

<(6)> Pub. L. No. 104-67, 109 Stat. 737 (1995).

======END OF PAGE 6======

> (iv) a  lead plaintiff  provision designed to wrest control of class

> action litigation from lawyers and to empower institutional

> shareholders in this context; and

> (v) a system of proportionate, as opposed to joint and several,

> liability for defendants who are not found to have knowingly committed

> fraud.

*****

II.  EFFECTIVENESS OF REFORM ACT

In the aftermath of the Reform Act, state court class actions have

increased in number and become a more important feature of the securities

fraud litigation landscape.  Several reasons for this increase have been

advanced.  Some observers believe that the increase is attributable to

efforts to circumvent the Reform Act's provisions, particularly the

heightened pleading requirements and discovery stay, which do not apply in

state court.  Others point to the advantages available in state court such

as causes of action for aiding-and-abetting, non-unanimous jury verdicts,

and punitive damages.

The attractiveness of state court as a venue for class actions may

also have been enhanced by the Supreme Court's decision in Matsushita Elec.
Indus. Co. v. Epstein.<(7)>  In that case, the Court held that a state court

  judgment dismissing a state class action suit pursuant to a settlement

  agreement could include a provision barring federal

  securities fraud class actions arising out of the same transaction,

  even if the state court lacked jurisdiction to adjudicate

  the federal claims in the first place.<(8)>  Paradoxically, by allowing

to obtain a global settlement in state


  <(7)> 116 S. Ct. 873 (1996).

  <(8)> Exchange Act ☐ 27, 15 U.S.C. 78aa (providing exclusive
  federal jurisdiction of Exchange Act claims).

                               ======END OF PAGE 7======



  court, Matsushita may have made state court class actions more
advantageous for both plaintiffs and defendants and may have contributed
 to the increase in state court suits.<(9)>

       Regardless of the reasons for the increase in state court filing
question has been raised as to whether these suits may be reducing the Refor
Act's effectiveness in achieving its intended goals.  Earlier this year, the
Commission  submitted a Report to the President and the Congress on the Firs
Year of Practice Under the Private Securities Litigation  Reform Act of 1995
prepared by the Commission''s Office of the General Counsel ( Staff Report )
The Staff Report noted that there has been only limited experience with the
key provisions in the short time since its passage, and, consequently,  that
it was difficult to draw any overall conclusions about the Reform Act 's i
impact on private securities fraud litigation.

As promised in the Staff Report, the Commission's staff has continued to monitor developments under the Act.  The Commission continues to believe that it is too soon to understand the ultimate impact of the Act.<(1 Our conclusion is  supported by recent data which tends to show that the migration of securities class actions from federal to state court may have been a transient phenomenon.<(11)>

          Notwithstanding the Act's limited history, the Staff Report did make some preliminary observations about certain   provisions of the Act which appear to be achieving their intended objectives, and other provisions which are not.


     Areas of Success

          The Reform Act appears to be achieving Congress  purposes in the

     *     Most federal securities class action complaints filed in 1996 appeared to contain detailed factual allegations


          <(9)> A recent development, however, may limit the impact of the
          Supreme Court's Matsushita decision.  The Ninth Circuit held last
          week that the plaintiffs in that case could proceed with their
          federal claims because they had not been adequately represented

          in the settlement of the state court proceeding.  The Ninth
          Circuit's decision may reduce the attractiveness of state court
          suits.

          <(10)>  Other commentators agree with the Commission's view that
          the effects of the Reform Act will not be fully understood for
          several years.  See, e.g., Testimony of Michael A. Perino,

          Stanford Law School, Before the Subcomm. on Finance and Hazardous
          Materials of the House Comm. on Commerce (Oct. 21, 1997).

          <(11)> Federal Shareholder Class Action Filings Rise to Pre-
          Reform Act Levels As State Filings Fall, NATIONAL ECONOMIC
          RESEARCH ASSOCIATES, INC. (July 1997).

                              ======END OF PAGE 8======

specific to the action.

* Secondary defendants, such as accountants and lawyers, are being named much less frequently in federal securities class actions.<(12)>

* The race to the courthouse to file a complaint has slowed somewhat. Although a few cases were filed within days of the release of negative news by the issuer, most were filed after at least several weeks ha

* The courts have strictly applied the discovery stay imposed by t Reform Act during the pendency of a motion to dismiss. Coupled with the heightened pleading standards, the stay has protected defendants from having to provide discovery until the court has determined whether the plaintiffs have adequately pled their claims.


Areas of Concern

Other provisions of the Reform Act, however, appear to have been less successful in achieving Congress objectives.

The Commission's staff has identified three principal areas of concern regarding the implementation of the Reform Act. First, the staff has recei anecdotal reports that the safe harbor is not encouraging companies voluntar to disclose more forward-looking information. Second, parallel cases have brought in state court where the discovery stay does not apply, thus permit plaintiffs to obtain discovery that they could not get in federal court. Th institutional investors are failing to assume active roles as lead plaintiff federal class actions.

Safe Harbor for Forward-Looking Statements

The Staff Report indicated that it appears that companies are no using the safe harbor to make more forward-looking disclosure. In preparin the Staff Report, the Commission's Office of the General Counsel spoke with issuers who stated that their primary concern is the lack of judicial guidan

as to the sufficiency of the required meaningful cautionary

<(12)> It is unclear, however, whether this decline can be
attributed primarily to the Reform Act or to the Supreme Court's
1994 decision in the Central Bank case, which eliminated

liability for aiding and abetting in private actions under
Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b). See Central
Bank of Denver, N.A. v. Interstate Bank of Denver, N.A., 511 U.S.
at 164.

======END OF PAGE 9======

language.<(13)>  They are also waiting to see how other companies
are making use of the safe harbor.  Concern about  potential liability unde
state law, where the statements may not be protected by the federal safe
harbor, was another  frequently cited reason for not including more
forward-looking disclosure.<(14)>

        Discovery Stay

        The Staff Report notes that the discovery stay may be avoided by
the filing of a parallel state action.  Fifty-five  percent of the state cou
in a sample reviewed by the staff  (35 out of 55) had allegations that were
essentially  identical to those brought by the same law firm in federal cour
Some observers believe that these cases were filed  primarily to get discove
for use in the federal action.  Others note, however, that state courts may
offer advantages to plaintiffs other than discovery.  These include, dependi
on the state:  lower pleading standards, longer statutes of  limitation,
non-unanimous jury verdicts, joint and several liability, and aiding and
abetting liability for secondary actors.

Lead Plaintiff Provision

The lead plaintiff provision creates a presumption that the plai

group of plaintiffs with the largest

financial stake in the lawsuit during the class period should be

appointed as class representative, with the authority to

choose class counsel.  The Staff Report found that institutions sought

to be named lead plaintiff in only eight of the 105

class actions filed during the Act's first year. <(15)>  It appears that

institutions have continued to remain on the sidelines as lead plaintiffs.

In the 124 federal class actions filed to date, we are aware of only six in

<(13)> The Middle District of North Carolina recently handed down
the first decision interpreting the safe harbor.  Rasheedi v.
Cree Research, Inc., 1:96CV00890 (M.D.N.C. Oct. 17, 1997).

<(14)> The staff's preliminary observation concerning the use of

the safe harbor was primarily based on interviews of corporate
officers and outside counsel for issuers.

<(15)> Cellstar Corp. (N.D. Tex.) (State of Wisconsin Investment
Board); IVAX Corp. (S.D. Fla.)   (Pennsylvania School Employees
Retirement System Pension Fund); Fleming Cos. (W.D. Okla.)  (City

of Philadelphia, acting through its Board of Pensions and
Retirement); In re Summit Technology Sec. Litig. (D. Mass.)
(Teachers  Retirement System of Louisiana); Micro Warehouse, Inc.
(D. Conn.) (Teachers  Retirement System of Louisiana &
Pennsylvania School Employees  Retirement System Pension Fund);

In re Cephalon, Inc. Sec. Litig. (E.D. Pa.) (Sands Point
Partners, L.P.); Pepsi-Cola Puerto Rico Bottling Co. (S.D. Fla.)
(Sweetwater Investments, Inc.); OrthoLogic Corp. (D. Ariz.) (City
of Philadelphia).

======END OF PAGE 10======

which institutions have sought lead plaintiff status.<(16)>

Why are more institutions not coming forward to be lead plaintiff?  In

preparing the Staff Report, the staff met with representatives of both

public and private institutional investors.  The institutions  primary
concern is litigation-related expense.  Institutions also expressed concern
that service as lead plaintiff could expose them to liability to other
class members.  For example, other class members could sue the lead
plaintiff if the terms of the settlement were claimed to be inadequate.
Finally, and most relevant to the issue presented here, we have been told
that institutions sometimes achieve better results by proceeding with their
own individual suits.  This observation is supported by the fact that at
least six individual securities actions have recently been brought by
institutions in federal court.<(17)>


Effect On State Court Litigation
        The Reform Act focused exclusively on securities fraud class actions
in federal court.  There is no evidence in its legislative history that
Congress considered the Act's potential impact on private securities fraud

        <(16)> Boston Chicken (D. Colo.) (Teachers  Retirement System of
        Louisiana);  Molten Metals (D. Mass.) (Louisiana State Employees

        Retirement System); Mercury Finance (N.D. Ill.) (Minnesota State
        Board of Investment); Scholastic Corp. (S.D.N.Y.) (City of
        Philadelphia, acting through its Board of Pensions and
        Retirement); U.S.A. Detergents (D.N.J.) (City of Philadelphia,

        acting through its Board of Pensions and Retirement); Medaphis
        (N.D. Ga.) (Pennsylvania School Employees  Retirement System
        Pension Fund).

        <(17)> Bay Network (Florida State Board of Administration);
        Informix (Teachers  Retirement System of Louisiana and Florida
        State Board of Administration each brought individual actions);

        Digi International (Louisiana State Employees  Retirement
        System); MicroWarehouse (Florida State Board of Administration);
        Summit Medical  (Teachers  Retirement System of Louisiana); and
        Mercury Finance (T. Rowe Price).

                    ======END OF PAGE 11======

lawsuits filed in state court.  One possible reason for this is that there were reportedly very few state court securities class actions brought before 1995.<(18)>  State law claims brought pendent to federal claims in federal courts, however, historically have been commonplace. Since the Reform Act has become law, there has been an increase in the number of state court securities class actions, though the overall number remains small.<(19)>  This increase in state filings has caused widespread attention and has led to the introduction of preemption bills in both the Senate and the House.


Current Developments

    In July of this year, Chairman Levitt testified before this Subcommittee, on behalf of the Commission, that broad preemption of state remedies to address specific areas of concern would be premature.<(20)>   The Commission continues to believe that additional experience under the Act will better inform our efforts to identify the Act's shortcomings and to craft appropriate solutions to them.


<(18)> Joseph A. Grundfest and Michael A. Perino, Securities Litigation Reform -- The First Year's Experience, CORNERSTONE RESEARCH, Feb. 27, 1997 ("Counsel with substantial experience in litigating securities fraud matters suggest that the volume of class action securities fraud litigation in state court has, until passage of the Reform Act, been de minimis.").

<(19)> Testimony of Arthur Levitt, Chairman, U.S. Securities and Exchange Commission, Concerning the Implementation of the Private

Securities Litigation Reform Act of 1995 Before the Subcomm. on Finance and Hazardous Materials of the House Comm. on Commerce (Oct. 21, 1997) (noting that approximately 103 securities class actions had been brought in state courts since passage of the Act).

<(20)> Testimony of Arthur Levitt, Chairman, U.S. Securities and

Exchange Commission, Concerning the Impact of the Securities

Litigation Reform Act of 1995 Before the Subcomm. on Securities
of the Senate Comm. on Banking, Housing, and Urban Affairs (July
24, 1997).

======END OF PAGE 12======

In particular, there are several developments we are following in the state
courts that may significantly limit the availability and attractiveness of
state courts as a venue for securities class actions.  In addition, there
are developing interpretations of the Act in the federal courts that may
critically weaken the ability of investors to pursue meritorious claims in
federal court, thus making state court remedies more important than ever.

Developments in State Courts

Several judicial developments may sharply limit the ability of
plaintiffs to bring state court class actions.  Most significantly, in Pass
v. Diamond Multimedia,<(21)> the California Supreme Court will be
called upon to decide the currently unsettled question of whether the
state's securities laws apply to transactions taking place outside of
California.  If the court rules in favor of the defendant issuer, then
nationwide class actions will be unavailable in California.  Plaintiffs
lawyers would be less likely to file in state court if they could not bring
a nationwide class action to recover damages on behalf of a nationwide
class.  We recognize that this decision will only govern class actions
filed in California state courts.  California, however, has been far and
away the leading jurisdiction for the filing of state court class actions,
with about 60% of the cases to date.<(22)>

Developments in Federal Courts

Developments under the Reform Act in the federal courts may also

328A:1029test.txt
<(21)>s Case No. CV-758927 (Santa Clara Cty. Sup. Ct.).

<(22)> Securities Class Action Clearinghouse   State Complaints (last m
        http://securities.stanford.edu) (62 of the 103 post-Reform Act s
        brought in California).

                        ======END OF PAGE 13======

affect the desirability of preempting state securities actions.  The

Commission is most concerned about cases raising the issue of whether the

Reform Act eliminated recklessness as a form of liability for fraud-based

violations of the federal securities laws.  Several district courts have so

held,<(23)> and the issue is currently pending in the Sixth and Ninth

Circuit Courts of Appeals.<(24)>  Most courts to address the issue

have agreed with the Commission's position that recklessness continues to

be a valid basis for pleading and proving scienter.<(25)>  The

Commission strongly believes that recklessness must be preserved as the

standard for liability because it is essential to investor protection.  The

Commission has filed an amicus brief in the Ninth Circuit case urging that

        <(23)> In re Silicon Graphics, Inc. Sec. Litig., C 96-0393, 1997
        WL 337580 (N.D. Cal. June 5, 1997) (holding that plaintiffs must
        create a strong inference of knowing or intentional misconduct,

        but adding that  deliberate recklessness,  a previously undefined
        term, would suffice); Friedberg v. Discreet Logic Inc., 959 F.
        Supp. 42 (D. Mass. 1997); Powers v. Eichen,  No. 96-1431-B (AJB)
        (S.D. Cal. Mar. 13, 1997); Norwood Venture Corp. v. Converse
        Inc., 959 F. Supp. 205 (S.D.N.Y. 1997); Voit v. Wonderware Corp.,

        No. CIV.A. 96-CV-7883, 1997 WL 570710 (E.D. Pa. Sept. 8, 1997);
        In re Comshare Inc. Sec. Litig., Case No. 96-73711-DT (E.D. Mich.
        Sept. 18, 1997).

                <(24)> Hoffman v. Comshare, Inc., No. 97-2098 (6th Cir.); Zeid v
        Kimberly, No. 97-16070 (9th Cir.).

        <(25)> Marksman Partners, L.P. v. Chantal Pharmaceuticals Corp.,

927 F. Supp. 1297 (C.D. Cal. 1996); Zeid v. Kimberley, 930 F. Supp. 431 (N.D. Cal. 1996); STI Classic Fund v. Bollinger Indus., Inc., No. 3:96-CV-823-R, 1996 WL 866699 (N.D. Tex. Nov. 12, 1996); Fischler v. AmSouth Bancorporation, No. 96-1567-CIV-T-17A, 1996 WL 686565 (M.D. Fla. Nov. 14, 1996); Rehm v. Eagle Fin.

Corp., 954 F. Supp. 1246 (N.D. Ill. 1997); Fugman v. Aprogenex, Inc., 961 F. Supp. 1190 (N.D. Ill. 1997); In re The Wellcare Management Group, Inc. Sec. Litig., 964 F. Supp. 632 (N.D.N.Y. 1997); Page v. Derrickson, No. 96-842-CIV-T-17C, 1997 WL 148558

(M.D. Fla. Mar. 25, 1997); Galaxy Inv. Fund, Ltd. v. Fenchurch Management, Ltd., 1997 U.S. Dist. LEXIS 13207 (N.D. Ill. Aug. 29, 1997); Pilarcyzk v. Morrison Knudsen Corp., 965 F. Supp. 311 (N.D.N.Y. 1997); OnBank & Trust Co. v. FDIC, 967 F. Supp. 81 (W.D.N.Y. 1997); In re Health Management, Inc. Sec. Litig., No.

CV 96-889, 1997 WL 413895 (E.D.N.Y. July 21, 1997); Gilford Ptnrs. L.P. v. Sensormatic Elec. Corp., 1997 U.S. Dist. LEXIS 13724 (N.D. Ill. Sept. 10, 1997); Weikel v. Tower Semiconductor Ltd., No. 96-3711 (D.N.J. Oct. 2, 1997).

======END OF PAGE 14======

view. A uniform federal standard that did not include recklessness as a basis for liability would jeopardize the integrity of the securities markets, and would deal a crippling blow to defrauded investors with meritorious claims. A higher scienter standard would lessen the incentives for corporations to conduct a full inquiry into potentially troublesome or embarrassing areas, and thus would threaten the disclosure process that has made our markets a model for nations around the world. Should the courts of appeals conclude that the Reform Act has somehow eliminated recklessness as a basis for antifraud liability, the preservation of state remedies that allow recovery for reckless conduct would be critical.

*****

III. ANALYSIS OF S. 1260

Main Features

    Covered Securities

S. 1260 applies to nationally listed securities and shares of registered investment companies. The bill only applies to securities that qualify as covered securities under sections 18(b)(1) and (2) of the Securities Act, which were enacted as part of the Improvement Act. Those sections include securities that:

*   are listed, or authorized for listing, on the New York Stock Exchange, the American Stock Exchange, or the Nasdaq National Market System, or on an exchange with substantially similar standards that the Commission may later designate by rule; or

*   are securities of the same issuer that are senior or equal to a covered security; or

*   are issued by investment companies registered with the SEC (this

======END OF PAGE 15======

includes, among other things, shares in mutual funds).

.   The coverage provision of S. 1260 is narrower than that of the Improvement Act in several respects. In addition to preempting state regulation of covered securities, the Improvement Act also preempts state regulation of sales to qualified purchasers, to be defined by the SEC, and of certain exempt offerings, including certain secondary market transactions, unsolicited brokers transactions, transactions in exempted securities, and private placement transactions made under SEC rules. S. 1260 does not preempt state law claims in these areas.

We believe that these differences between S. 1260 and the Improvement Act are logical and should be preserved. Because there are no registration requirements for exempt offerings, they generally receive no regulatory scrutiny. Thus, investors in exempt offerings need antifraud protection

afforded by the choice between federal and state law.

Class Actions

The bill preempts only class actions.  Class actions are defined as suits seeking damages on behalf of at least 25 persons, or involving named parties seeking damages on behalf of unnamed parties, or cases where one or more of the plaintiffs did not personally authorize the suit.

The bill's definition of class action is somewhat broader than that used in federal court (and copied in most state courts) under Federal Rule of Civil Procedure 23.  A class action in federal court may only be brought if the court finds that the class is too numerous to join all of its members in the suit, the members  claims involve common questions of fact and law, the class representatives have typical claims and will fairly protect class interests, and the claims ought not to be tried separately

======END OF PAGE 16======

for one of several other specified reasons.  Because these factors are complicated to apply and may be subject to varying judicial interpretations, it would not be practical for the bill's definition of class action to mirror that codified in Rule 23.

Preemption of Fraud Actions

The bill would preempt class actions brought by private parties under state law alleging  an untrue statement or omission of material fact  or the use of  a manipulative or deceptive device or contrivance  in connection with the purchase or sale of securities.  Thus, the bill would not preempt typical state claims of a breach of a fiduciary duty by an officer or director of a public company, with the exception of claims

alleging a breach of the fiduciary duty of disclosure, which is based on a misrepresentation or omission and could be implicated by the purchase or sale of a security.

The fraud language of the bill tracks the antifraud provisions of the securities laws  Section 17(a) of the Securities Act, which prohibits untrue statements and omissions of material fact and devices and schemes to defraud, and Section 10(b) of the Exchange Act, which prohibits the use of a manipulative or deceptive device or contrivance  in connection with the purchase or sale of securities.

Removal Provision

The bill allows any class action brought in state court involving a covered security, as set forth in [the provision preempting state fraud actions], to be removed by the defendant to federal court. We believe


======END OF PAGE 17======


that this provision is coextensive with the preemption provision;<(26)> it allows a state fraud class action to be removed to federal court, where discovery would be stayed while a motion to dismiss is pending, so that a federal court could decide whether the state court claims are preempted before any discovery occurred in the state court proceeding.


Claims Not Preempted by S. 1260

The Commission believes that there are important types of antifraud claims that should continue to be governed by state law.  In this regard,

we note that S. 1260 would not preempt the following claims, in which the states have a strong interest.

Claims Against Brokers

As S. 1260 only preempts class actions, it would not preempt individual state law claims against brokers. Many of these claims are handled in arbitration proceedings, which often include claims based on state statutory or common law. These claims may arise from, among other things, churning, misappropriation of customer assets, or misrepresentations or omissions concerning the purchase or sale of a security. When these cases involve egregious wrongdoing, punitive damages, which are not available under federal law, are often appropriate. These individual claims do not present the threat of abuse that underlay Congress passage of the Reform Act and thus should not be preempted.

<(26)> If the removal provision were read more broadly, so that

it applied to any class action involving a covered security (and not just to preempted class actions involving fraud), it would likely raise serious constitutional questions about the permissible scope of federal law.

======END OF PAGE 18======

Preemption of these claims would eliminate important protections that state law provides investors in relationships with their brokers. Preemption of individual actions would also preclude investors defrauded in localized transactions from suing in state court, even though the state interest here likely outweighs the federal interest.

Localized Fraud

States, through their police powers, should have the authority to

craft laws governing fraud occurring wholly within their borders.  S.1260
would continue to allow individuals who have been defrauded in face-to-face
transactions to sue in state courts and seek remedies that the forum state
deems appropriate.   We note, however, that S. 1260 may be overbroad in
some respects because it preempts some state actions involving fraudulent
conduct that occurred entirely within one state.  For example, if a
confidence artist conducted a large-scale fraud involving a covered
security in a single state, state law would only provide relief to those
investors who sued individually but would be preempted if investors decided
to proceed as a class.   Penny Stock and Micro Cap Securities

     Concerns have been expressed recently at both the federal and state
levels concerning a rise in fraud in connection with the market for  penny
stock <(27)> and  micro cap <(28)> securities.  Both Congress
and the New York State Attorney General's Office have recently conducted
hearings on this matter.  In testimony before the Senate Permanent

          <(27)>A penny stock is generally a security that is priced at
          less than $5 per share and is not traded on a national exchange

          or the Nasdaq National Market System.

          <(28)>  Micro cap  securities generally describe a somewhat
          broader universe of stocks than  penny stocks.  They include the
          stock of any company with comparatively low capitalization,
          regardless of its price or where it is traded.

                    ======END OF PAGE 19======

Subcommittee on Investigations, Chairman Levitt, on behalf of the
Commission, expressed concern about  abuses in the market for micro cap
securities, which provide[] opportunity for small businesses to raise
capital, but also provide[] opportunity for fraudsters to prey on innocent
investors. <(29)>  Given the special concerns of both the federal

government and the states in this area, preemption of class claims involving penny and micro cap stocks is not warranted.

Actions by State Regulatory Authorities

S. 1260 would only preempt class actions brought by any private party. <(30)> The Commission strongly believes that S. 1260 properly preserves actions brought by state regulators. We have long maintained that the state regulators are the local cop on the beat in protecting against fraud, and their continued role in this regard is vital to investor protection.


Claims Preempted by the Bill

State Fraud Class Actions

S. 1260 would preempt most of the securities class actions brought in state courts since passage of the Reform Act. The bill would also preempt all claims based on state statutory and common law even if brought in federal court pendent to a federal claim and pursuant to the terms of the Reform Act. The practical effect of passage will be that state securities

<(29)> Testimony of Arthur Levitt, Chairman, U.S. Securities and Exchange Commission, Concerning Fraud in the Micro Cap Market

Before the Permanent Subcomm. on Investigations of the Senate Comm. on Governmental Affairs (Sept. 22, 1997).

<(30)> It is unclear whether this definition would include state and municipal pension funds because they are state, not private, entities.

======END OF PAGE 20======


laws will be inapplicable in most class actions, whether brought in federal or state court. The governing law will be federal law. Because a number

of states allow claims that cannot be brought under federal law, and because it is not always cost-effective for plaintiffs to proceed individually, the bill will preclude relief as a practical matter for some small investors who may have been defrauded.

As a result, certain investor protection laws available at the state level, which the Commission favors, would no longer be available. Forty-nine states as well as the District of Columbia allow for some form of aiding-and-abetting liability. Under a 1994 Supreme Court decision, there is no aiding-and-abetting liability in private actions for most federal securities fraud claims.<(31)> In addition, as a result of a 1991 Supreme Court decision, private actions under the federal securities laws are subject to a short statute of limitations. Specifically, private actions under Section 10(b) of the Exchange Act must be brought within one year after discovery of the alleged violation, and no more than three years after the violation occurred.<(32)> By contrast, 33 states allow for longer limitations periods. A state class action brought after the federal statute of limitations had run could not be used to evade the Reform Act s discovery stay provision, because no parallel federal suit could be brought.

<(31)> Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994).

<(32)> Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991).

======END OF PAGE 21======

Potential Consequences of S. 1260

Duty of Disclosure

S. 1260 could have the unintended effect of preempting certain claims arising from transactions in which both the state and federal governments have a strong interest.  In particular, S. 1260 could preempt state class actions for damages based on material misstatements or omissions in proxy and tender offer materials in connection with an extraordinary corporate transaction.  Such preemption would eliminate important areas of state corporate law that have long coexisted with  indeed, predate by almost a century  the federal securities laws.

Under current law, mergers or other extraordinary transactions may give rise to claims under both state corporate law and federal securities law.  Shareholders who bring class actions challenging such transactions often allege a breach of fiduciary duty by target-company management and directors under state corporate law.  State corporate law imposes duties of care and loyalty on a corporation's directors, as well as a duty of disclosure when the directors are seeking shareholder approval of certain transactions.

Preemption of state duty of disclosure claims raises significant federalism concerns.  Many state courts, particularly those in Delaware, have developed expertise and a coherent body of case law which provides guidance to companies and lends predictability to corporate transactions. In addition, the Delaware courts, in particular, are known for their ability to resolve such disputes expeditiously  in days or weeks, rather than months or years.  Delay in resolving a dispute over a merger or acquisition could jeopardize completion of a multi-billion-dollar

======END OF PAGE 22======

transaction.  Broad preemption would diminish the value of this body of
precedent and these specialized courts as a means of resolving corporate
disputes.

        Discovery Stay

        One of the concerns about the Reform Act identified by the Commission
is the filing of parallel state and federal actions based on the same
conduct to avoid the federal discovery stay.  In the Staff Report, the
Commission noted that  [o]f the 105 federal actions filed in 1996, we have
identified 26 that are tied to a parallel state action. <(33)>  The
Staff Report also observed that  plaintiffs may be able to use state
discovery procedures to uncover facts necessary to frame allegations
sufficient to withstand a motion to dismiss, either in the state court
proceeding or in a subsequently filed federal complaint. <(34)>  If
discovery is available in state courts that can be used to avoid the stay
of discovery in federal court, one of the goals of the Reform Act may be
frustrated.

        Because S. 1260 would preempt only class actions, law firms
representing plaintiffs would still be free to file a lawsuit on behalf of
an individual in state court, and a parallel suit on behalf of a class in
federal court.  This approach would allow plaintiffs to continue to avoid
the effect of the federal discovery stay despite preemption of state class
actions.  Closing this gap in the bill by extending its coverage to all
actions may be undesirable because it would require much broader preemption
and raise even greater federalism concerns.  Absent some form of exclusion,

        <(33)> Staff Report at 70.

        <(34)> Id. at 69.

                    ======END OF PAGE 23======

broader preemption would probably preclude state law claims based on face-to-face transactions and investors claims against their brokers and investment advisers. Fraud claims arising from such relationships arguably invoke the strongest of state interests in protecting their citizens, and the Commission would be reluctant to see such claims left exclusively to federal law. Any provision that would successfully carve out every individual fraud action that ought to remain in state court is likely to be cumbersome and subject to varying judicial interpretations.

Institutional Investors

The Commission has been concerned by the fact that few institutions have sought to become lead plaintiffs in federal securities class actions. S. 1260 could further reduce the incentives for institutions to seek lead plaintiff status. If institutional investors sought lead plaintiff status after S. 1260 became law, the bill's preemption provisions would bar them from asserting pendent state claims in federal court. If institutions brought individual actions in federal court, however, they would remain free to assert state as well as federal claims.

*****

IV. CONCLUSION

We understand and appreciate the concerns that have been raised about the apparent increase in state court securities fraud class actions. We realize that many Members have concluded that the time to address these concerns is now, through legislation that would limit or eliminate state causes of action. Some supporters of legislation view preemption as necessary to prevent frustration of the Reform Act's goals; others see preemption as a logical extension of the division between state and federal

======END OF PAGE 24======

functions set forth in the Improvement Act.

We all share the overarching goal of ensuring that the Act operates as intended.  A substantial move toward national standards, however, would be much more far-reaching than merely correcting the problems with the Reform Act identified to date.  Even the broadest calls for national standards seem to have been triggered by the effects of the Reform Act.  All commentators concede, however, that we will not fully understand the effects of the Reform Act for at least several years.  Care should be taken in proposing solutions to the Reform Act's problems to safeguard the benefits of our dual system of federal and state law that has served investors well for over 60 years.

S. 1260 attempts to adjust the balance between state and federal rights and adopt national standards where the need for uniformity eclipses legitimate state interests.  Some members of the current Commission sympathize with the argument that national securities markets should be governed by a national standard, provided that the national standard properly safeguards the right of injured investors to pursue meritorious claims.<(35)>  As we have pointed out, however, additional work and

> <(35)> Commissioner Johnson believes that there has been
> inadequate time to determine the net effects of the Reform Act
> and, accordingly, that any preemption of state remedies or causes
> of action at this time is unwarranted.  In Commissioner Johnson's
>
> view, much of the current debate appears to be driven by
> anecdotes and ideology, rather than hard facts.  The sustained
> market boom in recent years would not have occurred absent
> investor confidence.  Assuming, based on events of the last
>
> several days, that a market correction occurs, the maintenance
> and restoration of investor confidence will likely have a key
> part in a market recovery.  Investor confidence will be reduced

if investors perceive that their protections against fraud have
been diminished.  In this context, class actions play a crucial

role.  The costs of bringing an individual lawsuit often exceed
the losses suffered by a defrauded small investor.  As a result,
participation in a class action may well be the small investor s
only practical remedy for securities fraud.  The alleged abuses
                                              (continued...)

                    ======END OF PAGE 25======



study are necessary to assure that the bill preserves important rights

under state corporate law, rights to pursue claims for localized frauds,

and that it does not provide a disincentive for institutions to serve as

lead plaintiffs in federal class actions.  We also hasten to add that our

testimony today reflects the views of a three-member Commission.  As you

know, we will soon be joined by Commissioners Laura Unger and Paul Carey.

The Commission's position on litigation reform issues will, of course,

require consideration of their views.

        The Commission looks forward to working with the Subcommittee as it

goes forward in its consideration of this bill.

                              ###

```
<(35)>(...continued)
associated with class actions asserted by proponents of

litigation reform must therefore be balanced against the ability
of investors to obtain compensation for their losses caused by
fraud.  Given the possible adverse effect on investor confidence,
as well as the long history of effective and concurrent federal
and state securities regulation, and the strong federalism

concerns raised by preemption, Commissioner Johnson believes that
extreme caution should be exercised before state courthouse doors
are closed to small investors through the preclusion of state
class actions for securities fraud.

               ======END OF PAGE 26======
```