1 | Timothy J. Burke (181866)
service@ssbla.com
2 | STULL, STULL & BRODY
10940 Wilshire Boulevard
3 | Suite 2300
Los Angeles, CA 90024
4 | Tel: (310) 209-2468
Fax: (310) 209-2087

Jules Brody
Aaron L. Brody
SSBNY@aol.com
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230
Fax: (212) 490-2022

[Additional Counsel Appear on Signature Page]

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAI-NING HUANG, WAY-LING HWANG, FRANK PETRUNO, and GORDON A. MECCAY, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> GREGORY L. REYES, ANTONIO CANOVA, NICHOLAS G. MOORE, DAVID L. HOUSE, SETH D. NIEMAN, CHRISTOPHER B. PAISLEY, NEIL DEMPSEY, BROCADE COMMUNICATIONS SYSTEMS, INC., and DOES 1 through 25, <br><br> Defendants. | CASE NO. CV07-05950 CRB <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT BROCADE COMMUNICATIONS SYSTEMS, INC.'S MOTION TO DISMISS COMPLAINT** <br><br> DATE: February 1, 2008 <br> TIME: 9:00 a.m. <br> CTRM: 8, 19th Floor <br> JUDGE: Honorable Charles R. Breyer |

## I. INTRODUCTION

Courts in this district have already ruled that options backdating cases such as this one are not preempted by the Securities Litigation Uniform Standards Act ("SLUSA"). *Pace v. Bidzos*, No. C 07-3742, 2007 U.S. Dist. LEXIS 76909 (N.D. Cal. Oct. 3, 2007); *City of Ann Arbor Employees' Retirement Sys. v. Gecht*, No. C 06-7453, 2007 U.S. Dist. LEXIS 21928, at *21 (N.D. Cal. March 9, 2007). These courts held that actions such as this meet the requirements of at least one exception to SLUSA, contained in a clause commonly referred to as the "Delaware carve-out." 2007 U.S. Dist. LEXIS 76909 at *6-8. Plaintiffs' Complaint for Breaches of Fiduciary Duty, filed in Santa Clara County (hereinafter the "Complaint") alleges that defendants breached their fiduciary duty of disclosure under Delaware law by making misrepresentations and failing to disclose material facts regarding their improper backdating of stock options through Brocade Communications Systems, Inc.'s ("Brocade" or the "Company") amended stock option plans. ¶¶ 38-58.[1] As options backdating cases meet the requirements of Delaware carve-out, this action must be remanded to the Santa Clara County Superior Court. *See* 15 U.S.C. § 17bb(f)(3)(D). ("[I]f the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.").

## II. STATEMENT OF FACTS

The Complaint alleges that defendants engaged in an option backdating scheme. ¶¶ 38-58. On August 10, 2006, a federal grand jury handed down an indictment containing allegations that detail pervasive accounting fraud occurring at Brocade from 1999-2004 and describing the direct involvement in this fraudulent scheme of Reyes, Canova and their controlled person, Jensen. ¶ 42.

Reyes orchestrated a fraudulent scheme whereby he routinely executed backdated documents providing "in the money" option grants, evaded rules requiring Brocade to publicly report the associated expenses and materially understated Brocade's expenses and overstated its income. Reyes was given sole authority to grant options to employees (other than certain officers and directors) as the sole member of Brocade's Compensation Committee. From at least 2000 through

---

[1] All ¶ references are to the Complaint.

1

**PLTFS' OPPOSITION TO DEFT BROCADE'S MOTION TO DISMISS COMPLAINT**
W:\STULL\BROCADE3\PLD\Opp MTD FINAL.wpd                              **CASE NO. CV07-05950 CRB**

2004, Reyes used the authority delegated to him to choose when to grant options to non-officer employees, as well as how many to grant. Reyes used the virtually unchecked authority given to him to grant "in-the money" options by falsifying the date on which the grants were made, thereby granting the options with well below-market strike prices. *Id*.

Brocade's public filings for fiscal years 2000-2003 represented that Brocade accounted for its option grants in accordance with GAAP, including APB 25. Except in a few minor instances, Brocade did not disclose any compensation expenses in connection with its option grants in its SEC filings. Reyes and Jensen often waited until the end of the fiscal quarter before granting options. Jensen provided Reyes with a list (name of employee, number of options, hire date for new hires, and other information) of options granted at a purported "Compensation Committee Meeting" occurring on a given date. Jensen's staff would also print out the historical pricing information, highlight the lowest closing price during the period, and give it to Reyes with the Committee meeting minutes. Reyes would then sign the minutes and date them as if the meetings occurred on the highlighted low dates and the stock options were priced at the market value of Brocade's stock on those dates. Reyes and Jensen both knew that Reyes had not granted the options on the date set forth in the options grant. The above-described practice for pricing option grants became so routine that by June 2003, an HR employee prepared a memorandum describing the practice in detail. *Id*.

Reyes and Jensen provided the minutes of the purported Committee meetings to Brocade employees responsible for recording the grant in Brocade's books and records and preparing its financial statements. As Reyes and Jensen further knew, because they supplied the false underlying documentation, the Company did not record an expense related to the grants in its financial statements. *Id*.

There are many additional instances of wrongdoing related to the options backdating scheme at Brocade listed in the Complaint. ¶¶ 38-58. The false statements in the various Proxy statements mislead investors. ¶108. Specifically, Brocade's 2000 and 2001 Proxy Statements both asked shareholders to approve the issuance of additional shares of stock. *See* Plaintiffs' Request for Judicial Notice in Support of Their Opposition to Defendant Brocade Communications, Inc.'s Motion to Dismiss Complaint, Ex. 1, p. 11 of 26 and Ex. 2, p. 13 of 30 (hereinafter "Pltfs' Req. for

2

1  Judicial Notice"). These additional shares were granted to employees when they exercised their
2  backdated options under the option plan. *Id.*

3  **III.   STANDARDS ON A MOTION TO DISMISS**

4        The Court may not grant a motion to dismiss "unless it appears beyond doubt that the
5  plaintiff can prove no set of facts in support of his claims which would entitle him to relief."
6  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). When analyzing a complaint, all factual
7  allegations are taken as true and construed in the light most favorable to the nonmoving party. *See*
8  *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). All reasonable inferences are
9  to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir.
10 1997). When a complaint is dismissed for failure to state a claim, "leave to amend should be
11 granted unless the court determines that the allegation of other facts consistent with the challenged
12 pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
13 806 F.2d 1393, 1401 (9th Cir. 1986) (citations omitted). Leave to amend is properly denied "where
14 the amendment would be futile." *DeSoto Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992)
15 (citations omitted).

16       In the SLUSA context, this means that the court must construe the complaint in the light
17 most amenable to the conclusion that the complaint is not subject to SLUSA preclusion (*i.e.*, as
18 discussed below, that Plaintiffs' class claims should be merely remanded to state court rather than
19 dismissed with prejudice). *See generally Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395
20 F.3d 25 (2d Cir. 2005) (applying Rule 12(b)(6) standard in SLUSA context), overruled on other
21 grounds, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006); cf. *PR Diamonds, Inc. v.*
22 *Chandler*, 364 F.3d 671, 683, (6th Cir. 2004) ("The PSLRA does not changed the 13] Rule 12(b)(6)
23 maxim that when an allegation is capable of more than one inference, it must be construed in the
24 plaintiff's favor.") (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001)).

25
26
27
28

3

IV.    **ARGUMENT**

    A.    **The Court Is Not Required to Dismiss the Complaint Solely Because it Was Not Filed in Defendant's State of Incorporation**

Contrary to Brocade's argument (*see* Def. Memo at p. 7-9) the Delaware carve-out **does not** require that actions be brought only in a corporation's state of incorporation. *Pace v. Bidzos*, No. C 07-3742, 2007 U.S. Dist. LEXIS 76909 (N.D. Cal. Oct. 3, 2007); *Rubery v. Radian Group, Inc.*, No. 07-1068, 2007 U.S. Dist. LEXIS 39372 at *11-12. (E. D. Pa. May 31, 2007); *Gibson v. PS Group Holdings*, No: 00-CV-0372, 2000 U.S. Dist. LEXIS 3158 at *16. (S.D. Cal. Mar. 8, 2000). Neither the plain language of the SLUSA nor Brocade's citations of legislative intent compel dismissal of this case due to the fact it was not brought in Delaware, Brocade's state of incorporation. *Id.*

Brocade's argument that the "plain language" of SLUSA requires that this case be filed in Delaware is absurd. There is "no support in the statute for defendants' claim that the Delaware carve-out applies only to cases brought in the state courts of the state of incorporation." *Pace* at *5. The "plain language" of the statute cannot compel dismissal because "SLUSA itself does not include a venue restriction." *Rubery* at *11. "Rather, it requires only that a securities action plaintiff bring her claim in 'a State … court,' and base her claim on the law of the state in which the issuer is incorporated." *Id.* (citing 15 U.S.C. § 78bb(f)(3)(A)(i)). Here, because the statute does contain any sort of venue provision, Brocade is manufacturing its "plain language" argument out of thin air.

Given that the statute itself has no venue provision, it is not surprising Brocade neglects to point out any language in the statute itself supporting its argument that its "plain language" requires that this case be filed in Delaware. *See* Def. Memo at p. 7-9. Instead, Brocade cites to two cases, -- *N.Y. City Employees' Retirement Sys. v. Ebbers* (In re WorldCom Sec. Litig.), 293 B.R. 308, 2003 WL 716243, at *3 n.31 (S.D.N.Y., March 3, 2003); and *Drulias v. ADE Corp.*, 2006 U.S. Dist. LEXIS 43285, 2006 WL 1766502, at *1 (D. Mass., June 26, 2006) as support for its "plain language" argument. However, the court in *Pace* has already determined that these cases "are not persuasive, as those courts' comments are, at most, dicta." *Pace* at *5. Furthermore, Brocade itself

4

admits that its citation to *Drulias v. ADE Corp.*, 2006 U.S. Dist. LEXIS 43285, 2006 WL 1766502, at *1 (D. Mass., June 26, 2006) is nothing more than "dicta." Def. Memo at p.8. As the *Pace* court held, these cases are not persuasive. *Pace* at *5.

Realizing that the *Pace* decision is fatal to its argument, Brocade argues that *Pace* should be overturned because the court's "decision contains no discussion or analysis of SLUSA's language or legislative history...." *See* Def. Memo at p. 9, n.5. This argument should be given the exact same weight as Brocade's "plain language" argument, because both are seemingly based upon an inability to comprehend written English. Contrary to Brocade's assertion, the *Pace* court's ruling that there is "**no support in the statute** for defendants' claim that the Delaware carve-out applies only to cases brought in the state courts of the state of incorporation" proves that the *Pace* decision does indeed discuss and analyze the statute. *Pace* at *5 (emphasis added). Brocade's claim otherwise should be ignored.

Brocade next looks to SLUSA's legislative history to support its contention that limiting venue to the states where the subject companies are incorporated is desirable and was intended by Congress. Oddly, Brocade has not cited a single case where a court ruled that SLUSA's legislative history shows Congress intended to restrict venue. Brocade's failure to cite case law can be easily explained --- courts have consistently rejected this argument. *See Rubery* at *12; *Gibson* at *16.

The Supreme Court has cautioned that "appeals to statutory history are well taken only to resolve statutory ambiguity." *Rubery* at *12. (citing *Barnhill v. Johnson*, 503 U.S. 393, 401 (1992). "It is well established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)(citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, (2000).

Here, the absence of a venue provision in SLUSA is not ambiguity. *Rubery* at *12. On the contrary, it demonstrates that Congress chose not to restrict venue. *Id.* at *11-12 (rejecting "Defendants' selective offerings of SLUSA's legislative history to read into the statute a venue limitation that Congress could have put there, but did not"); *Gibson* at *16 ("The Court therefore finds the language of the Delaware carve-out unambiguous as to its lack of a venue restriction, and

5

**PLTFS' OPPOSITION TO DEFT BROCADE'S MOTION TO DISMISS COMPLAINT**
W:\STULL\BROCADE3\PLD\Opp MTD FINAL.wpd                    **CASE NO. CV07-05950 CRB**

declines to give legal effect to unenacted statements in the legislative history"). Brocade's claim that this "Court must nevertheless read such a restriction into the statute. . . ." (*see* Def. Memo at p. 9) should be rejected.

### B. Both Prongs of the Delaware Carve-Out Apply

Because Plaintiffs' claims meet the threshold showing that the allegations are based on the common law of Brocade's state of incorporation, the Delaware carve-out exempts this action from SLUSA if the claims concern:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>
> (II) any recommendation, position or other communication with respect to the sale of securities of an issuer that –
>
>> (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
>>
>> (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A)(ii). As demonstrated *infra*, each of these enunciated sections of SLUSA applies to Plaintiffs' allegations, requiring remand of this action to the Santa Clara Superior Court.[2]

### 1. The First Prong

As alleged in the Complaint and contrary to Brocade's assertions, this action concerns "the [] sale of securities by [Brocade] exclusively [] to holders of equity securities of [Brocade]." 15 U.S.C. § 78bb(f)(3)(A)(ii)(I). Brocade's grant of options to its employees made those employees holders of Brocade equity securities under the federal securities laws. *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129-1130 (9th Cir. 2002). In *Falkowski*, the Ninth Circuit ruled that because employee stock options themselves were not listed on a national securities exchange, there is little dispute that the options do not meet the requirements of a "covered security" under SLUSA. *Id.* at 1129. However, that conclusion did not end the Ninth Circuit's inquiry. The Ninth Circuit then

---

[2] SLUSA requires remand when a plaintiff's complaint satisfies either 15 U.S.C § 78bb(f)(3)(A)(ii)(I) or 15 U.S.C § 78bb(f)(3)(A)(ii)(II). Satisfaction of both clauses is not necessary. *Id*.

6

1  examined the case law concerning both the 1933 and 1934 Acts and reached the opposite
2  conclusion. *Id.* at 1129-30. The court held that employee stock options were covered securities
3  under SLUSA because the granting of options is a sale of the underlying security. *Id.* at 1130.
4  Thus, being granted an employee option makes the employee a holder of Brocade equity securities,
5  as the options were for the purchase of Brocade equity securities. *Id.*

6        The actual exercise of the options satisfies the additional requirement that the action must
7  involve the purchase of securities exclusively from Brocade. 15 U.S.C. § 78bb(f)(3)(A)(ii)(I). The
8  options needed to be exercised for an employee to receive stock under an option plan. Brocade's
9  1999 Stock Plan shows exactly which additional steps were needed for employees to exercise their
10 options after the options were granted. *See* Pltfs' Req. for Judicial Notice, Ex. 3, p. 45-80 of 82 (the
11 "Plan"). Pages 56-61 of 82 show the Stock Option Agreement whereby Brocade granted the
12 options. After the option was granted, the employee needed to provide Brocade with Exercise
13 Notice and pay the purchase price of the stock under the option to actually receive the stock. *See*
14 Plaintiffs' Request for Judicial Notice, Ex. 3, p. 62-63 of 82. The exercise of the options and the
15 resulting sale of stock by Brocade meets the first prong's requirement that Plaintiffs' claims must
16 concern the purchase or sale of securities. 15 U.S.C. § 78bb(f)(3)(A)(ii)(I). Here, Brocade, the
17 issuer, sold stock exclusively to holders of equity securities of the issuer when it sold stock to option
18 holders exercising their options. Thus, this suit meets all of the requirements under the first prong
19 of the Delaware carve-out. 15 U.S.C. § 78bb(f)(3)(A)(ii)(I).

20       **2.    The Second Prong**

21       Courts in this District have recently ruled that stock options backdating cases like the present
22 case fall under the second prong of the Delaware carve-out. *See Pace v. Bidzos*, 2007 U.S. Dist.
23 LEXIS 76909 at *6-8; *City of Ann Arbor Employees' Retirement Sys. v. Gecht*, 2007 U.S. Dist.
24 LEXIS 21928 at *21. Brocade does not present any compelling reasons why this Court should rule
25 differently.

26       Brocade argues, contrary to the language of the statute itself, that the second prong only
27 applies in the context of mergers, tender offers, or other extraordinary transactions. *See* Def. Memo
28 at p.11-13. However, this District has already rejected Brocade's argument. *City of Ann Arbor*

7

**PLTFS' OPPOSITION TO DEFT BROCADE'S MOTION TO DISMISS COMPLAINT**
W:\STULL\BROCADE3\PLD\Opp MTD FINAL.wpd       **CASE NO. CV07-05950 CRB**

1 *Employees' Ret. Sys. v. Gecht*, 2007 U.S. Dist. LEXIS 21928 at *9. The carve-out expressly states that exempted class actions are those that involve communications with respect to the sale of securities that concern decisions of equity holders with respect to *voting their securities* or acting in response to a tender or exchange offer or exercising dissenters' or appraisal rights. *Id.* "The statute's use of the disjunctive negates [Brocade's] narrow interpretation of the carve-out. *Id.* at *9-10.

Realizing that the statute states the exact opposite of what it claims, Brocade again cites to the statute's legislative history. And again, Brocade's plea to ignore the plain language of the statute should be ignored. "When the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Lamie*, 540 U.S. at 534. As allowing voting rights to come under the carve-out is not absurd, the statute should be enforced as written.

As the second prong of the carve-out applies to shareholder voting, it applies to this case. Same as in *Pace*, *City of Ann Arbor Employees' Retirement Sys. v. Gecht*, and *Indiana Elect'l. Workers Pension Trust Fund, IBEW v. Millard*, 2007 U.S. Dist. LEXIS 54203, at *3 (S.D.N.Y. July 26, 2007), this Court should find that Plaintiffs' option backdating case is exempt from SLUSA under the second prong of the Delaware carve-out. Same as these cases, Brocade used its Proxy Statements in 2000 and 2001 to solicit votes for the issuance of additional shares of stock. *See* Pltfs' Req. for Judicial Notice, Ex. 1, p. 11 of 26 and Ex. 2, p. 13 of 30. These additional shares were granted to employees when they exercised their backdated options under the option plan. *Id.*

### C.    Leave to Amend Should Be Granted If the Case Is Dismissed

If this Court finds that the Delaware carve-out does not apply, Plaintiffs should be given leave to amend their complaint to either remove it from SLUSA or to allege federal RICO violations as at least two Brocade employees have been tried and convicted of options backdating.

### V.    CONCLUSION

Brocade makes various pleas to the Court to ignore both the language of the statue *and* every court that ruled on these issues. While it is true that the District Court decisions cited by Plaintiffs are not binding, that is no reason to ignore the reasoning and logic behind them. Brocade has not presented a single court decision holding that options backdating cases are not subject to the

8

1  Delaware carve-out. Thus, every court that has looked at this issue has ruled in Plaintiffs' favor.

2  Brocade's argument that this Court should ignore various court decisions from this and other

3  districts, along with the plain language of the statute itself, is completely without merit. Brocade's

4  motion should be denied, and the case should be remanded to the California state court.

5  Dated: January 11, 2008                    STULL, STULL & BRODY

7                                  By:      /s/
                                         Timothy J. Burke
8                                        10940 Wilshire Boulevard
                                         Suite 2300
9                                        Los Angeles, CA  90024
                                         Tel:   (310) 209-2468
10                                       Fax:   (310) 209-2087

11                                       Jules Brody
                                         Aaron L. Brody
12                                       STULL, STULL & BRODY
                                         6 East 45th Street
13                                       New York, NY 10017
                                         Tel:   (212) 687-7230
14                                       Fax:   (212) 490-2022

15                                       Joseph H. Weiss
                                         WEISS & LURIE
16                                       551 Fifth Avenue
                                         Suite 1600
17                                       New York, NY 10176
                                         Tel:   (212) 682-3025
18                                       Fax:   (212) 682-3010

19                                       Counsel for Plaintiffs

9

**PLTFS' OPPOSITION TO DEFT BROCADE'S MOTION TO DISMISS COMPLAINT**
W:\STULL\BROCADE3\PLD\Opp MTD FINAL.wpd                        **CASE NO. CV07-05950 CRB**