COOLEY GODWARD KRONISH LLP
JOHN C. DWYER (136533) (dwyerjc@cooley.com)
GRANT P. FONDO (181530) (gfondo@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Defendant
BROCADE COMMUNICATIONS SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HAI-NING HUANG, WAY-LING HWANG, FRANK PETRUNO and GORDON A. MECCAY, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY L. REYES, ANTONIO CANOVA, NICHOLAS G. MOORE, DAVID L. HOUSE, SETH D. NIEMAN, CHRISTOPHER B. PAISLEY, NEIL DEMPSEY, BROCADE COMMUNICATIONS SYSTEMS, INC. and DOES 1 through 25,<br><br>Defendants. | Case No. CV 07-5950<br><br>**REPLY IN SUPPORT OF BROCADE COMMUNICATIONS SYSTEMS, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO THE SECURITIES LITIGATION UNIFORM STANDARDS ACT, 15 U.S.C. §§ 77p, 78bb**<br><br>Date: March 7, 2008<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. Charles R. Breyer |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

# TABLE OF CONTENTS

|   |   |   |   | PAGE |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | THE PROPER PLACE TO ASSERT THESE CLAIMS IS IN THE 10B-5 CLASS ACTION | | | 2 |
| III. | THE "DELAWARE CARVE-OUT" DOES NOT APPLY | | | 4 |
|  | A. | The Carve-Out Applies Only in the State of Incorporation | | 4 |
|  | B. | Neither Prong of the Delaware Carve-Out Applies to Plaintiffs' Action | | 6 |
|  |  | a. | The First Prong of the Carve-Out Is Inapplicable | 6 |
|  |  | b. | The Second Prong of the Carve-Out Is Also Inapplicable | 7 |
|  |  |  | (1) The Carve-Out Applies Only in the Context of Mergers and Other "Extraordinary Corporate Transactions" | 7 |
|  |  |  | (2) Plaintiffs Do Not Allege Any Recommendation or Other Communication by Brocade "With Respect to the Sale of Securities" | 9 |
| IV. | LEAVE TO AMEND SHOULD BE DENIED | | | 11 |
| V. | CONCLUSION | | | 11 |

# TABLE OF AUTHORITIES

PAGE

## CASES

*City of Ann Arbor Employees' Ret. Sys. v. Gecht,*
   2007 WL 760568 (N.D. Cal. Mar. 9, 2007) .................................................................. 10

*Drulias v. ADE Corp.,*
   2006 WL 1766502 (D. Mass. June 26, 2006) ............................................................. 5, 6

*Falkowski v. Imation Corp.,*
   309 F.3d 1123 (9th Cir. 2002) ........................................................................................ 8

*Foxgord v. Hischemoeller,*
   820 F.2d 1030 (9th Cir. 1987) ........................................................................................ 5

*G.F. Thomas Inv. L.P. v. Cleco Corp.,*
   317 F. Supp. 2d 673 (W.D. La. 2004) ............................................................................ 6

*Gibson v. PS Group Holdings, Inc.,* 2000 WL 777818 (S.D.Cal. 2000) ........................... 2, 5, 6

*Heppner v. Alyeska Pipeline Service, Co.,*
   665 F.2d 868 (9th Cir. 1981) .......................................................................................... 5

*In re FVC.COM Sec. Litig.,*
   136 F. Supp. 2d 1031 (N.D. Cal. 2000) ....................................................................... 11

*In re Metlife Demutualization Litig.,*
   2006 WL 2524196 (E.D.N.Y. Aug. 28, 2006) ............................................................... 7

*In re Network Assocs., Inc. Sec. Litig.,*
   76 F.Supp.2d 1017 (N.D.Cal.1999) ............................................................................... 3

*In re WorldCom, Inc. Sec. Litig.,*
   2003 WL 716243, (S.D.N.Y. Mar. 3, 2003) ............................................................... 5, 6

*Indiana Elec. Workers Pension Trust Fund v. Millard,*
   2007 WL 2141697 (S.D.N.Y. July 25, 2007) .............................................................. 10

*K-Mart Corp. v. Cartier, Inc.,*
   486 U.S. 281 (1988) ....................................................................................................... 4

*Lipton v. Pathogenesis Corp.,*
   284 F.3d 1027 (9th Cir. 2002) ...................................................................................... 11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
   547 U.S. 71 (2006) ................................................................................................. 2, 3, 8

*Pace v. Bidzos ("VeriSign"),*
   2007 WL 2908283 (N.D. Cal. Oct. 3, 2007) ........................................................ 5, 6, 10

*Rubery v. Radian Group, Inc.,*
   2007 WL 1575211 (E.D. Pa. May 31, 2007) .............................................................. 5, 6

*Sofonia v. Principal Life Ins. Co.,*
   378 F. Supp. 2d 1124 (S.D. Iowa 2005) ......................................................................... 7

*Trs. Of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley
   Landscape & Maint., Inc.,* 333 F.3d 923s (9th Cir. 2003) ............................................. 3

*United States v. Lewis,*
   67 F.3d 225 (9th Cir. 1995) ............................................................................................ 4

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

ii.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Watt v. Alaska*,
   451 U.S. 259 (1981) .................................................................................................................. 5

**STATUTES**

15 U.S.C § 77p, *et seq.* ................................................................................................... 4, 5, 6, 7, 9, 10
15 U.S.C. § 78bb, *et seq.* ................................................................................................ 4, 5, 6, 7, 9, 10
28 U.S.C. § 1367 ................................................................................................................................ 2
28 U.S.C. § 1367(a) ....................................................................................................................... 2, 3

**OTHER AUTHORITIES**

144 Cong. Rec. E1390-02,
   1998 WL 413738 (July 21, 1998) (Speech of Rep. Eshoo) ...................................................... 8
H.R. CONF. REP. NO. 105-803,
   1998 WL 703964 (1998) ........................................................................................................ 4, 5
S. REP. NO. 105-82,
   1998 WL 226714 (1998) ........................................................................................................ 4, 5
SLUSA § 2(5), 112 Stat. 3227 (1998) ............................................................................................... 4

## I. INTRODUCTION

There is an interesting omission in plaintiffs' opposition brief: nowhere do plaintiffs or their counsel address the fact that this Court has already concluded that the class of Brocade shareholders they seek to represent (purchasers of Brocade stock from February 21, 2001 to May 16, 2005) are best represented by other class representatives and other counsel. While their disappointment in that ruling may be understandable, they should not be allowed to pervert the law in such a way that they are allowed to pursue virtually identical fraud claims on behalf of the identical class in state court. It was in response to precisely such tactics following the passage of the Private Securities Litigation Reform Act in 1995 that Congress passed SLUSA to put an end to such efforts.

It is undisputed that plaintiffs' counsel sought to be appointed lead counsel in the federal securities class action pending before this Court (the "10b-5 Class Action") and to have two of the named plaintiffs in this action appointed class representatives in that action. They failed; and, two years later, they filed this action in state court. Even a cursory review of the complaint in this action (the "Complaint") leads to the conclusion that the claims asserted herein are virtually identical to those in the 10b-5 Class Action. (Compare, for example, the litany of allegedly false public statements issued by Brocade in paragraphs 75 to 105 in the Complaint with the other identical allegations contained in paragraphs 20 to 46 in the complaint originally filed by plaintiff Huang in the 10b-5 Class Action.[1]) In the single count in the instant Complaint, plaintiffs allege that the Company's Form 10-Ks and 10-Qs from 1997 to 2006 (in addition to the proxy statements for those years) materially overstated Brocade's net income, the same core allegation in the 10b-5 Class Action. Indeed, it is inconceivable how the 10b-5 Class Action could be resolved without also resolving the claims plaintiffs seek to bring here.

By ignoring the legislative history that led to the passage of SLUSA and urging highly technical readings of its various provisions, plaintiffs seek to bring in state court securities fraud class actions that have never before been pursued in such venues and that Congress clearly

---

[1] See First Huang Complaint, ¶¶ 20-46, attached as Exhibit 2 to the Dunning Decl.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

1.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

intended to limit to federal courts only. In rejecting a similar effort to weaken SLUSA, the Supreme Court warned against such an approach:

> The presumption that Congress envisioned a broad construction [of the preemption accorded by SLUSA] follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment. A narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose, *viz.*, "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the 1995 Act...Respondent's preferred construction also would give rise to wasteful, duplicative litigation ... The prospect is raised, then, of parallel class actions proceeding in state and federal court, with different standards governing claims asserted on identical facts. That prospect, ... squarely conflicts with the congressional preference for "national standards for securities class action lawsuits involving nationally traded securities."

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 86-87 (2006). Those concerns are even more compelling in the instant action as it is the *same* counsel and plaintiffs whose bids for leadership positions that were rejected in the 10b-5 Class Action that now seek to bring nearly identical claims in state court. "A rule that allows a plaintiff to defeat a defendant's right to remove a class action through such a hollow procedural maneuver would surrender the Uniform Standards Act's application to class action plaintiffs the statute seeks to keep at bay." *Gibson v. PS Group Holdings, Inc.*, No. 00-CV-0372 W(RBB), 2000 WL 777818, *3 (S.D. Cal. June 14, 2000).

For these reasons and the reasons set forth elsewhere in its briefing, Brocade respectfully submits that plaintiffs' action should be dismissed with prejudice.

## II. THE PROPER PLACE TO ASSERT THESE CLAIMS IS IN THE 10B-5 CLASS ACTION

If lead plaintiff in the 10b-5 Class Action had decided to assert the breach of fiduciary duty claim set forth in this lawsuit, there is little doubt that this Court would have been able to assert supplemental jurisdiction over that claim pursuant to section 28 U.S.C. § 1367. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

2.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2007). "Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Trs. Of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (internal quotations omitted). This action, and the 10b-5 Class Action, allege the same back dating scheme, the same class period, and the same alleged false statements--there can be no question that these actions derive from "a common nucleus of operative fact." (*Id.*)

As a result, plaintiffs in the instant action should have requested the lead plaintiff and lead counsel in the 10b-5 Class Action to amend their Complaint accordingly. It would then be up to lead plaintiff and lead counsel to decide whether to do so. (For all we know, plaintiffs in this case may have made such a request that was rejected by lead plaintiff and lead counsel.) That is the very purpose of appointing lead counsel in class actions – to identify one party and one set of lawyers with the authority to determine what claims should be asserted in the best interests of the class of shareholders that they represent. If a class member can simply initiate new litigation on behalf of the same class of shareholders any time he or she disagrees with lead plaintiff or wants an additional claim asserted, the very structure that has become the hallmark of class action litigation will collapse. Yet this is exactly what the plaintiffs in this action are trying to do, seeking to usurp from lead plaintiffs the responsibility to manage and control the class action claims on behalf of the identical universe of class members. *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). The Court, having already appointed lead counsel and a class representative to protect the interests of the same class of shareholders, should reject that effort.[2]

---

[2] SLUSA presents no hurdle if plaintiffs want to pursue these claims individually. "It simply denies plaintiffs the right to use the class action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Dabit*, 547 U.S. at 87.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

3.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

### III. THE "DELAWARE CARVE-OUT" DOES NOT APPLY

#### A. The Carve-Out Applies Only in the State of Incorporation.

It is clear that Congress never intended carve-out cases to be brought outside the issuer's state of incorporation. Indeed, Congress could not have stated its intent more clearly: "The committee expressly does not intend for suits excepted under [the carve-out] to be brought in venues other than in the issuer's state of incorporation." S. REP. NO. 105-82, 1998 WL 226714, at *6 (1998); *see also* H.R. CONF. REP. NO. 105-803, 1998 WL 703964, at *13-14, n.2 (1998) ("It is the intention of the managers that the suits under this exception be limited to the state in which [the] issuer of the security is incorporated.").

Plaintiffs do not and cannot point to any legislative history that contradicts these clear statements of legislative intent. Nor do plaintiffs cite to any binding case law on the issue. Instead, plaintiffs assert that the Court should ignore the legislative history because a venue restriction is not evident from SLUSA's plain language. (Opp. Br. at 5-6.) Plaintiffs are wrong.

First, as demonstrated in Brocade's opening brief, Congress's intent to restrict carve-out cases to the state of incorporation can and should be inferred from SLUSA's language. (Opening Br. at 7-8.) "In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *see also United States v. Lewis*, 67 F.3d 225, 228-29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme."). Here, restricting carve-out cases to the state of incorporation is both consistent with and necessary to achieve SLUSA's stated purposes of fostering "national standards for securities class action lawsuits involving nationally traded securities" while at the same time preserving to the *state of incorporation* the power to enforce its own laws. SLUSA § 2(5), 112 Stat. 3227 (1998); *see also* 15 U.S.C. §§ 77p(d)(1), 78bb(f)(3)(A) (carve-out is titled "Actions under State law of State of incorporation"). Conversely, no purpose is served by preserving to the other 49 states the power to interpret and apply the incorporating state's laws as that would multiply, not unify, the standards applicable in securities cases.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

4.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

Second, while plaintiffs insist that the carve-out permits "Actions under State law of State of incorporation" to be maintained in *any* state court, that is not what the statutory language provides. 15 U.S.C. §§ 77p(b), 78bb(f)(1). Rather, after repeatedly emphasizing the *state of incorporation*, the statute provides that a claim otherwise preempted under SLUSA and falling within the carve-out may nevertheless be maintained in *a* state court. Given SLUSA's stated purpose to impose uniform standards, it is not surprising that most courts have interpreted this language to mean *a proper* state court, *i.e.*, a court of the state of incorporation, rather than *any* state court. See *Drulias v. ADE Corp.*, No. Civ. A 06-11033 PBS, 2006 WL 1766502, at *1 (D. Mass. June 26, 2006); *In re WorldCom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288 (DLC), 02 Civ. 8981 (DLC), 2003 WL 716243, at *15 n.31 (S.D.N.Y. Mar. 3, 2003). But see *Pace v. Bidzos* ("*VeriSign*"), Nos. C 07-3742-PJH, C 07-3332 PJH, 2007 WL 2908283, at *2 (N.D. Cal. Oct. 3, 2007); *Rubery v. Radian Group, Inc.*, No. 07-1068, 2007 WL 1575211 (E.D. Pa. May 31, 2007); *Gibson*, 2000 WL 777818, at *6.

Third, even if SLUSA's plain language supported plaintiffs' proffered interpretation, consideration of the legislative history would still be both permissible and appropriate. In interpreting a statute, the task of the court 'is to ascertain the intent of Congress and to give effect to [that intent]." *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1032 (9th Cir. 1987) (citation omitted). Accordingly, the Supreme Court has repeatedly affirmed that "ascertainment of the meaning apparent on the face of [a single] statute need not end the inquiry." *Watt v. Alaska*, 451 U.S. 259, 266 (1981) (citation omitted). This is because the plain-meaning rule is "'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'" *Id.* Nor does the plain meaning rule "require a court to operate under an artificially induced sense of amnesia about the purpose of legislation, or to turn a blind eye towards significant evidence of Congressional intent in the legislative history." *Heppner v. Alyeska Pipeline Serv. Co.*, 665 F.2d 868, 871 (9th Cir. 1981). The legislative history here is unequivocal that would-be carve-out cases like this one may only be brought in the state of incorporation. S. REP. NO. 105-182, 1998 WL 226714, at *6 (1998); *see also* H.R. CONF. REP. NO. 105-803, 1998 WL 703964, at *13-14, n.2 (1998).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

5.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

Finally, the three district court cases cited by plaintiffs do not bolster plaintiffs' position. Plaintiffs make much of Judge Hamilton's statement in *VeriSign* that she found "no support in the statute for defendants' claim that the Delaware carve-out applies only to cases brought in the state courts of the state of incorporation." *VeriSign*, 2007 WL 2908283, at *2. However, aside from a reference in that opinion to two other cases that reached the opposite conclusion[3], this single conclusory statement represents the sum total of the court's analysis of the issue. *Id.* The three-page decision contains no discussion or analysis of SLUSA's legislative history (much less its stated purposes), and, thus, it is impossible to determine whether the court even had the benefit of the legislative history to inform its decision. The other two cases are no more enlightening.[4] In both *Rubery*, 2007 WL 1575211 *4 and *Gibson*, 2000 WL 777818, at *5-*6 the courts refused to consider the legislative history on the ground that SLUSA does not contain an express venue provision and is therefore unambiguous. For the reasons discussed above, such refusal was improper and contravened, rather than effectuated, Congress's explicit intent in passing SLUSA. This Court should decline plaintiffs' invitation to make the same error.

**B.  Neither Prong of the Delaware Carve-Out Applies to Plaintiffs' Action.**

**a.  The First Prong of the Carve-Out Is Inapplicable.**

Plaintiffs' argument for application of the first prong is baseless and warrants little discussion. To fall under the first prong, a claim must involve the purchase or sale of securities by the issuer *exclusively* from or to *existing* shareholders. 15 U.S.C §§ 77p(d)(1)(B)(i), 78bb(f)(3)(A)(ii)(I); *see also G.F. Thomas Inv., L.P. v. Cleco Corp.*, 317 F. Supp. 2d 673, 681-85 (W.D. La. 2004) (carve-out inapplicable where shares were not offered exclusively to

---

[3] *Drulias*, 2006 WL 1766502, at *1 (carve-out cases must "be determined in the state of the issuer's incorporation"); *WorldCom*, 2003 WL 716243, at *15 n.31 (same).

[4] Further, in not one of the cases relied upon by plaintiffs was there a related, previously filed federal securities class action as is the case here. *See* Declaration of Grant P. Fondo in Support of Brocade Communications Systems, Inc.'s Reply In Support of Motion to Dismiss ("Fondo Decl."), Exs. 1 at 20, 2 at 42 and 3 at 13 (the defendant companies' litigation disclosures reference the state class actions but do not reference a related federal class action). Nor did plaintiffs and their counsel in those cases attempt to circumvent a federal court order rejecting their motion to be appointed lead plaintiff and lead counsel by later filing an identical action in state court.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

6.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

existing shareholders; *Sofonia v. Principal Life Ins. Co.*, 378 F. Supp. 2d 1124, 1133-34 (S.D. Iowa 2005) (same). There is no reason to believe that plaintiff claims are limited in that way. Indeed, plaintiffs allege that Brocade granted options to "new hires" and part-time employees. (*See, e.g,* Complaint, ¶ 50.) There is no indication that such recipients were existing shareholders either at the time of the grants or at any time thereafter. Plaintiffs cite to no case in which the first prong of the carve-out was found applicable in these (or, for that matter, in any other) circumstances.

### b.  The Second Prong of the Carve-Out Is Also Inapplicable.

Under the second prong of the Delaware carve-out, an otherwise preempted claim may be maintained only if it involves a "recommendation, position or other communication with respect to the sale of securities" by an issuer to its shareholders that "concerns decisions of those equity holders with respect to voting their securities, acting in response a tender or exchange offer, or exercising dissenters' or appraisal rights." 15 U.S.C. §§ 77p(b), 78bb(f)(3). The Complaint alleges no facts to trigger this exception.

#### (1)  The Carve-Out Applies Only in the Context of Mergers and Other "Extraordinary Corporate Transactions"

As set forth in Brocade's opening brief, Congress intended the second prong of the carve-out to preserve only those claims based on an issuer's recommendation or communication with respect to a merger, tender offer, or other extraordinary transaction constituting a "sale" of the issuer's securities. (Opening Br. at 11-14.) That intent is evident from the plain language of the statute as it is only in the context of extraordinary change-in-control transactions that each of the requirements for the second prong is met. 15 U.S.C. §§ 77p(b), 78bb(f)(3) (cases preserved under the second prong must involve communications (1) by a company; (2) to its existing shareholders; (3) recommending that they vote their shares, respond to a tender or exchange offer or exercise appraisal/dissenters' rights; (4) "with respect to" a "sale" of the issuer's securities). 15 U.S.C. §§ 77p(b), 78bb(f)(1)); *In re Metlife Demutualization Litig.*, No. CV 00-2258 (TCP) (AKT), 2006 WL 2524196 (E.D.N.Y. Aug. 28, 2006) (holding that a reorganization is a "change-in-control" situation that fits under the carve-out).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

7.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

That Congress intended the second prong of the carve-out to be applied in this manner is further borne out by multiple passages from the legislative history of the statute. Indeed, the legislative history leaves no room for doubt that Congress was concerned not with routine proxy solicitations but with preserving Delaware's "long-standing common law tradition" of ensuring that shareholders are adequately informed about "mergers or other sell orders." 144 CONG. REC. E1390-02, 1998 WL 413738, at 3 (July 21, 1998) (Speech of Rep. Eshoo); *see also* Opening Br. at 11:27-13:6.

It is worth noting that this lawsuit is a *securities fraud class action*. The fact that plaintiffs have labeled their claims are for "breach of fiduciary duty" does not change the fact that the gravamen of the Complaint is the alleged misrepresentations – that is, fraud – perpetrated by defendants. These are the very type of claims that Congress intended to pre-empt when it passed SLUSA. The effort, reflected in the Delaware carve-out, to preserve some claims that had traditionally been handled by state courts has no relevance to the instant action. "[F]ederal law, not state law, has long been the principal vehicle to asserting class action securities fraud claims." *Dabit*, 547 U.S. at 88. Lawsuits challenging the truth and accuracy of information contained in proxies and other filings required by a federal regulatory structure were never the province of state courts. And, therefore, they were never the cases that Congress intended to preserve.

Indeed, the Ninth Circuit has specifically warned against interpreting SLUSA in such a way that undercuts the purposes of federal securities law:

> Just as the Supreme Court observed that Section 10(b) "should be construed not technically and restrictively, but flexibly to effectuate its remedial purpose," [citation omitted]. SLUSA should also be viewed as part of the remedial package of federal securities laws and should be construed accordingly.

*Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129 (9th Cir. 2002). Plaintiffs' technical and restrictive interpretation of the SLUSA carve-out would be just the opposite.

Finally, plaintiffs argument proves too much. They argue that any claim based on a

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

8.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

communication by a company to a shareholder that concerns the voting of their securities is exempted from the SLUSA preemption and can be brought in state court. However, it can be argued that virtually any official communication by a company – whether in a Form 10-K, a press release, or a proxy – concerns the voting of securities as it is axiomatic that security holders rely on such information in exercising their rights as shareholders, including in deciding how to vote their shares with regard to board elections. Indeed, that is precisely what plaintiffs seem to assert as they claim in the penultimate paragraph of their 110-paragraph complaint that "[a]s a result of the Defendants' backdating scheme, the 1997, 1998, 1999, 2000, 2001, 2002 2003, 2004 and 2005 Definitive Proxies and the Form 10-K for the years 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2005, and 2006 and respective Form 10-Qs, materially overstated Brocade's net income and retained earnings." Complaint, ¶ 109. That logic would preserve to the states every securities fraud class action based on misleading financial statements. That was not what Congress intended.

### (2) Plaintiffs Do Not Allege Any Recommendation or Other Communication by Brocade "With Respect to the Sale of Securities"

Finally, even if the second prong of the carve-out could, under appropriate circumstances, apply outside of the context of extraordinary corporate transactions, plaintiffs do not and cannot plead the basic facts required to trigger it here. Plaintiffs assertion that the proxies constituted a "recommendation, position or other communication with respect to the *sale of securities* of an issuer" as required under the carve-out is fundamentally at odds with what is alleged in their complaint and stated in the proxies plaintiffs rely upon. 15 U.S.C. §§ 77p(d)(1)(B)(ii), 78bb(f)(3)(A)(ii) (emphasis added). Neither the complaint nor the proxies ever reference the sale of securities. Plaintiffs' opposition brief only serves to highlight this fatal deficiency. Plaintiffs assert that, "[a]s the second prong of the carve-out applies to shareholder voting, it applies to this case" because "Brocade used its Proxy Statements in 2000 and 2001 to solicit votes for the issuance of additional shares of stock." (Opp. Br. at 8.) Soliciting votes for the issuance of additional shares of stock is not the "sale of securities."

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

9.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

Plaintiffs, in an effort to overcome this deficiency, cite several cases which do nothing to assist them. These cases, in concluding that the second prong of the carve-out applied, hinged on the plaintiff's allegation that the issuer sought and obtained shareholder approval of an increase in the shares *authorized for stock option grants*. *Indiana Elec. Workers Pension Trust Fund v. Millard*, No. 07 Civ. 172(JGK), 2007 WL 2141697, at *4 (S.D.N.Y. July 25, 2007); *VeriSign* 2007 WL 2908283, at *2; *City of Ann Arbor Employees' Ret. Sys. v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568, at *3 (N.D. Cal. Mar. 9, 2007). Those courts reasoned that stock option grants constitute a "sale of securities" and that a proxy statement soliciting a shareholder vote to increase shares authorized specifically for stock option grants would "concern" a "recommendation, position or communication with respect to the sale of securities." *VeriSign*, 2007 WL 2908283, at *2-3; *Gecht*, 2007 WL 760568, at *4; *Millard*, 2007 WL 2141697, at *5-7.

The Complaint in this case, however, is devoid of such allegations. As Brocade pointed out in its opening brief, the Complaint does not allege that Brocade solicited shareholder approval for any corporate action of any kind, much less that shareholders were asked to vote on the issuance of stock option grants or some other "sale of securities." (Complaint, ¶¶ 108-110.) As a result, plaintiffs' own Complaint demonstrates that this case does not fall within the second prong of the carve-out.

Nor do Brocade's proxy statements relied upon by plaintiffs (attached to plaintiffs' Request for Judicial Notice, filed concurrently with their opposition) do anything to fill this gaping hole. Opp. Br. at 2. To the contrary, those proxy materials establish merely that Brocade sought shareholder approval "to amend the Company's certificate of incorporation to increase the authorized number of shares of common stock." (Pltfs' Req. for Judicial Not., Ex. 1 at 12 and Ex. 2 at 14 of 30.) Plaintiffs do not and cannot allege that shareholders were asked to approve an increase in the shares authorized *for stock option grants*. (*Id.*) Absent facts demonstrating that those Proxy Statements included a "recommendation, position or other communication with respect to the *sale of securities*," the unremarkable fact that Proxy

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA

10.

REPLY IN SUPPORT OF BROCADE'S
MOTION TO DISMISS UNDER SLUSA
CASE NO. CV 07-5950

1  Statements involve shareholder voting is insufficient to trigger the second carve-out. 15 U.S.C.
2  §§ 77p(d)(1)(B)(ii), 78bb(f)(3)(A)(ii) (emphasis added).

3  Because the proxy solicitations at issue in this case do not concern a "sale of securities,"
4  plaintiffs' claim does not fall within the second prong of the Delaware carve-out.

### IV. LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs request leave to amend in the event the Court grants the motion to dismiss. Such leave would be inappropriate here. First, the entire theory of the complaint is a fraud claim, and no amendment will alter that reality. As such, any amended complaint will still be subject to removal and preemption. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) (affirming district court's dismissal on original motion to dismiss where amendment would be futile); *see also In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d 1031, 1040-41 (N.D. Cal. 2000). Second, the class plaintiffs purport to represent is already represented in the 10b-5 Class Action by a class representative and counsel approved by this Court. If the plaintiffs in the instant action are dissatisfied with the strategy being pursued in the 10b-5 Class Action, they should let their representatives know and, if still dissatisfied, pursue any disagreements in that action.

### V. CONCLUSION

For all of the foregoing reasons, Brocade respectfully submits that plaintiffs' action is preempted under SLUSA and that it must be dismissed with prejudice.

Dated: February 22, 2008          COOLEY GODWARD KRONISH LLP

                                  /s/
                                  ──────────────────────────
                                  Grant P. Fondo

                                  Attorneys for Defendant
                                  BROCADE COMMUNICATIONS SYSTEMS, INC.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

767550 v3/PA          11.          REPLY IN SUPPORT OF BROCADE'S
                                   MOTION TO DISMISS UNDER SLUSA
                                   CASE NO. CV 07-5950